Ezekiel J. Williams, *pro hac vice admission pending*
John H. Bernetich, *pro hac vice admission pending*
**Williams Weese Pepple & Ferguson, PC**
1801 California St., Suite 3400
Denver, CO 80202
t: 303-861-2828
f: 303-861-4017
zwilliams@williamsweese.com
jbernetich@williamweese.com
*Attorneys for Plaintiff Silverton Mountain Guides LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| SILVERTON MOUNTAIN GUIDES LLC, an Alaska limited liability company,<br><br>　　　Plaintiff,<br><br>　v.<br><br>U.S. FOREST SERVICE, an agency of the U.S. Department of Agriculture,<br><br>　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:22-cv-00048-JWS |

---

## COMPLAINT FOR JUDICIAL REVIEW OF AGENCY ACTION
## (5 U.S.C. § 552, 5 U.S.C. § 706)

---

Plaintiff Silverton Mountain Guides LLC ("Silverton"), an Alaska limited liability

company, brings this Complaint for Judicial Review of Agency Action ("Complaint")

against Defendant U.S. Forest Service ("Forest Service").

Page 1 of 38

# INTRODUCTION

1.     Silverton seeks an order vacating and setting aside the Forest Service's August 9, 2021 decision (the "Decision") regarding the Chugach National Forest Guided Helicopter Skiing Prospectus (the "Prospectus"). The Prospectus invited proposals from interested parties to provide guided helicopter skiing services in the Cordova Ranger District of the Chugach National Forest. A secret panel of federal employees irrationally rejected Silverton's application for a special use permit to conduct commercial heli-skiing in the Chugach National Forest despite Silverton's perfect permit compliance record and perfect safety record operating under multiple federal and state heli-ski permits. The secret panel determined instead that an unqualified applicant was "best qualified" compared to Silverton, and somehow ranked that unqualified applicant higher than Silverton, while not considering numerous publicly available negative facts about the unqualified applicant.

2.     Silverton, which was established in 2008, has guided hundreds of trips in Alaska as a permitted heli-ski operator, has a perfect safety and permit compliance record, and has never had any serious injuries or helicopter or avalanche accidents while on a guided trip. The secret government panel, however, declined to advance Silverton's application and instead decided to advance the application of Pulseline Adventure, LLC ("Pulseline"), a company unknown in the Alaska heli-ski industry. The panel, however, failed to take into account that Pulseline:

- is a startup company;

- has never held a Forest Service or Bureau of Land Management heli-ski permit;

- suffered a well-publicized fatality caused by an avalanche while on a guided heli-ski trip;

- has experience organizing guided yoga trips but no experience operating on federal lands as a permitted heli-ski operator;

- did not exist as a corporate entity for two of the four years after it was formed due to failure to comply with corporate laws;

- failed to maintain workers compensation insurance as required by law;

- failed to comply with Alaska public land laws; and

- is wholly owned by an individual with a criminal record and a history of failing to pay over $50,000 of federal corporate taxes.

3.      When Silverton appealed the panel's decision and confronted the Chugach National Forest with this publicly available information, the Forest Supervisor decided that those material facts have no effect on, and do not change, the agency's decision that Pulseline is a "best qualified" applicant compared to Silverton.  In the Forest Supervisor's August 9, 2021 Decision affirming the secret panel's decision, the Forest Supervisor defiantly insisted, contrary to the plain facts, that Pulseline is "better qualified" than Silverton, even though Silverton has a perfect safety record, has never been issued a notice of noncompliance with a heli-ski permit, has continuously maintained its status as a limited liability company in good standing and in compliance with state law, and has consistently maintained workers compensation insurance as required by law.

4. The Chugach National Forest assured Silverton that the members of the secret panel were objective and had no past history with any of the applicants, but when Silverton requested information pursuant to the Freedom of Information Act ("FOIA") to substantiate that claim, the Chugach National Forest refused to provide it. The Forest Service refused to provide Silverton with the score sheets completed by the secret panel members and continues to refuse to even identify the members of the secret panel.

5. Based on this record, Silverton is a "best qualified" applicant and Pulseline is not. Silverton challenges the August 9, 2021 Decision because it is arbitrary and capricious, contrary to the evidence before the agency, and not in accordance with law, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A).

6. Silverton requests the Court to vacate the Forest Service's Decision to advance Pulseline's special use permit application and to reject Silverton's application, and remand the matter to the Forest Service with instructions to advance Silverton's application for further processing. Silverton does not challenge the Forest Service's decision to advance Valdez Heli-Ski Guides, LLC's and Points North Heli-Adventures, Inc.'s applications because those companies are qualified to hold heli-ski permits.

7. Silverton also requests the Court to issue an order declaring that the Forest Service violated the FOIA by refusing to produce records responsive to Silverton's FOIA request and directing the Forest Service to provide the responsive records to Silverton.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1346(a)(2) and 5 U.S.C. § 552(a)(4)(B).

9.     This Court has authority to review the Decision under the APA.  5 U.S.C. §§ 702, 706.  This Court may grant declaratory and injunctive relief under 28 U.S.C. § 2201 (declaratory judgment), 28 U.S.C § 2202 (injunctive relief), the FOIA, 5 U.S.C. § 552(a)(4)(B), and the APA, 5 U.S.C. §§ 701-706.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and (e)(1)(B) and 5 U.S.C. § 552(a)(4)(B).

11.     A substantial part of the events and omissions giving rise to Silverton's claims occurred in this judicial district.

12.     Silverton's principal place of business is within this judicial district.

## FINAL AGENCY ACTION AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

13.     Silverton exhausted its administrative remedies as required by 7 U.S.C. § 6912(e) and 36 C.F.R. § 214.20.

14.     Pursuant to 36 C.F.R. § 214.4(c)(2), on April 12, 2021, Silverton timely appealed the Cordova District Ranger's March 1, 2021 decision that advanced Pulseline's application and declined to advance Silverton's application.

15.     The Chugach National Forest Supervisor's August 9, 2021 Decision affirming the Cordova District Ranger's decision is a final agency action subject to judicial review under the APA.  *See* 5 U.S.C. §§ 702, 704.

Case 3:22-cv-00048-JWS   Document 1   Filed 03/14/22   Page 5 of 38

16.     Pursuant to 36 C.F.R. §§ 214.18(e) and 214.19(d), the Decision was the Forest Service's final administrative decision.

17.     Pursuant to 5 U.S.C. § 552(a)(6)(C)(i), Silverton exhausted its administrative remedies with respect to its FOIA request because the agency failed to timely respond to Silverton's FOIA request.

## PARTIES

18.     Plaintiff Silverton Mountain Guides LLC is an Alaska limited liability company.

19.     Defendant United States Forest Service is an agency within the United States Department of Agriculture.

## LEGAL BACKGROUND

**A.      Federal Lands Recreation Enhancement Act**

20.     In the Prospectus, the Forest Service proposed to issue one or more permits pursuant to the Federal Lands Recreation Enhancement Act, 16 U.S.C. § 6802(h).

21.     That provision provides that the Secretary of Agriculture "may issue a special recreation permit . . . for specialized recreation uses of Federal recreational lands and waters, such as group activities, recreation events, [and] motorized recreational vehicle use."  16 U.S.C. § 6802(h).

**B.      Forest Service Special Use Regulations**

22.     Pursuant to its authority under 16 U.S.C. § 551 and other statutes, the Forest Service adopted regulations governing special uses of national forests and the

Case 3:22-cv-00048-JWS   Document 1   Filed 03/14/22   Page 6 of 38

application requirements applicable to authorizing such special uses. 36 C.F.R. §§ 251.50 to 251.65.

23. The governing Forest Service special use permit regulations provide that the "authorized officer shall reject any proposal" for a special use permit if "the officer determines" that: "the proposed use would not be in the public interest"; "the proponent is not qualified"; or the proponent does not demonstrate "technical capability to undertake the use and to fully comply with the terms and conditions of the authorization." 36 C.F.R. § 251.54.

24. The special use permit regulations require the Forest Service to consider safety in screening applicants for a special use permit. "Each special use authorization must contain . . . terms and conditions which will . . . [c]arry out the purposes of applicable statutes and rules and regulations issued thereunder [and] [r]equire compliance with State standards for public health and safety . . . ." 36 C.F.R. § 251.56(a)(1)(i)(A), (D).

25. "Each special use authorization must contain . . . such terms and conditions as the authorized officer deems necessary to . . . [p]rotect other lawful users of the lands adjacent to or occupied by such use" and "[p]rotect lives and property." 36 C.F.R. § 251.56(a)(1)(ii)(C), (D).

26. The Forest Service Special Uses Handbook underscores that for a proponent to receive a special use authorization, "[t]he proponent *must* be qualified." FSH 2709.11, Chapter 10, at 19 (emphasis added). The Special Uses Handbook requires

the Forest Service to reject any proposal that does not meet nine criteria, including: the

proposed use (1) "is consistent with the laws, regulations, orders, and policies

establishing or governing National Forest System lands (including policy in FSM 2703.1

and 2703.2)"; and (2) "will not create a serious and substantial risk to public health or

safety." FSH 2709.11, Chapter 10, at 15. "The Authorized Officer shall return to

proponents those proposals that fail to meet" either of these criteria. FSH 2709.11,

Chapter 10, at 20.

## C.  Freedom of Information Act

27.     "The basic purpose of FOIA is to ensure an informed citizenry, vital to the

functioning of a democratic society, needed to check against corruption and to hold the

governors accountable to the governed." *John Doe Agency v. John Doe Corp.*, 493 U.S.

146, 152 (1989) (quotation omitted). The FOIA was enacted to "permit access to official

information long shielded unnecessarily from public view" by creating a "right to secure

such information from possibly unwilling official hands." *Dep't of Air Force v. Rose*,

425 U.S. 352, 361 (1976) (citation omitted). "[D]isclosure, not secrecy, is the dominant

objective of the Act." *John Doe*, 493 U.S. at 152 (quotation omitted).

28.     The FOIA requires federal agencies to conduct a reasonable search for

requested records and to release them to a requester, unless one of nine specific statutory

exemptions applies to the requested information. 5 U.S.C. § 552(a)(3), (b).

29.     The FOIA requires federal agencies to release all non-exempt segregable

information that is requested. 5 U.S.C. § 552(b).

30.     Upon receiving a FOIA request, an agency generally has 20 business days to respond.  5 U.S.C. § 552(a)(6)(A)(i).

31.     If a requester appeals the agency's response to the FOIA request, the agency must "make a determination with respect to [such] appeal within" 20 business days.  5 U.S.C. § 552(a)(6)(A)(ii).

32.     A requester has exhausted administrative remedies if the requester timely appeals and "if the agency fails to comply" with FOIA's statutory deadlines.  5 U.S.C. § 552(a)(6)(C)(i).  In that event, the FOIA authorizes the requester to invoke the jurisdiction of a federal court to obtain the requested information.  5 U.S.C. § 552(a)(4)(B).

33.     The Department of Agriculture issued regulations implementing the FOIA that apply to the Forest Service.  *See* 7 C.F.R. §§ 1.1 to 1.12.

**D.     Administrative Procedure Act**

34.     The APA provides a right to judicial review for any "person suffering legal wrong because of agency action."  5 U.S.C. § 702.

35.     A court "shall" "hold unlawful and set aside agency action" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

36.     The APA defines agency action to "include[] the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof."  5 U.S.C.

§§ 551(13), 701(b)(2).  This Court has authority to review a final agency action.  5 U.S.C. § 704.

37.     Under the APA, courts will set aside any decision a court determines is contrary to the weight of the evidence.  *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

38.     An agency cannot ignore evidence that is contrary to its decision. "Blinders may work for horses, but they are no good for administrative agencies."  *Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 924 (D.C. Cir. 2017).

39.     "A long line of precedent has established that an agency action is arbitrary when the agency offer[s] insufficient reasons for treating similar situations differently." *Transactive Corp. v. United States*, 91 F.3d 232, 237 (D.C. Cir. 1996).

40.     A court will set aside a final agency action if the agency does not "abide by the regulations it promulgates."  *Sameena Inc. v. U.S. Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998).

## FACTUAL BACKGROUND

**A.      The Cordova Ranger District Guided Helicopter Skiing Prospectus**

41.     In November 2020, the Cordova Ranger District issued the Guided Helicopter Skiing Prospectus.  The Prospectus invited proposals from interested parties to provide guided helicopter skiing services on the Cordova Ranger District.

42.     The Prospectus's stated "goal is to select businesses *best qualified* to provide visitors with a safe, satisfying recreation experience that promotes enjoyment,

Case 3:22-cv-00048-JWS   Document 1   Filed 03/14/22   Page 10 of 38

understanding, and appreciation of the Chugach National Forest while minimizing impacts to resources and other forest users."

43.     The Prospectus directed applicants to submit a complete application, including a proposed operating plan detailing the applicant's experience, operation, employee training, transportation, environmental protection, first aid, emergency rescue, avalanche, incident reporting, and communications protocols; a notarized financial statement; and three business reference letters.

44.     In accord with Forest Service special use permit regulations, the Prospectus stated that the District Ranger must "determine the best qualified businesses to be awarded a special use permit for guided helicopter skiing."  The Prospectus provided that it "is focused on identifying service providers who demonstrate a high standard of professionalism and cooperative spirit.  Proponents must commit to . . . set a good example regarding ethical behavior, compliance with regulations, low impacts practices, and caring for the land."

45.     The Prospectus established a process whereby an evaluation panel of federal employees would score each application on a 60-point scale using sixteen criteria. Even though the panel was comprised of federal employees, the Prospectus did not identify the members of the panel.

46.     Some of the selection criteria (and the "objectives" served by the criteria) include:

> B-1:   Experience performing guided helicopter skiing services.  Objective: Has substantial experience that establishes legitimate basis for proposed use.

Case 3:22-cv-00048-JWS   Document 1   Filed 03/14/22   Page 11 of 38

B-2:   Company safety policy.  <u>Objective</u>: Provides a safe work environment and safe client experience.

W-1:   Working relationship with regulatory agencies.  <u>Objective</u>: Company maintains a positive working relationship with regulatory agencies.

W-2:   Employee licenses, certifications, and training.  <u>Objective</u>: Employees have required licenses, certifications, and training for heli-ski operations.

W-3:   Medical emergency training.  <u>Objective</u>: Employees are trained to stabilize a person until emergency responders can take over.

O-1:   Permit compliance.  <u>Objective</u>: Company complies with the terms and conditions of permits issued by regulatory agencies like the Forest Service.

O-2:   Performance history.  <u>Objective</u>: Records demonstrate sustained good performance and any issues identified are satisfactorily resolved.

O-3:   Operating in shared use areas.  <u>Objective</u>: Company employees and agents work together with other heli-ski operators to provide a positive experience for their clients and other forest users.

L-1:   Role in sustaining local communities.  <u>Objective</u>: Contributes to the local economy through generation of jobs and income.

47.     The nine selection criteria identified above accounted for 39 of the possible 60 points.  Other selection criteria addressed financial capability, client feedback systems, client education and safety, equal opportunity and accessibility, leave no trace principles, and resource stewardship.

48.     The Prospectus stated that the evaluation panel would rank applications according to the assigned score resulting from application of the selection criteria.

49.     Seven applicants, including Silverton, submitted applications in response to the Prospectus.

50.     On information and belief, Pulseline was the only applicant that had never held a federal heli-ski permit and that had no experience as a permitted heli-skiing operator.

51.     The form special use permit attached to the Prospectus provided that "the holder shall comply with all present and future federal laws and regulations and all present and future state, county, and municipal laws, regulations, and other legal requirements that apply to the permit area."

52.     The form permit provided that "the holder is expected to behave in a professional demeanor regarding their interactions with the Forest Service, other agencies, their peer group, and the people they serve.  Disorderly or objectionable conduct by the Holder, (or those occupying the premises with holder's permission) may be cause for termination of this authorization."

## B.     Silverton Mountain Guides

53.     On January 7, 2021, Silverton submitted its application in response to the Prospectus.  Silverton's application described its established history operating as a permitted heli-ski guiding company for 14 years and its perfect safety and operations record over that period.

54.     Since Silverton was established in 2008, Silverton has guided hundreds of trips in Alaska as a permitted heli-ski operator, and provided many thousands of guided ski runs to its guests.

55.     Silverton currently holds six active heli-ski permits issued by the Forest Service, Bureau of Land Management ("BLM"), and the Municipality of Anchorage.

56.     Silverton operated in the Cordova Ranger District under a temporary special use permit issued by the Cordova Ranger District for the 2019-20 and 2020-21 winter seasons.  During that period, two other operators (Valdez Heli-Ski Guides, LLC ("Valdez Heli-Ski") and Points North Heli-Adventures, Inc. ("Points North")) also operated in the same area pursuant to temporary special use permits.

57.     Silverton has a perfect permit compliance record.  The Forest Service has never issued a notice of noncompliance to Silverton under any of its permits.  The BLM has never issued a notice of noncompliance to Silverton under any of its permits.  The Municipality of Anchorage has never issued a notice of noncompliance to Silverton under any of its permits.

58.     Since Silverton began operating in 2008, Silverton has had a perfect safety record providing guided heli-skiing.  Silverton has had no guest or guide fatalities, no substantial injuries, and no avalanche or helicopter accidents during a guest trip.

59.     Silverton's perfect safety record is due to its safety policies, superior guide education requirements, and 14 years of permitted experience in the field.

60.     Silverton maintains workers' compensation insurance as required by Alaska law.  Silverton has consistently maintained liability insurance in compliance with its permits that exceeds Forest Service requirements.

Case 3:22-cv-00048-JWS   Document 1   Filed 03/14/22   Page 14 of 38

61.     Since Silverton was organized, Silverton has maintained its status as a limited liability company in good standing and in compliance with Colorado's and Alaska's corporate laws.

62.     In support of its application submitted in response to the Prospectus, Silverton submitted business reference letters from (1) the BLM Glennallen Field Office in Glennallen, Alaska (where Silverton has held a heli-skiing special recreation permit since 2011); (2) the BLM Anchorage Field Office (where Silverton has been permitted since 2017); and (3) the BLM Gunnison Field Office in Gunnison, Colorado (where Silverton's owner, Aaron Brill, has held a permit since 2000).

63.     In those reference letters, BLM officials recommended that Silverton be granted a special use permit and wrote that Silverton and its owner, Aaron Brill, have "shown consistent, exemplary performance and excellent permit compliance"; "are well-established in the skiing and heli-ski industry with an excellent safety and operating history"; have "shown great performance history and permit compliance"; and have "always been very responsive in [their] communications [and] submits all required documents in a timely manner."

64.     Silverton submitted a business reference letter from Valdez Heli-Ski, a competitor heli-ski guiding company. Valdez Heli-Ski stated that it has "work[ed] with [Silverton] over the last year" as a fellow permit holder in the Cordova Ranger District and is "impressed with [Silverton's] cooperative spirit and collaborative efforts to ensure success for operations utilizing the [Cordova Ranger District] temporary permit in 2020."

65.     Silverton attached an October 19, 2020 Guide Performance Evaluation from the Tongass National Forest, Petersburg Ranger District.  The Evaluation gave Silverton the highest possible rating on each applicable category, as well as on Silverton's overall annual performance.

66.     Silverton's owner, Aaron Brill, has never been arrested for, charged with, or convicted of a violation of a federal or state criminal law.  Neither Mr. Brill nor Silverton has been charged with or determined liable for a violation of any federal or state tax law.  As a holder of a U.S. Bureau of Alcohol, Tobacco and Firearms Federal Explosive License, Mr. Brill is regularly subjected to federal background checks.  Mr. Brill has an established history of ethical behavior, compliance with regulations and permit terms, low-impact practices, and caring for the land and the Alaska communities where Silverton operates.

67.     Mr. Brill is a respected ski professional with more than 20 years of technical and business experience in the ski industry as a permitted operator.  During the 20 years that Mr. Brill has owned and operated guided heli-ski services around the country, Mr. Brill's heli-ski operations, including Silverton, have provided approximately 20,000 guided heli-ski service days.

68.     Mr. Brill's heli-ski operations have had no helicopter accidents, no fatalities, and no guest-related avalanche accidents.

## C.  The Cordova District Ranger Declined to Advance Silverton's Application

69.     The secret evaluation panel ranked Silverton fourth among applicants.  Out of 60 possible points, the secret evaluation panel awarded points to the top four applicants as follows:

- Points North Heli-Adventures, Inc. (54.50 points)
- Pulseline Adventures (52.50 points)
- Valdez Heli-Ski Guides, LLC (51.00 points)
- Silverton Mountain Guides (48.75 points)

70.     Like Silverton, Points North and Valdez Heli-Ski are experienced operators with a demonstrated record of safe operations and experience holding federal heli-ski permits.

71.     The secret evaluation panel ranked Pulseline ahead of Valdez Heli-Ski, even though Valdez Heli-Ski is an experienced operator with a demonstrated history of safe operations and permit compliance while Pulseline and its owner have a demonstrated history of failing to comply with state and federal law, no experience as a permitted operator, and no permit compliance history.

72.     The secret evaluation panel did not take into account that Pulseline:

a.  has never held a Forest Service or BLM heli-ski permit;

b.  has no heli-ski permit compliance history;

c.  has no safety record as a permitted operator;

d.  failed to maintain workers compensation insurance as required by law;

e.  failed to comply with Alaska public land laws about heli-skiing on Alaska state lands;

Case 3:22-cv-00048-JWS   Document 1   Filed 03/14/22   Page 17 of 38

f.  did not exist as a corporate entity for two of the four years after it was formed due to noncompliance with corporate laws;

g.  suffered a well-publicized fatality caused by an avalanche while on a guided heli-ski trip; and

h.  is wholly owned by an individual with a criminal record and a history of failing to pay over $50,000 of federal corporate taxes.

73.     The evaluation panel forwarded its scores to the Cordova District Ranger without comparing the applicants' known performance history and operating records to determine whether the panel's rankings of the applicants was rational.

74.     The District Ranger accepted the evaluation panel's ranking and did not adjust any of the points awarded based on the undisputed negative facts about Pulseline and its owner that the panel did not consider.  In affirming the District Ranger's decision, and in issuing the Decision that is the subject of this complaint, the Forest Supervisor did not adjust any points awarded by the panel.

75.     When it became clear that the evaluation panel's score recommendations resulted in ranking Pulseline (an inexperienced company with a history of legal violations) ahead of Silverton (an established operator with a perfect safety record and permit compliance record), the Cordova District Ranger should have adjusted the scores to advance the "best qualified" applicants.  Instead, the Cordova District Ranger made no changes to the panel's score and simply rubber stamped the evaluation panel's recommendations.

76.    By letter dated March 1, 2021, the Cordova District Ranger determined to advance the applications of the top three ranked applicants (Points North, Pulseline, and Valdez Heli-Ski) and reject the remaining applications, including Silverton's application.

77.    The Cordova District Ranger did not provide to Silverton the score reports the secret evaluation panel completed for Silverton's application and the other applicants and did not identify the evaluation panel members.  The Forest Service has refused to provide the secret panel's score reports to Silverton and has refused to identify the secret panel members.

**D.    Pulseline Adventure, LLC**

78.    In the Decision, the Forest Service ranked Pulseline Adventure, LLC second among best qualified applicants.

79.    Pulseline is an Idaho limited liability company.

80.    Because Pulseline was unknown in the Alaska heli-ski industry, Silverton researched Pulseline in online public databases and quickly discovered that:

    a.  Pulseline has never held a Forest Service special use permit;

    b.  Pulseline has never held a BLM special recreation permit;

    c.  Pulseline has no permit compliance history;

    d.  Pulseline has no record of safe operations as a permitted heli-ski operator;

    e.  Pulseline has little to no operating experience;

    f.  Pulseline's founder died after triggering an avalanche during a guided heli-ski trip;

Case 3:22-cv-00048-JWS   Document 1   Filed 03/14/22   Page 19 of 38

g.  Pulseline failed to obtain workers compensation insurance as required by Alaska law until after Silverton raised the issue in its April 2021 appeal of the District Ranger's decision, even though Pulseline had been offering guided yoga trips and other activities (Alaska Stat. § 23.30.045);

h.  Pulseline failed to register its commercial use of Alaska public lands, as required by Alaska law (11 Alaska Admin. Code § 96.018);

i.  Pulseline did not have an Alaska business license at the time it submitted its Prospectus application;

j.  For approximately half of its existence since it was incorporated in Idaho in 2017, Pulseline was in "administratively dissolved" status;

k.  Gabe Monroe, who owns 100% of Pulseline, was convicted of a criminal misdemeanor in 2007 after, according to the police incident report, Mr. Monroe "lost his temper" and "hit and battered" one of his employees at Cornerstone Concrete, LLC, a concrete company Mr. Monroe owns;

l.  Pulseline's owner was convicted of a criminal misdemeanor in 2008 after twice "pushing" a police officer during a traffic altercation;

m.  Pulseline's owner has been charged with criminal violations, but not convicted, in thirteen separate incidents from 2006 to 2019, including two for "battery-domestic violence;" and

n.  Pulseline's owner failed to pay federal corporate taxes owed by his company, Cornerstone Concrete, LLC, resulting in a 2016 IRS tax lien in

Case 3:22-cv-00048-JWS   Document 1   Filed 03/14/22   Page 20 of 38

the amount of $53,615 against Mr. Monroe individually and Cornerstone Concrete, LLC.

81. The secret evaluation panel and the Cordova District Ranger did not take into account any of these facts in determining that Pulseline was a "best qualified" applicant because Silverton presented these facts to the agency in its administrative appeal after the panel ranked the applicants, and after the District Ranger determined that Pulseline was "best qualified" and ranked above Silverton.

82. All of these facts show that Pulseline is not a "best qualified" applicant for a heli-ski permit under the Prospectus.

**E.    Chugach National Forest Bias Against Silverton Improperly Influenced the Cordova Ranger District Prospectus Decision.**

83. After the Cordova District Ranger ranked Pulseline ahead of Silverton, Silverton became concerned that bias against Silverton and its owner, Aaron Brill, improperly influenced the secret evaluation panel's scoring of Silverton's application and the Decision to not advance Silverton's application for further processing.  On information and belief, several representatives of the Chugach National Forest have been seeking retribution against Silverton and Mr. Brill as a result of several incidents.

84. From 2015 to 2017, the Chugach National Forest obstructed Silverton's efforts to apply for and obtain heli-ski permits on the Seward Ranger District and Glacier Ranger District of the Chugach National Forest.

85. Previously, the Chugach National Forest had an arbitrary policy of allowing only one heli-ski operator to operate within the Seward Ranger District and only one

Case 3:22-cv-00048-JWS    Document 1    Filed 03/14/22    Page 21 of 38

operator within the Glacier Ranger District, despite public demand for additional operators. Silverton persistently challenged the Chugach National Forest's policy of arbitrarily prohibiting more than one heli-ski operator within each Ranger District and requested authorization to submit a permit application.

86. Rather than allowing Silverton and other qualified applicants to compete for a heli-ski permit by submitting an application at the expiration of the permit term of the lone permitted operator within the Districts, the Chugach National Forest prematurely and covertly converted the only permitted operator's limited-term permit into a ten-year full-term permit without any public notice and without following the agency's mandatory process. Had the Chugach National Forest complied with its prescribed process, Silverton would have submitted a permit application at the expiration of the other operator's limited-term permit.

87. On information and belief, this backroom action by the Chugach National Forest was done to retaliate against Silverton for persistently challenging the National Forest's policy allowing only one operator in each Ranger District and to block Silverton from submitting a permit application. Representatives of the Chugach National Forest were aware that Silverton intended to submit a permit application at the expiration of the limited-term permit of the lone permitted operator. Despite Silverton's requests, representatives of the Chugach National Forest informed Silverton that it would not accept any application from Silverton for a heli-ski special use permit.

Case 3:22-cv-00048-JWS   Document 1   Filed 03/14/22   Page 22 of 38

88.     Eventually, after Members of Congress and the Chief of the Forest Service intervened on Silverton's behalf to reverse the Chugach National Forest's arbitrary policy of only allowing one heli-ski operator per Ranger District, the Chugach National Forest reluctantly reversed course and permitted Silverton and other applicants to apply for a heli-ski special use permit.

89.     Due to the intervention by Members of Congress and the Chief of the Forest Service and support from the local community, Silverton overcame the Chugach National Forest's efforts to block Silverton from applying for a special use permit and, in 2017, Silverton obtained a permit covering a small portion of the Seward Ranger District.

90.     On information and belief, another incident involving representatives of the Chugach National Forest's Glacier Ranger District caused the Chugach National Forest to hold bias against Silverton.  In approximately December 2016, an employee of the Municipality of Anchorage informed Mr. Brill that representatives of the Glacier Ranger District were angry that Silverton had received a permit to conduct heli-skiing operations on land managed by the Municipality of Anchorage that was surrounded by land managed by the Glacier Ranger District.  The Glacier Ranger District had repeatedly rejected Silverton's request for a permit to operate on the adjacent Chugach National Forest land and the Municipality of Anchorage employee reported that the Glacier Ranger District representative was angry that the Municipality of Anchorage issued a permit against the Glacier Ranger District's wishes.

Case 3:22-cv-00048-JWS   Document 1   Filed 03/14/22   Page 23 of 38

91.     In the past ten years, Silverton has submitted FOIA requests to the Chugach National Forest seeking information related to the above incidents.  On information and belief, those FOIA requests have additionally caused the Chugach National Forest to hold bias and animosity against Silverton and its owner, Mr. Brill.

92.     As a result of the incidents described above, representatives of the Chugach National Forest displayed bias and animosity toward Silverton that resulted in improper involvement and influence over the Cordova Ranger District Prospectus evaluation panel and Silverton's application in the Cordova Ranger District Prospectus.

93.     That bias again surfaced in the Forest Supervisor's Decision when Supervisor Jeff Schramm defended the secret panel's perplexing decision to rank Silverton below Pulseline by citing unfounded vague "concerns" by an unnamed Forest Service employee that Silverton "might be manipulating the system" and that the Forest Supervisor was aware of an unidentified "possible permit violation."  Silverton has never received any notice of noncompliance with its permits.  The references by the Forest Supervisor reveal irrational, unwarranted, and continued anti-Silverton bias, a fact that contributed to the secret evaluation panel's bewildering decision to rank Silverton outside of the top three applicants and the Forest Supervisor's refusal to adjust that ranking.

94.     Forest Supervisor Schramm's reliance in the Decision on unspecified and unsupported "concerns" that Silverton "might be manipulating the system" and of a "possible permit violation" by Silverton is arbitrary and capricious, and belies the Forest

Supervisor's assertion that the ranking and scoring of Prospectus applicants was based on the applications submitted.

95.     On information and belief, the bias identified in the paragraphs above affected the secret evaluation panel's scoring and ranking of Silverton's application in the Prospectus.

96.     The bias identified in the paragraphs above is a gap in the administrative record that was a basis of the Decision.  Silverton anticipates that the identified bias will not appear in the record as part of the Forest Service's Decision.

**F.     Silverton's Freedom of Information Act Request**

97.     Because the District Ranger's March 1, 2021 decision did not take into account crucial facts and because of the past incidents involving Chugach National Forest officials, Silverton submitted a Freedom of Information Act request (the "FOIA Request") on March 11, 2021, requesting the Forest Service to unmask the identities of the evaluation panel and to produce information related to the selection decision, including a copy of Pulseline's application and the evaluation panel's score reports for Silverton's and Pulseline's applications.

98.     Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), the Forest Service was required to respond within twenty working days.

99.     On July 16, 2021, more than four months after Silverton submitted the FOIA Request, Regional Forester David Schmid replied to Silverton's request.  In that response, the agency refused to release the identities of the secret evaluation panel

members under the FOIA's "deliberative process" and "personal privacy" exceptions.

*See* 5 U.S.C. § 552(b)(5) and (6).

100.    The Chugach National Forest illegally and intentionally delayed responding to Silverton's FOIA Request until after Silverton's appeal of the District Ranger's decision declining to advance Silverton's application had been heard.  This illegal action prevented Silverton from obtaining additional information as permitted by FOIA that Silverton needed for its appeal.

101.    The Regional Forester identified only two exemptions that arguably apply to the names of the secret panel members—Exemption 5 (the "deliberative process privilege," which exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency") and Exemption 6 (the "personal privacy privilege," which protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy").  5 U.S.C. § 552(b)(5) and (6).

102.    Neither exemption shields the federal employee panel members' names from mandatory disclosure.  The mere names of the panelists do not implicate any deliberative process privilege under Exemption 5, or any personal privacy interest under Exemption 6.

103.    The public interest in knowing the names of the federal employee panelists who made decisions about public recreation on public lands outweighs the panelists' individual privacy interest and disclosure of the names would advance the public interest.

104. The Forest Supervisor's August 9, 2021 Decision emphasized that the evaluation panel members "were selected for their substantial experience" and "screened for their objectivity" and that the "selection process was unbiased" because the agency screened out individuals with "past experience" relating to the applicants.

105. Disclosure will reveal whether the panelists possessed the heli-skiing permit administration experience emphasized by the Forest Supervisor in his Decision. Disclosure will allow the public to ascertain whether the panelists were able to execute their duties in the "unbiased" manner stated by the District Ranger and the Forest Supervisor.

106. The identities of the secret evaluation panel members is a gap in the administrative record that was a basis of the Decision.

107. On August 16, 2021, pursuant to 7 C.F.R. § 1.9, Silverton appealed the portion of the Forest Service's response to the FOIA Request that withheld the names of the secret evaluation panel members. *See* USDA FOIA Appeal 2021-FS-WO-00139-A.

108. Pursuant to 5 U.S.C. § 552(a)(6)(A)(ii) and 7 C.F.R. § 1.9(b), the Forest Service was required to respond to Silverton's appeal within 20 business days, which period elapsed on September 14, 2021.

109. To date, the Forest Service continues to refuse to resolve Silverton's appeal, despite repeated correspondence from Silverton's counsel requesting a response as required by law.

110.    To date, the Forest Service continues to refuse to identify the secret evaluation panel members.

111.    To date, the Forest Service continues to refuse to produce the secret evaluation panel members' score reports for the Prospectus.

112.    On information and belief, the Chugach National Forest's refusal to provide Silverton the identities of the secret evaluation panel as required by FOIA is part of a pattern of Chugach National Forest bias and obstruction against Silverton.

**G.    The Chugach Forest Supervisor Arbitrarily Affirmed the Cordova District Ranger's Ranking Decision**

113.    On April 12, 2021, Silverton appealed the Cordova District Ranger's decision to the Chugach National Forest Supervisor pursuant to 36 C.F.R. Part 214. Silverton asserted that the Cordova District Ranger ignored substantial evidence showing that Silverton was better qualified than Pulseline and that the Cordova District Ranger should have rejected Pulseline's application because Pulseline was "not qualified" and lacked the "technical capability" to comply with the terms of a special use permit pursuant to 36 C.F.R. § 251.54(e)(5).

114.    Silverton requested the Forest Supervisor to reverse the Cordova District Ranger's decision to process Pulseline's permit application and direct the District Ranger to advance Silverton's application for further processing as a "best qualified" applicant.

115.    On August 9, 2021, the Forest Supervisor affirmed the District Ranger's decision and denied the relief Silverton requested.

116. The Forest Supervisor determined that the Prospectus criteria "were intended to evaluate the quality of the applicant's operational plans, procedures, and materials," *not* the applicants' demonstrated operations history and verifiable safety record.

117. That Decision is contrary to the Prospectus's stated goal of selecting the "best qualified" applicants based upon the Prospectus's stated selection criteria, and contrary to the evidence showing that Silverton is a "best qualified" applicant while Pulseline is not.

118. The Decision violates the agency's binding obligation not to issue a special use permit to an entity unless it is "qualified," has the "technical capability" to comply with the terms of the authorization, and will not create substantial risks to "public health or safety." 36 C.F.R. § 251.54; FSH 2709.11, Chapter 10, at 15.

119. It is arbitrary and capricious for an agency to identify the standard for its decision but then not apply it, as the Forest Service did here by stating that it would use the Prospectus to select the "best qualified" applicants but then ranking Pulseline above two objectively better-qualified applicants—Silverton and Valdez Heli-Ski.

120. In the Decision, the Forest Supervisor arbitrarily determined that Pulseline was more qualified than Silverton, and that the secret panel and the District Ranger appropriately ranked Pulseline ahead of Silverton, because some of Pulseline's guides have field experience acting as heli-ski guides for other operators. But the Forest Supervisor's Decision arbitrarily discounted the extensive field experience of Silverton's

Case 3:22-cv-00048-JWS   Document 1   Filed 03/14/22   Page 29 of 38

guides and Silverton's years of experience as a permitted operator with a perfect safety record and permit compliance record.

121.    It is arbitrary and capricious for an agency to treat the same qualifications differently in making a decision, as the Forest Service did here in awarding Pulseline more points for its safety policy than Silverton when Silverton has a perfect safety record operating permitted heli-ski operations and Pulseline has no safety record operating a permitted heli-ski operation.

122.    Despite the Prospectus statement that applicants awarded a permit under the Prospectus "must commit to . . . set a good example regarding ethical behavior, compliance with regulations, low impacts practices, and caring for the land," the Forest Supervisor's Decision did not take into account Pulseline's lack of operational history, violations of corporate laws, or Pulseline's owner's criminal history and failure to pay federal corporate taxes.

123.    The Forest Supervisor acknowledged that Pulseline had failed to comply with Alaska law requiring Pulseline to register its use of state lands for commercial heli-skiing.  But the Forest Supervisor excused Pulseline's failure to comply with the law because, in the Forest Supervisor's opinion, the State of Alaska's "roll out" of the registration requirement "was not made explicit for potentially affected businesses." Because of this, the panel "did not reduce [Pulseline's] scores for noncompliance" with Alaska law, despite the Prospectus's goal of ensuring that permittees "set a good example

Case 3:22-cv-00048-JWS   Document 1   Filed 03/14/22   Page 30 of 38

regarding ethical behavior, compliance with regulations, low impacts practices, and caring for the land."

124.    The Forest Supervisor determined that Pulseline's owner's criminal history was not relevant to whether Pulseline is "best qualified" (although the secret evaluation panel did not take it into account) because Pulseline submitted reference letters allegedly showing that Pulseline's owner has "a history of professionalism" and "good judgment."

125.    Those assertions are contrary to the evidence before the Forest Service showing that Mr. Monroe, Pulseline's owner and operator, has been charged with criminal violations in thirteen incidents spanning the thirteen-year period from 2006 through 2019 and was convicted of criminal misdemeanors after pushing a police officer and battering one of his employees at another company he owned.

126.    The Forest Supervisor determined that Pulseline's owner's failure to pay over $50,000 in federal corporate taxes for another business he owns was not relevant to whether Pulseline is "best qualified," allegedly because "the lien filed against Mr. Monroe was apparently due to an IRS error and was released without liability." The Forest Supervisor provided no support for this assertion. To the contrary, Silverton submitted evidence to the Forest Supervisor that the IRS lien remained in place for approximately four years before it was discharged shortly before Pulseline submitted its application in response to the Prospectus.

127.    The Forest Supervisor's determination that Pulseline's repeated failure to comply with Alaska law and its owner's failure to pay federal corporate taxes is not relevant to whether Pulseline is "best qualified" is arbitrary and capricious.

128.    The Forest Supervisor arbitrarily and capriciously credited the positive attributes of Mr. Monroe (such as guiding experience) but ignored his history of failing to comply with federal and state law (failure to pay federal corporate taxes and criminal history).

129.    The Forest Supervisor upheld the evaluation panel's decision to award Pulseline full points for criteria B-1 (experience performing guided heli-ski services) and to award Pulseline more points than Silverton for criteria O-3 (operating in shared use areas), even though Pulseline has never held a Forest Service special use permit or a BLM special recreation permit and thus has no record of working with those agencies, has no experience cooperating with fellow permit holders who operate in the same terrain, has no experience managing the near-daily duties of ensuring compliance with permit terms and conditions, and has no experience adhering to a heli-ski operating plan.

130.    Pulseline should have received no points for criteria O-1 (permit compliance).  The "objective" of that criterion is: "Company complies with the terms and conditions of permits issued by regulatory agencies like the Forest Service."  Pulseline has never been issued a permit, has never held one, and has no experience complying with one.

131.    Pulseline should have received no points for criteria O-2 (performance history).  The "objective" of that criterion is: "Records demonstrate sustained good performance and any issues identified are satisfactorily resolved."  Pulseline has no performance history and, therefore, has no records showing sustained good performance.

132.    Silverton challenges the secret evaluation panel's scores and Forest Supervisor's Decision as to each of the Prospectus selection criteria as to Pulseline and Silverton.

133.    The Forest Supervisor affirmed the District Ranger's decision to rank Pulseline ahead of Valdez Heli-Ski, even though Valdez Heli-Ski (like Silverton) is an experienced operator with a demonstrated history of safe operations and permit compliance.

134.    It is arbitrary and capricious for an agency to ignore evidence that runs against its decision, as the Forest Service did here by defiantly refusing to admit that the negative facts about Pulseline—**none of which the secret panel considered**—require any change in the panel's ranking and score of Pulseline.  *Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 924 (D.C. Cir. 2017).

135.    The Forest Supervisor's irrational method of determining that Pulseline is "best qualified" based solely on untested plans and speculative operating procedures is arbitrary and capricious because it requires one to ignore known adverse and negative facts about Pulseline.

136.   The record shows that Pulseline is not qualified under the Prospectus selection criteria, and is not "best qualified" to hold a Forest Service special use permit as compared to Silverton.

## COUNT I
### Arbitrary and Capricious Final Agency Action
### Administrative Procedure Act, 5 U.S.C. § 706(2)(A)

137.   Silverton incorporates and re-alleges every allegation set forth above.

138.   The District Ranger's and Forest Supervisor's refusal to adjust the evaluation panel's scores ranking Pulseline ahead of Silverton, in the face of record evidence that the panel did not consider demonstrating that Pulseline is not qualified to hold a special use permit, is arbitrary and capricious.

139.   The Administrative Procedure Act provides that the Court "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

140.   The Decision is arbitrary and capricious because it is contrary to evidence before the agency demonstrating that Silverton is a "best qualified" applicant under the Prospectus and that Pulseline is not.

141.   The Decision is "not in accordance with law" because it violates binding Forest Service regulations requiring the agency to "reject any proposal" for a special use permit if the agency determines that "the proponent is not qualified"; or the proponent does not demonstrate "technical capability to undertake the use and to fully comply with the terms and conditions of the authorization."  36 C.F.R. § 251.54.

Case 3:22-cv-00048-JWS   Document 1   Filed 03/14/22   Page 34 of 38

142. Having established that the goal of the Prospectus is to select the "best qualified" applicants, the Forest Service must evaluate applications in accordance with that goal.

143. It is arbitrary and capricious for an agency to put blinders on, and ignore evidence that runs against its decision, as the Forest Service did here by refusing to change the secret panel's rankings of Pulseline and Silverton given the significant negative business information about Pulseline that the panel did not consider.

144. It is arbitrary and capricious to credit the experience of Pulseline's guides but not the extensive experience of Silverton's guides and the extensive experience of Silverton as a permitted operator with a perfect safety record. The agency acted in a defiant and perplexing manner by insisting that the violations of state law by Pulseline and its owner had no relevance to the Prospectus Decision. The agency embraced an arbitrary, illogical, and counterfactual position by determining that the secret panel appropriately scored applicants solely on the written applications and that actual known negative facts about Pulseline's qualifications, and that undisputed positive facts about Silverton, were of little or no weight in identifying the "best qualified" applicants.

145. The agency acted in an irrational and arbitrary manner by insisting, despite all facts to the contrary about Pulseline that the panel did not consider, that Pulseline is a "best qualified" applicant, and "better qualified" than Silverton.

146.     The Court should hold unlawful and set aside the Decision to the extent it ranked Pulseline ahead of Silverton because that portion of the Decision is arbitrary and capricious and not in accordance with law pursuant to 5 U.S.C. § 706(2)(A).

147.     Silverton does not request the Court to vacate the Decision to advance the applications of Points North Heli-Adventures, Inc. and Valdez Heli-Ski Guides, LLC.

## COUNT II
## Unlawful Withholding of Information Subject to Disclosure
## Freedom of Information Act, 5 U.S.C. § 552(a)(4)(B)

148.     Silverton incorporates and re-alleges every allegation set forth above.

149.     The FOIA Request seeks "agency" records within the Forest Service's possession and control.

150.     The Forest Service wrongfully withheld the identities of the evaluation panel members in violation of 5 U.S.C. § 552(a)(6)(A) and (a)(4)(B).  No basis in FOIA exists to withhold the records.

151.     The Forest Service's refusal to resolve Silverton's appeal of the agency's July 16, 2021 decision withholding the identities of the evaluation panel members violates the agency's obligation to respond to an appeal within 20 business days.  5 U.S.C. § 552(a)(6)(A)(ii).

152.     Silverton has been harmed by the Forest Service's failure to produce records identifying the secret evaluation panel members, and Silverton will continue to be harmed unless the Court compels the Forest Service to produce the requested records as required by law.

153. Silverton is entitled to declaratory relief finding that the Forest Service violated the FOIA and that the FOIA requires the Forest Service to produce the identities of the evaluation panel members.

154. Silverton is entitled to injunctive relief ordering the Forest Service to immediately produce records identifying the evaluation panel members without further delay.

## RELIEF REQUESTED

WHEREFORE, Silverton demands judgment in its favor and against the Forest Service, and respectfully requests the following relief:

a. A declaration that the Forest Service's August 9, 2021 Decision violates Forest Service special use regulations and the Administrative Procedure Act;

b. Vacatur of the Forest Service's August 9, 2021 Decision to the extent it ranked Pulseline ahead of Silverton;

c. An order remanding this matter to the Forest Service with instructions to advance Silverton's application for further processing as a "best qualified" applicant;

d. A declaration that the Forest Service's failure to produce records identifying the names of each member of the evaluation panel violates the Freedom of Information Act;

e. An order directing the Forest Service to immediately produce to Silverton records containing the name of each member of the evaluation panel;

f. An order awarding Silverton its attorneys' fees and costs, including under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

g. Such other relief as this Court deems appropriate.

Respectfully submitted this 11th day of March, 2022,

WILLIAMS WEESE PEPPLE & FERGUSON, P.C.

s/ Ezekiel J. Williams
Ezekiel J. Williams, *pro hac vice admission pending*
John H. Bernetich, *pro hac vice admission pending*
1801 California St., Suite 3400
Denver, CO 80202
(303) 228-2529
zwilliams@williamsweese.com
jbernetich@williamsweese.com

*Attorneys for Plaintiff Silverton Mountain Guides LLC*