**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

|  |  |  |
|---|---|---|
| SILVERTON MOUNTAIN GUIDES LLC, an Alaska limited liability company, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:22-cv-00048-HRH |
| U.S. FOREST SERVICE, an agency of the U.S. Department of Agriculture, | ) ) ) | |
| Defendant, | ) ) | |
| PULSELINE ADVENTURE, LLC | ) ) | |
| Defendant-Intervenor. | ) ) ) | |

## ANSWER BY DEFENDANT-INTERVENOR PULSELINE ADVENTURE LLC

For its answer to plaintiff's complaint, defendant-intervenor Pulseline Adventure, LLC ("Pulseline") admits, denies, and avers as follows:

1.      Pulseline admits the allegations contained in the first and second sentences. Pulseline further admits that defendant U.S. Forest Service rejected plaintiff's application and determined that Pulseline's proposal was superior to plaintiff's proposal. Pulseline denies the remaining allegations. As to plaintiff's reference to the names of the individuals on the evaluation panel being kept confidential, the deciding official of the U.S. Forest Service confirmed that the evaluation was "consist with the requirements of applicable laws, regulations and policies." Plaintiff is aware that the names of individuals on evaluation panels are kept confidential as a matter of agency practice and did not object to this policy in prior situations or

1

before applications were submitted in this matter. Thus, plaintiff has waived any claim that the identities of such individuals should have been made public.

As to plaintiff's insistence that it has a perfect safety record, the deciding official of the U.S. Forest Service noted that another company owned by the owner of plaintiff, Aaron Brill, which offers helicopter skiing "has had a client fatality while offering guiding skiing in avalanche terrain." In that instance, a client of one of Mr. Brill's companies that provides helicopter skiing fell and died while being guided by Mr. Brill's company after sliding about 1,500 feet down the mountain at Silverton Mountain Ski Area pursuant to an authorization to operate issued by the Bureau of Land Management (BLM). An article in the Denver Post on January 12, 2012 stated:

> Authorities say a skier has died after falling and sliding about 1,500 feet at the Silverton Mountain ski resort.
>
> The Durango Herald reports (http://bit.ly/yUQsOs) that 25-year-old Sydney Elizabeth Owens of Denver died Saturday.
>
> San Juan County Undersheriff Kristine Burns says Owens was skiing on the Riff Run with a Silverton Mountain guide when the accident occurred.
>
> She says emergency personnel arrived immediately but were unable to revive Owens.

Pulseline has never a client die while on a guided ski trip. Given the fatality at Silverton Mountain Ski Area and Mr. Brill's assertion in the plaintiff's proposal that Mr. Brill's experience was part of plaintiff's qualifications, plaintiff's assertion that it has a "perfect safety record" in guided ski trips was deliberately misleading and may be a basis for disqualification of plaintiff's application at issue and future applications to the federal government. In its cover letter to its application, plaintiff stated:

> Silverton Mountain Guides and Aaron Brill together as the applicant have extensive technical experience, specialized safety protocols and guide training techniques unique to applicant.

Plaintiff, however, deliberately omitted the fact that Mr. Brill's unique safety protocols and guide training techniques led to the death of a client.

As to plaintiff's allegation that it has a "perfect compliance record [] operating under multiple federal and state heli-ski permits," plaintiff in fact has, on at least one occasion, failed to comply with BLM's critical safety stipulations pursuant to plaintiff's BLM authorization to provide heli-skiing in the Neacola Mountains. In that instance, on April 25, 2107, April Rabruck, an assistant field manager for the BLM's Anchorage office, documented that BLM had "stipulated that Silverton Mountain Guides must contact and coordinate with [another heli-ski operator in the same area, Triumvirate] (per [Triumvirate] this has not occurred)."

As to and contrary to plaintiff's allegation that Pulseline was unqualified, the deciding official for the U.S. Forest Service found:

> that Pulseline is qualified to hold a special use permit for the reasons proffered in the Responsible Official's Responsive Statement, as well as for the reasons discussed above. *See* Appeal File 0181, p. 3-6. Pulseline's application met the requirements and goals of the prospectus. Additionally, through its extensive and well thought out operating plan, Pulseline clearly demonstrated that it has the necessary capabilities, skills, experience, and technical know-how to provide high quality and safe heli-skiing services in the Chugach National Forest. I am confident that they will do so while promoting an understanding and appreciation of the national forests and minimizing impacts to other resources and forest users. In short, they are more than qualified.

> [] Pulseline obviously put serious thought and effort into their operations and safety plan. Their plan is extensive, highly detailed, and shows that they take safety seriously and have the technical know-how to operate safely. It is also substantially better than SMG's safety plan, which seemed brief and lacked detail.

2.     Pulseline denies the allegations in the first sentence as to plaintiff having a perfect safety and permit compliance record and denies the allegation that plaintiff has never had any serious injuries or incidents while on a guided trip. Pulseline denies the remaining allegations in

3

the first sentence for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted. Pulseline admits that the U.S. Forest Service declined to advance plaintiff's application and decided to advance the application of Pulseline. Pulseline denies the remaining allegations. Pulseline is not a startup company, currently holds permits with the U.S. Forest Service and the BLM, unlike Mr. Brill has not had any of its clients die while on guided ski trips, has maintained all required insurance coverage, has complied with all Alaska public lands laws and is owned by two individuals who have an extensive amount of experience in providing safe guided ski trips. In addition, as Mr. Brill has stated with regard to avalanches, "You can be an expert scientist, but there are too many unknowns with avalanches. We all live on the novice scale." http://www.mountainonline.com/aaron-brill-silverton-mountain-colorado/.

 The deciding official at the U.S. Forest Service logically found that "the relevant experience for a corporate entity is that of its owner(s), guides [and] operational staff." The deciding official also noted that "Pulseline and its guides likely have more experience guiding in the proposed use areas than [plaintiff] or any other applicants." In addition, the deciding official at the U.S. Forest Service found that "the Prospectus did not require applicants to be current or previous heli-ski permit holders." Plaintiff did not object to the terms of the Prospectus. Therefore, plaintiff has waived any assertion that experience by an entity was required by the Prospectus or to be taken into account in the evaluation of applicants.

 3. Pulseline admits the allegations in the first sentence. Pulseline admits that the U.S. Forest Service determined that Pulseline's proposal was superior to plaintiff's proposal. Pulseline denies the remaining allegations. Pulseline has never a client die while on a guided ski trip. Given the fatality at Silverton Mountain Ski Area and Mr. Brill's citing of his experience as being part of plaintiff's qualifications, plaintiff's assertion that it has a "perfect safety record" in

4

guided ski trips was deliberately misleading and may be a basis for disqualification of plaintiff's application at issue and future applications to the federal government.

Contrary to plaintiff's allegations, the deciding official at the U.S. Forest Service found that:

> information in the record raises questions about [plaintiff's] compliance with state law and/or permit requirements. For example, during reference checks an Alaska Department of Natural Resources employee indicated he would be "very cautious" about [plaintiff] and raised concerns about [plaintiff] storing fuel on state lands without a permit. Appeal File 0110, p. 3-4. Further, a permit administrator for the Forest Service expressed concerns that [plaintiff] might be manipulating the system and mentioned a possible permit violation. *Id.* at p. 4. While the record is hazy about [plaintiff] violating state law or its permits, and while I do not find that this information is grounds for reducing [plaintiff]'s scores, compliance problems may be indicated since more than one reference expressed concerns.

4.      Pulseline admits the allegations in the first sentence as to the objectivity of the members of the U.S. Forest Service panel. Pulseline denies the remaining allegations in the first sentence for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted. In his final decision, the U.S. Forest Service deciding official stated:

> [The] decision was grounded in the Forest Service's extensive experience assessing which entities are best qualified to provide helicopter skiing guiding services on the national forests. A four-person evaluation panel evaluated the parties' applications using selection criteria provided in the prospectus. The evaluation panel members were selected for their substantial experience with special use permits, helicopter skiing operations, and other winter sports and outdoor recreation services. Appeal File 0006, p. 10. Additionally, the panel members were screened to ensure their objectivity. Individuals with past experience administering permits relating to the applicants were screened out to ensure the selection process was unbiased. *E.g.,* Appeal File 0054. Moreover, though the panel members initially conducted their evaluations independently, the panel convened twice to review and rank applications in order to make a joint recommendation to the Authorized Officer and also made follow-up calls during this period with state and federal agency permit administration contacts. *See* Appeal File 0006, p. 10.

> Based upon my review of the evaluation process and the full appeal record, I am confident that the Forest Service—through the panel's recommendation and District Ranger Namitz's decision—appropriately and reliably applied its expertise and experience with helicopter skiing to select the best qualified applicants,

5

including Pulseline. This appeal largely boils down to a disagreement in judgment between the Forest Service evaluation panel and an unsuccessful permit applicant.

5. Denies.

6. Pulseline admits the allegations in the first sentence as an accurate representation of plaintiff's requests. Pulseline denies that plaintiff is not challenging the Forest Service's decision to advance Valdez Heli-Ski Guides, LLC's application. In its requested relief, plaintiff requests the Court to vacate the U.S. Forest Service's decision only to "the extent it ranked Pulseline ahead of Silverton" and issue an order to advance "Silverton's application for further processing. Relief Requested (b), (c). Plaintiff does not request that the Court find that Pulseline's proposal be scored behind Valdez Heli-Ski Guides, LLC's proposal. Pulseline admits the remaining allegations, including that Valdez Heli-Ski Guides, LLC and Points North Heli-Adventures' are qualified to hold heli-ski permits.

7. Pulseline admits the allegations as an accurate representation of plaintiff's requests.

8. The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

9. The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

10. The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

11. Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

12. Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

13.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

14.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

15.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

16.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

17.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

18.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

19.     Admits.

20.     Admits.

21.     Admits.

22.     Admits.

23.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

24.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

25.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

26.     Admits the allegations to the extent supported by the internal, non-binding policy manual cited, which is the best evidence of its contents; otherwise denies the allegations.

27.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

28.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

29.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

30.     Denies.

31.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

32.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

33.     Admits.

34.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

35.     Denies.

36.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

37.     Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

38.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

8

39.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

40.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

41.     Admits.

42.     Admits the allegations to the extent supported by the document being referenced, which is the best evidence of its contents; otherwise denies the allegations.

43.     Admits the allegations to the extent supported by the document being referenced, which is the best evidence of its contents; otherwise denies the allegations. One of the reference letters submitted by plaintiff was prepared by the Bureau of Land Management, which is the agency that has authorized Mr. Brill's operations at Silverton Mountain Ski Area. In that reference letter, the BLM representative stated that "Aaron Brill and Silverton Mountain/Silverton Guides [have] an excellent safety and operating history." The BLM representative, however, failed to disclose that a client of Mr. Brill's and Silverton Mountain/Silverton Guides died while being guided by Mr. Brill's company after sliding about 1,500 feet down the mountain at Silverton Mountain Ski Area, which contradicts the assertion that Mr. Brill and his companies have an "excellent safety and operating history."

44.     Admits the allegations to the extent supported by the document being referenced, which is the best evidence of its contents; otherwise denies the allegations.

45.     Admits the allegations to the extent supported by the document being referenced, which is the best evidence of its contents; otherwise denies the allegations.

46.     Admits the allegations to the extent supported by the document being referenced, which is the best evidence of its contents; otherwise denies the allegations.

47.     Admits the allegations to the extent supported by the document being referenced, which is the best evidence of its contents; otherwise denies the allegations.

48.     Admits the allegations to the extent supported by the document being referenced, which is the best evidence of its contents; otherwise denies the allegations.

49.     Admits.

50.     Denies.

51.     Admits the allegations to the extent supported by the document being referenced, which is the best evidence of its contents; otherwise denies the allegations.

52.     Admits the allegations to the extent supported by the document being referenced, which is the best evidence of its contents; otherwise denies the allegations.

53.     Pulseline denies that plaintiff has a perfect safety and operations record, but not that plaintiff falsely made such an assertion in its application. Pulseline denies the remaining allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted. Pulseline has never a client die while on a guided ski trip. Given the fatality at Silverton Mountain Ski Area and Mr. Brill's citing of his experience as being part of plaintiff's qualifications, plaintiff's assertion that it has a "perfect safety record" in guided ski trips is deliberately misleading and may be a basis for disqualification of plaintiff's application at issue and future applications to the federal government.

54.     Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

55.     Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

56. Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

57. Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

58. Pulseline denies that plaintiff has had a perfect safety record providing heli-skiing. Pulseline denies the remaining the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted. Pulseline has never a client die while on a guided ski trip. Given the fatality at Silverton Mountain Ski Area and Mr. Brill's citing of his experience as being part of plaintiff's qualifications, plaintiff's assertion that it has a "perfect safety record" in guided ski trips is deliberately misleading and a basis for disqualification of plaintiff's application at issue and future applications to the federal government.

59. Pulseline denies that plaintiff has had a perfect safety record providing heli-skiing. Pulseline denies the remaining the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted. Pulseline has never a client die while on a guided ski trip. Given the fatality at Silverton Mountain Ski Area and Mr. Brill's citing of his experience as being part of plaintiff's qualifications, plaintiff's assertion that it has a "perfect safety record" in guided ski trips is deliberately misleading and may be a basis for disqualification of plaintiff's application at issue and future applications to the federal government.

60. Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

61. Pulseline denies the remaining the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

62. Pulseline denies the remaining the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

63. Pulseline denies the remaining the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

64. Pulseline denies the remaining the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

65. Pulseline denies the remaining the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

66. Pulseline denies the remaining the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted

67. Pulseline denies the remaining the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

68. Denies.

69. Admits.

70. Pulseline admits the allegations as to Points North and Valdez Heli-Ski's credentials. Pulseline denies the remaining the allegations.

71. Pulseline admits the Forest Service evaluated Pulseline's proposal as being superior to Valdez Heli-Ski's proposal and that Valdez Heli-Ski is an experienced operator with a demonstrated history of safe operations and permit compliance. Pulseline denies the remaining allegations.

72. Denies.

73.     Denies.

74.     Pulseline admits the allegations in the second sentence.  Pulseline denies the remaining allegations.

75.     Pulseline admits the Cordova District Ranger agreed with the score assigned to Pulseline's proposal.  Pulseline denies all the remaining allegations.  Pulseline has never a client die while on a guided ski trip.  Given the fatality at Silverton Mountain Ski Area and Mr. Brill's citing of his experience as being part of plaintiff's qualifications, plaintiff's assertion that it has a "perfect safety record" in guided ski trips is deliberately misleading and may be a basis for disqualification of plaintiff's application at issue and future applications to the federal government.

76.     Admits.

77.     Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

78.     Admits.

79.     Admits.

80.     Pulseline denies the allegations in 80(a)-(h) and (n).

As to the allegations in 80(f), at the time of the incident, Mr. Karitis, who is the individual being referenced in the allegation, was the sole owner of Pulseline, which at the time had no employees, and was actually guiding for another operator, South Eastern Backcountry Adventures (SEABA), at the time of his death.  Gabe Monroe, one of the managers, took over operation of Pulseline after his death at the request of Mr. Karitis' family as a way to keep his legacy alive.  None of the current members and staff of Pulseline were with Mr. Karitis when he died.  According to a Freeskier article written shortly after his death, Mr. Karitis dug a snow pit

that, "indicated that snow conditions were safe to ski on. (This very snow pit has since been evaluated, confirming Aaron's original assessment as accurate.) He ski cut the top of the slope to further investigate stability. This ski cut produced no results, also indicating that snow conditions were presumably safe."  Out of an abundance of caution and to ensure the safety of his clients, Mr. Karitis himself skied down the slope first to test it before sending any of his clients.  An avalanche then occurred notwithstanding that the appropriate stability tests has shown the area was safe.  Because of Mr. Karitis' skill set and safe practices, none of his clients was hurt.  Rather than demonstrate that Mr. Karitis was not a qualified or safe guide, the facts show exactly the opposite.  There is no evidence that Mr. Karitis "triggered" the avalanche and plaintiff's effort to disparage Mr. Karitis' legacy solely in an effort to prevail in a lawsuit and win a permit is unfortunate and extremely disrespectful to Mr. Karitis' legacy and to that of all of the highly qualified helicopter ski guides who have lost their lives in an effort to provide people with this experience.  Many highly qualified guides die in avalanches.  Their deaths are not necessarily due to any mistakes on their part, but because they are engaged in a high-risk activity.

As reported by Freeskier.com:

[Mr. Karitis had] an impeccable safety record and extensive avalanche education, [Mr. Karitis] always aired on the side of caution.  [At the time of his death], his conduct put the safety of his clients first.

Prior to opening a run in the "Tele Bowl" area, [Mr. Karitis] directed his clients to stay on the ridge while he investigated snow conditions. Atop the ridge, [Mr. Karitis] dug a snow pit that indicated snow conditions were safe to ski on. (This very snow pit has since been evaluated, confirming [Mr. Karitis]'s original assessment as accurate.) [Mr. Karitis] ski cut the top of the slope to further investigate stability. This ski cut produced no results, also indicating that snow conditions were presumably safe. [Mr. Karitis] told his group that he would ski down slope, stop, and then radio for them to follow his tracks one skier at a time. The group had a vantage point in which they could watch his descent. As [Mr.

Karitis] skied toward the regroup location, a large avalanche was triggered mid slope, carrying him approximately 700 feet down the slope.

As reported by Powder Magazine:

Photographer Will Wissman, who has been shooting skiing around Haines for 11 years, skied with Karitis last year in a similar zone and is intimately familiar with the mountains where SEABA flies. "I know right where he was and that's exactly where you'd want to be in this situation," Wissman said Monday. "Given the snowpack, it was the most mellow terrain possible."

With sporadic snowfall this season in Alaska, with long periods of high pressure and cold nights, guides in Alaska have been limited with terrain options. But according to Wissman, one of the most dependable zones is called Tele Bowl, which contains several skiable lines including Tele 2.5, the site of the avalanche. Wissman referred to this area as a "workout zone," where guides can access good skiing for their clients in relatively safe and conservative terrain. "It is easily the most manageable terrain they have up there," Wissman said. "There are quite a few different aspects, meaning you can access the south, east and west aspects in the same general area. So if you don't like the west aspect, for instance, you can get somewhere else very easily. But this is really, really far from being aggressive terrain."

Wissman said Karitis exhibited an incredibly high level of professionalism and knowledge about guiding and skiing. He also noted that in the past year Karitis obtained his Canadian Level II avalanche safety certification, which is more rigorous and demanding than the U.S. equivalent. "He was trying to further his education," he said. "He is a legit guide, and someone I really respect."

As to the allegation in 80(i) that "Pulseline did not have an Alaska business license at the time it submitted its Prospectus application," Pulseline admits the irrelevant allegation and notes that, as the deciding official noted but plaintiff apparently did not, the Prospectus did not require any applicants to obtain any required licenses until they were actually awarded a permit. Thus, plaintiff's allegation is deliberately misleading.

Pulseline admits the irrelevant allegations in 80(j) and briefly entered into this status to ensure its state of operations were accurately reflected in its registered corporate status and it was fully in compliance with applicable requirements.

Pulseline admits the irrelevant allegations in 80(k) as to Mr. Monroe owning Cornerstone Concrete, LLC and being convicted of disorderly conduct for defending himself from a non-employee who had initiated a confrontation with Mr. Monroe by punching him in the face without provocation. Pulseline denies the remaining allegations.

Pulseline admits the irrelevant allegations in 80(l) as to Mr. Monroe being convicted of disorderly conduct in an incident where Mr. Monroe's wife was injured in a car accident by a third party after which Mr. Monroe prevented an unidentified policy officer from restraining him until the officer actually identified himself, at which time Mr. Monroe fully cooperated with the officer.

Pulseline admits the irrelevant allegations in 80(m) as to Mr. Monroe not being convicted of any criminal violations but denies that Mr. Monroe engaged in the conduct being alleged.

81. Pulseline denies the allegations as to what the panel took into account for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

82. Denies.

83. Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

84. Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

85. Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

86. Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

87.     Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

88.     Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

89.     Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

90.     Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

91.     Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

92.     Denies.

93.     Denies.

94.     Denies.

95.     Denies.

96.     Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

97.     Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

98.     Denies.

99.     Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

100.    Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

101.    Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

102.    The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

103.    Denies.

104.    Admits the allegations to the extent supported by the document being referenced, which is the best evidence of its contents; otherwise denies the allegations.

105.    Denies.

106.    Denies.

107.    Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

108.    Denies.

109.    Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

110.    Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

111.    Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

112.    Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

113.    Admits the allegations to the extent supported by the document being referenced, which is the best evidence of its contents; otherwise denies the allegations.

114.     Admits the allegations to the extent supported by the document being referenced, which is the best evidence of its contents; otherwise denies the allegations.

115.     Admits.

116.     Admits the allegations to the extent supported by the document being referenced, which is the best evidence of its contents; otherwise denies the allegations.

117.     Denies.

118.     Denies.

119.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

120.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

121.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.  Pulseline has never a client die while on a guided ski trip.  Given the fatality at Silverton Mountain Ski Area and Mr. Brill's citing of his experience as being part of plaintiff's qualifications, plaintiff's assertion that it has a "perfect safety record" in guided ski trips is deliberately misleading and may be a basis for disqualification of plaintiff's application at issue and future applications to the federal government.

122.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

123.     Admits the allegations to the extent supported by the document being referenced, which is the best evidence of its contents; otherwise denies the allegations.

124.     Admits the allegations to the extent supported by the document being referenced, which is the best evidence of its contents; otherwise denies the allegations.

125.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

126.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

127.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

128.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

129.     Pulseline admits the Forest Supervisor upheld the evaluation panel's decision to award Pulseline the points assigned, but denies the alleged basis for the decision.

130.     Denies.

131.     Denies.

132.     Denies.

133.     Pulseline admits that the Forest Supervisor affirmed the District Ranger's decision but denies the remaining allegations.

134.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

135.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

136.     Denies.

20

137.     Pulseline incorporates and re-alleges its responses to the allegations set forth above.

138.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

139.     Admits that the statute contains the text quoted.

140.     Denies.

141.     Denies.

142.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

143.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

144.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.  Pulseline has never a client die while on a guided ski trip.  Given the fatality at Silverton Mountain Ski Area and Mr. Brill's citing of his experience as being part of plaintiff's qualifications, plaintiff's assertion that it has a "perfect safety record" in guided ski trips is deliberately misleading and may be a basis for disqualification of plaintiff's application at issue and future applications to the federal government.

145.     The allegations are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

146.     Denies.

147.     Denies.

148.    Pulseline incorporates and re-alleges its responses to the allegations set forth above.

149.    Pulseline denies the allegations for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

150.    Denies.

151.    Denies.

152.    Denies.

153.    Denies.

154.    Denies.

Pulseline denies that plaintiff is entitled to any of the relief set forth in the section entitled "Relief Requested."

Respectfully submitted,


 s/   Kevin R. Garden
The Garden Law Firm, PC
901 N. Pitt Street, Suite 325
Alexandria, VA 22314
(703) 535-5565

Attorney for Defendant-Intervenor
Pulseline Adventure LLC


Dated:  May 17, 2022