| | |
|---|---|
| **From:** | Macdonald, Jennifer -FS |
| **To:** | Marchowsky, Kori -FS |
| **Subject:** | FW: [External Email]Appeal Pursuant to 36 CFR Part 214 by Silverton Mountain Guides LLC of Cordova Ranger District March 1, 2021 Decision in the Guided Heli-Skiing Prospectus |
| **Date:** | Tuesday, April 13, 2021 12:59:24 PM |
| **Attachments:** | image001.jpg |
| | 2021-04-12 Silverton Mountain Guides -- Postdecisional Appeal.pdf |
| | 2021-04-12 Letter to FS Schramm re Appeal by Silverton Mountain Guindes.pdf |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |

Hi Kori – JFYI on the attached appeal if you haven't received this already.

 **Jennifer L. Mac Donald**
**Recreation Special Uses**
**Program Manager**

**Forest Service**
**Tongass National Forest**

c: 907-738-2786
jennifer.l.macdonald@usda.gov

2108 Halibut Point Road
Sitka, AK 99835
www.fs.fed.us

**Caring for the land and
serving people**

---

**From:** Namitz, Steven -FS <steven.namitz@usda.gov>
**Sent:** Tuesday, April 13, 2021 11:17 AM
**To:** Macdonald, Jennifer -FS <jennifer.l.macdonald@usda.gov>
**Subject:** FW: [External Email]Appeal Pursuant to 36 CFR Part 214 by Silverton Mountain Guides LLC of Cordova Ranger District March 1, 2021 Decision in the Guided Heli-Skiing Prospectus

Jen,

Let's try and touch base on this. I have not had a chance to review yet nor have I had a chance to chat with Jeff yet.

Steve

 **Steve Namitz**
**District Ranger**

**Forest Service**
**Chugach National Forest; Cordova Ranger District**

p: 907-424-4747
steven.namitz@usda.gov

612 2nd Street (P.O. Box 280)
Cordova, AK 99574
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Zeke Williams <zwilliams@williamsweese.com>
**Sent:** Monday, April 12, 2021 9:52 AM
**To:** FS-Mailroom R10 Chugach <Mailroom_R10_Chugach@usda.gov>; Schramm, Jeff -FS <jeff.schramm@usda.gov>; Namitz, Steven -FS <steven.namitz@usda.gov>
**Cc:** Aaron Brill <aaron@smgak.com>; Spielman, Andrew L. <aspielman@bhfs.com>; John Bernetich <jbernetich@williamsweese.com>
**Subject:** [External Email]Appeal Pursuant to 36 CFR Part 214 by Silverton Mountain Guides LLC of Cordova Ranger District March 1, 2021 Decision in the Guided Heli-Skiing Prospectus

[External Email]
If this message comes from an **unexpected sender** or references a **vague/unexpected topic;**
Use caution before clicking links or opening attachments.
Please send any concerns or suspicious messages to: Spam.Abuse@usda.gov

Dear Appeal Deciding Officer and Forest Supervisor Schramm and Responsible Official and District Ranger Namitz:

This email transmits the appeal by Silverton Mountain Guides LLC of the above-referenced decision by the Cordova Ranger District.

Attached are:

1. Pdf of the Appeal (without exhibits);

2. FTP link to download the approximately 19 mb of exhibits:
   https://williamsweese.sharefile.com/d-seef56d0157334d6c9b5cf74a6534cf39; and

3. Letter to the Appeal Deciding Officer requesting pursuant to 36 CFR 214.14(g) the names and addresses of other parties to the appeal not listed on the certificate of service.

I am separately transmitting a paper copy of the appeal with exhibits to each of you.

Please direct any correspondence or communications concerning this appeal to me.

Thank you, and on behalf of Silverton Mountain Guides LLC, I look forward to productively working through the appeal process with you.

Sincerely,

**Admin Rcd 000002**

Zeke Williams

Counsel to Silverton Mountain Guides LLC

**Ezekiel J. Williams** | *Director*

1801 California Street, Suite 3400, Denver, CO 80202
**Direct** 303.228.2529  **Main** 303.861.2828
**Fax** 303.861.4017  **Cell** 303.748.9968
**Email** zwilliams@williamsweese.com  **Website** **www.williamsweese.com**



CONFIDENTIALITY NOTICE: This email may contain confidential or privileged information. If you have received this email in error, please destroy it.

**Admin Rcd 000003**

**APPEAL TO THE CHUGACH NATIONAL FOREST SUPERVISOR**
**UNITED STATES FOREST SERVICE**


In the Matter of the March 1, 2021
Selection Decision of Chugach National Forest, Cordova District Ranger Steven Namitz
Regarding the Cordova Ranger District Guided Helicopter Skiing Prospectus

---

**APPEAL PURSUANT TO 36 C.F.R. PART 214 BY**
**SILVERTON MOUNTAIN GUIDES LLC OF THE SELECTION DECISION IN THE**
**CORDOVA RANGER DISTRICT GUIDED HELICOPTER SKIING PROSPECTUS**

**ORAL PRESENTATION REQUESTED PURSUANT TO 36 C.F.R. § 214.16(d)**

**ISSUANCE OF PERMITS AUTOMATICALLY STAYED**
**PURSUANT TO 36 C.F.R. § 214.13(c)(1)**

---

Ezekiel J. Williams
USDC DC Bar No. CO0056
John H. Bernetich
USDC DC Bar No. 1018769
WILLIAMS WEESE PEPPLE & FERGUSON PC
1801 California St., Suite 3400
Denver, CO 80202
Telephone: 303-228-2529
Fax: 303-861-4017
zwilliams@williamsweese.com
jbernetich@williamsweese.com

Name and Address of Appellant

Silverton Mountain Guides LLC
Attn: Aaron Brill
PO Box 4012
Palmer, AK 99645
(907) 830-1122
aaron@smgak.com

Andrew L. Spielman
AK Bar No. 2002005
DC Bar No. 462474
BROWNSTEIN HYATT FARBER SCHRECK, LLP
1155 F Street, NW, Suite 1200
Washington, DC 20004
Telephone: 202-383-5913
Fax: 202-296-7009
aspielman@bhfs.com

*Attorneys for Appellant Silverton Mountain Guides LLC*

**Admin Rcd 000004**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION & SUMMARY ....................................................................................... 1

STATEMENT REGARDING COMPLIANCE WITH 36 C.F.R. § 214.8 ................................... 5

FACTUAL BACKGROUND ............................................................................................... 7

    I.   The Prospectus ................................................................................................. 7

    II.  Silverton Mountain Guides ............................................................................ 8

         A.   SMG has over 13 years of operational experience. ................................... 8

         B.   SMG's safety record and protocols are the strongest among Alaska heli-ski guiding companies. ................................................................................. 9

         C.   SMG provides unique benefits to the local Alaska community. ............... 12

         D.   SMG and its owner, Aaron Brill, have a proven history of complying with federal and state corporate and employment laws. ............................. 12

         E.   Reference letters submitted by three BLM officials and a heli-ski competitor company demonstrate SMG's strong working relationships with regulatory agencies and fellow permit holders. ........................................................ 13

    III. Pulseline Adventure ..................................................................................... 14

         A.   Pulseline has a history of failing to comply with state law. ..................... 14

         B.   Pulseline is an adventure travel agency, not a permitted heli-ski operator. .............. 15

         C.   Pulseline's owner has a record of criminal arrests and convictions and failure to pay corporate taxes. ......................................................................... 17

    IV. The Evaluation Panel's Decision .................................................................. 18

LEGAL STANDARD ...................................................................................................... 19

    I.   The Appeal Deciding Officer has the authority to direct the Cordova District Ranger to select SMG's permit application for further processing. ................. 19

    II.  Forest Service regulations and policy require the agency to protect the public health and safety in issuing special use permits and to reject any special use application by a proponent who is "not qualified." ......................................................... 20

**Admin Rcd 000005**

i

III. The Prospectus established objective selection criteria to be used by the Evaluation Panel to rank applicants..................................................................................................... 22

IV. A court would set aside the Forest Service's final decision if the Forest Service does not follow the selection criteria or the special use permit regulations..................................... 23

ARGUMENT ......................................................................................................................... 25

I. SMG is the "best qualified" applicant compared to Pulseline. ......................................... 25

   A. SMG has extensive experience as a permitted heli-ski operator in Alaska, while Pulseline has no experience. ..................................................................................... 26

   B. SMG has an established excellent safety record; Pulseline has none........................ 28

   C. SMG has an established history of compliance with corporate, employment, workers' compensation, and other laws, while Pulseline has a history of sloppy corporate governance and a failure to comply with federal and state laws. .............. 30

   D. Pulseline's owner has a history of criminal arrests and convictions and a failure to timely pay federal corporate tax. .............................................................................. 31

   E. SMG, an Alaska-owned company, would provide far more benefits to the local economy and population than Pulseline, an Idaho-owned company, would provide…............................................................................................................... 33

   F. Using the Prospectus Selection Criteria, SMG is more qualified than Pulseline. ..... 34

II. The Evaluation Panel's selection of Pulseline's application rather than SMG's application violates the Forest Service's policy to protect the public health and safety in the special use authorization application process. ............................................................................... 33

III. The Evaluation Panel should have rejected Pulseline's application because Pulseline is "not qualified." ................................................................................................................ 34

IV. A federal district court will reverse the decision to process Pulseline's application rather than SMG's application. .................................................................................................. 34

CONCLUSION....................................................................................................................... 36

LIST OF EXHIBITS............................................................................................................... 38

**Admin Rcd 000006**

# TABLE OF AUTHORITIES

**CASES**

*Am. Wild Horse Pres. Campaign v. Perdue*,
   873 F.3d 914 (D.C. Cir. 2017) ................................................................. 24

*Eco Tour Adventures Inc. v. Zinke*,
   249 F. Supp.3d 360 (D.D.C. 2017) ........................................................ 35

*Exportal LTDA v. United States*,
   902 F.2d 45 (D.C. Cir. 1990) ................................................................. 36

*Latecoere Int'l, Inc. v. U.S. Dep't of Navy*,
   19 F.3d 1342 (11th Cir. 1994) ............................................................... 24

*Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ......................................................................... 24, 35

*Nat'l Env't Dev. Assoc's Clean Air Project v. E.P.A.*,
   752 F.3d 999, 1009 (D.C. Cir. 2014) ..................................................... 24

*Natural Res. Def. Council v. U.S. Forest Serv.*,
   421 F.3d 797 (9th Cir. 2005) ................................................................. 35

*Olenhouse v. Commodity Credit Corp.*,
   42 F.3d 1560 (10th Cir. 1994) ............................................................... 35

*Policy & Research, LLC v. U.S. Dep't of Health & Hum. Servs.*,
   313 F. Supp. 3d 62 (D.D.C. 2018) ........................................................ 24

*Sameena Inc. v. U.S.A.F.*,
   147 F.3d 1148 (9th Cir. 1998) ............................................................... 24

*Triumvirate, LLC v. Bernhardt*,
   367 F. Supp. 3d 1011 (D. Ak. 2019) ................................................. 24, 34

**STATUTES**

5 U.S.C. § 706(2)(A) ................................................................................. 23

16 U.S.C. § 3197 ...................................................................................... 33

Ak. Stat. § 23.30.045 ........................................................................... 15, 34

Ak. Stat. § 23.30.085 ............................................................................... 15

iii

**Admin Rcd 000007**

**RULES AND REGULATIONS**

11 Ak. Admin. Code § 96.018 ................................................................................. 15

36 C.F.R. § 214.13 ............................................................................... 5, 6, 36

36 C.F.R. § 214.16 ..................................................................................... 6

36 C.F.R. § 214.2 ...................................................................................... 19

36 C.F.R. § 214.7(a)(1) .............................................................................. 19

36 C.F.R. § 214.8 ................................................................................... 5, 6

36 C.F.R. § 214.9(a) .................................................................................. 6

36 C.F.R. § 251.54 .......................................................................... passim

**OTHER AUTHORITIES**

FSM 2702 ......................................................................................... 2, 20, 33

FSM 2703.1 ............................................................................................ 21

FSM 2703.2 ............................................................................................ 21

FSH 2709.11 ............................................................................... 20, 21, 33

FSH 2709.14 ...................................................................................... passim

FSM 2716.82 ........................................................................................ 32

## INTRODUCTION & SUMMARY

Silverton Mountain Guides LLC ("SMG") respectfully appeals the Cordova District Ranger's March 1, 2021 decision in the Cordova Ranger District Guided Helicopter Skiing Prospectus ("Prospectus") ranking the application of Pulseline Adventure, LLC ("Pulseline") second among all applicants, selecting Pulseline's application for further processing, and declining to select SMG's application for further processing. *See* Exhibit 4. Under the Prospectus, a panel (the "Evaluation Panel") was tasked with selecting the "best qualified" applicants for a Forest Service heli-ski special use permit. The Evaluation Panel evaluated permit applications using selection criteria ("Selection Criteria"), scored each application using a point system, and sent its scores and recommendations to the District Ranger.

Aaron Brill, owner and operator of SMG, has provided approximately 20,000 guided heli-skiing service days over sixteen years under Forest Service special use permits, Bureau of Land Management ("BLM") special recreation permits, and Alaska permits. SMG's heli-ski operations have a perfect safety record.

Pulseline, on the other hand, has never held a heli-skiing permit, has no record of actually running a permitted heli-ski operation, did not exist for two of the four years after it was formed, was not qualified to do business in Alaska until after the Prospectus application deadline had passed, and its principal owner has a criminal record.

Yet the Evaluation Panel awarded Pulseline more points than SMG, ranked Pulseline second among applicants, and recommended that the District Ranger reject SMG's application. The Evaluation Panel's conclusions cannot be squared with the Selection Criteria. The Evaluation Panel failed to screen out the grossly unqualified Pulseline, an applicant that cannot, based on the facts identified in this appeal, demonstrate that it is technically capable of holding a heli-skiing special use permit as required by 36 C.F.R. § 251.54(d)(3). Worse, SMG is easily a

1

**Admin Rcd 000009**

"best qualified" applicant that possesses the requisite technical and financial capability when compared to Pulseline, but the Evaluation Panel inappropriately scored SMG's application under the Selection Criteria, thereby depriving the Chugach National Forest of a highly qualified applicant to provide guided heli-skiing to the public.

Pulseline is not qualified to hold a Forest Service heli-ski special use permit because it cannot show that it is a "best qualified" applicant as required by the Prospectus, or that it is technically capable of holding the authorization as required by the applicable regulations. *See* 36 C.F.R. § 251.54(d)(3) (applicant for special use authorization must demonstrate that it has "the technical and financial capability" to hold the permit and "is otherwise qualified"). Regulations and policies codified in the Forest Service Manual and Handbooks require the agency to consider public health and safety in considering applications for special use permits. *See, e.g.,* FSH 2709.14_50, at 3; FSM 2702. Pulseline has no experience as a permitted heli-ski operator. Pulseline has never held any Forest Service special use permit or BLM special recreation permit, much less one for heli-skiing. According to Pulseline's website, the majority of its business is organizing guided yoga, surfing, and fishing trips.[1] Until days before the deadline to submit applications under the Prospectus, Pulseline Adventure, LLC (which was organized under Idaho state law) was in "administratively dissolved" status as ordered by the Idaho Secretary of State, did not hold an Alaska business license, and did not maintain Alaska workers' compensation insurance. As of the date of this appeal, Pulseline does not maintain Alaska workers' compensation insurance. Pulseline's sole owner and manager has a history of criminal arrests and convictions that demonstrate a tendency to resort to violence in high-pressure situations.

---

[1] *See* https://pulselineadventure.com/locations/; https://pulselineadventure.com/surf-and-yoga-retreat/ (last accessed Apr. 7, 2021).

**Admin Rcd 000010**

Most critically, Pulseline has no established safety record in actually operating a permitted heli-skiing business. Pulseline's heli-ski experience is as a contract broker, akin to a travel agent, whereby Pulseline itself does not actually operate a heli-skiing business, but connects potential guests with other permitted heli-ski operators. Because Pulseline has never held a heli-skiing permit and has no experience actually operating, it has never itself followed a permit operating plan, never shown that it can independently implement crucial safety procedures, and never demonstrated that it can cooperate with other permitted heli-ski operators to fly and ski in the same terrain. Pulseline has never demonstrated day-to-day compliance with a Forest Service special use permit. It is not reasonable to assume that Pulseline can comply with an operating plan or a permit that it has never held given its proven failure to maintain basic business licenses and authorizations. The Evaluation Panel's conclusions should have reflected Pulseline's utter lack of operating experience.

Since Aaron Brill, SMG's owner and operator, began heli-ski operations in 2005, Mr. Brill has held ten permits allowing for heli-skiing issued by federal, state, and local land managers, and has demonstrated excellent working relationships with Forest Service and BLM permit managers in Alaska. In its 13-year history, SMG (an Alaska-owned company) has guided thousands of skiers on hundreds of trips and has not suffered any avalanche or helicopter accidents and has not incurred any fatalities or substantial injuries. No other Alaska heli-ski operator can match SMG's safety record over that length of time. SMG's safety record is due in part to its policy, unique among Alaska heli-ski operators, of placing two guides (rather than the usual one) with each group of four guests. This policy allows at least one guide to maintain constant visual or verbal contact with each guest, and allows two guides (rather than one) to

**Admin Rcd 000011**

analyze snow conditions, avalanche risk, and other safety considerations, allowing for a much safer and better guest experience.

SMG's application demonstrated that it is far more qualified than Pulseline under the selection criteria identified in the Prospectus. SMG has actually held and complied with Forest Service and BLM heli-ski permits, and has operated permitted guided heli-skiing operations for over a decade with a perfect safety record. SMG's application showed, over and over, that SMG implements and follows rigorous safety protocols, that SMG works cooperatively with other permitted operators in the same terrain, and that SMG adheres to permit operating plans and permit terms and conditions without exception.

SMG has an excellent working relationship with the Cordova Ranger District and in no way faults the District Ranger for relying upon the Evaluation Panel's recommendation to process Pulseline's application rather than SMG's. Rather, SMG asserts that, under the Evaluation Panel's objective criteria, SMG is more qualified than Pulseline and should have received more points and a higher ranking than Pulseline. SMG looks forward to continuing its working relationship with the Cordova Ranger District.

This appeal demonstrates that, compared to Pulseline, SMG is the "best qualified" applicant for a special use permit. Exhibit 2 at 2 (the Prospectus's "goal is to select" the "best qualified" applicant(s)). (SMG does not challenge the ranking of Points North Heli-Adventures, Inc. and Valdez Heli-Ski Guides, LLC because each, unlike Pulseline, is qualified to hold a heli-ski permit.) The Forest Supervisor has the authority and discretion to ensure the "best qualified" proponents receive further consideration, and to reject Pulseline's application from further processing if the Forest Supervisor determines Pulseline is not qualified to hold a heli-ski permit. 36 C.F.R. § 251.54(d)(3), (e)(5)(iii). The Forest Supervisor should reverse the Cordova District

4

Admin Rcd 000012

Ranger's decision to process Pulseline's application rather than SMG's because that decision does not meet the agency's "objectives" of the special use permit program, which include "[e]ncourag[ing] *skilled and experienced* individuals and entities to conduct" guiding activities in a manner that "ensures that national forest visitors receive high-quality services." FSH 2709.14_50, at 3 (emphasis added). SMG respectfully requests the Forest Supervisor to reverse the decision to process Pulseline's permit application and direct the Cordova District Ranger to advance SMG's application for further processing within the top three ranked applicants.

Pursuant to 36 C.F.R. § 214.13(c)(1) and (d), the issuance of special use permits pursuant to the Prospectus is automatically stayed "until a final administrative decision is issued in the appeal."

## STATEMENT REGARDING COMPLIANCE WITH 36 C.F.R. § 214.8

This appeal complies with 36 C.F.R. § 214.8(a)(1) because the appellant's name, mailing address, daytime telephone number, and email address appear on the cover page of this appeal. Please direct any contact with the appellant to appellant's counsel, identified on the cover page of this appeal. The signature of appellant's counsel and the date of signature appear on the last page of this appeal, as required by 36 C.F.R. § 214.8(a)(10).

The name of the decision being appealed, including the name and title of the responsible official and the date of the decision, appear on the cover page and the first page of this appeal, as required by 36 C.F.R. § 214.8(a)(2). The type of written authorization that is the subject of this appeal appears on the cover page and the first page of this appeal, as required by 36 C.F.R. § 214.8(a)(3).

SMG is adversely affected by the decision on appeal because the Evaluation Panel ranked the unqualified Pulseline's application higher than SMG's application and failed to properly

**Admin Rcd 000013**

score SMG's application, thereby eliminating SMG from further consideration for a special use permit to provide guided heli-skiing in the Cordova Ranger District. This satisfies 36 C.F.R. § 214.8(a)(4).

This appeal includes a statement of the relevant facts underlying the decision being appealed, a discussion of issues raised by the decision being appealed, and documents and other information upon which SMG relies, as required by 36 C.F.R. § 214.8(a)(5), (6), and (9).

As required by 36 C.F.R. § 214.8(a)(7), SMG states that SMG and the responsible official have not attempted to resolve the issues under appeal.

This appeal requests the Forest Supervisor to reverse the Cordova District Ranger's decision (at the recommendation of the Evaluation Panel) to select Pulseline's permit application for further processing and direct the District Ranger to select SMG's application for further processing within the top three ranked operators, for the reasons explained in this appeal. This satisfies 36 C.F.R. § 214.8(a)(8).

SMG requests an oral presentation under 36 C.F.R. § 214.16 as provided in 36 C.F.R. § 214.8(b)(1).

In accord with 36 C.F.R. § 214.8(b)(2), SMG states that issuance of any special use permits pursuant to the Prospectus is "automatically stayed" pursuant to 36 C.F.R. § 214.13(c)(1) and (d) "until a final administrative decision is issued in the appeal."

This appeal is filed with the Forest Supervisor on or before April 15, 2021 and is therefore timely within the meaning of 36 C.F.R. § 214.9(a).

6

**Admin Rcd 000014**

## FACTUAL BACKGROUND

I.    **The Prospectus**

In November 2020, the Cordova Ranger District issued the Guided Helicopter Skiing Prospectus.  Exhibit 2.  The Prospectus invited proposals from interested parties to provide guided helicopter skiing services on the Cordova Ranger District.  The Prospectus's stated "goal is to select businesses *best qualified* to provide visitors with a safe, satisfying recreation experience that promotes enjoyment, understanding, and appreciation of the Chugach National Forest while minimizing impacts to resources and other forest users."  Exhibit 2 at 2 (emphasis added).

The Prospectus stated that "the Forest Service expects to authorize one or more service providers to conduct guided helicopter skiing services in the project area."  Exhibit 2 at 5.  The Prospectus continued:

> Proponents should not expect exclusive use of the project area.  As such, this prospectus is focused on identifying service providers who demonstrate a high standard of professionalism and cooperative spirit.  Proponents must commit to work together with other service providers to share the public space, and set a good example regarding ethical behavior, compliance with regulations, low impact practices, and caring for the land.

Exhibit 2 at 7.

The Prospectus directed applicants to submit a complete application, including a proposed operating plan detailing the applicant's operations, employee training, transportation, environmental protection, first aid, emergency rescue, avalanche, incident reporting, and communications protocols; a notarized financial statement; and three business reference letters.  "Incomplete proposal packages [would] not be considered."  Exhibit 2 at Attachments 1.1-1.5.

The Prospectus established a process whereby a review panel (the Evaluation Panel) would score each application using the Selection Criteria, which focused on the applicant's

7

**Admin Rcd 000015**

business model, client experience, workplace practices, operations, resource protection, and local community benefits. Exhibit 2 at 10. The Selection Criteria placed special emphasis on (1) prior experience as a permitted helicopter skiing operator and (2) safety. The Prospectus stated that the Evaluation Panel would rank applications according to the assigned score. Exhibit 2 at 10.

The Prospectus provided that "[r]esponses to this prospectus will be used to determine the *best qualified* businesses to be awarded a special use permit for guided helicopter skiing." Exhibit 2 at 2 (emphasis added). The Prospectus required the Evaluation Panel to "make a recommendation to the Authorized Officer indicating the applicant(s) that offer the best service to the public, partnership with the Forest Service, protection of resources, and local community benefits." Exhibit 2 at 10.

The Prospectus noted that the Forest Service would conduct an environmental analysis, as required by the National Environmental Policy Act, analyzing the effects of issuing one or more heli-ski special use permits in the Cordova Ranger District. Exhibit 2 at 10.

## II.    <u>Silverton Mountain Guides</u>

On January 7, 2021, SMG submitted its application in response to the Prospectus. Exhibit 3. SMG's application described its established history operating as a permitted heli-ski guiding company and its safety record. Exhibit 3 at 12-13.

### A.    <u>SMG has over 13 years of operational experience.</u>

Since SMG was established in 2008, SMG has guided thousands of guests on hundreds of trips in Alaska as a permitted heli-ski operator. Aaron Brill, SMG's owner and operator, has operated under ten authorizations issued by the Forest Service, BLM, Alaska Department of Natural Resources, and the Municipality of Anchorage. Exhibit 1 at ¶ 5. SMG currently holds

8

**Admin Rcd 000016**

six active heli-ski permits issued by the Forest Service, BLM, and the Municipality of

Anchorage:

- Temporary Special Use Permit COR417 (within the Prospectus area) (issued by the Chugach National Forest, Cordova Ranger District)

- Special Use Permit SEW678 (Chugach National Forest)

- Special Use Permit PET512 (Tongass National Forest)

- Special Recreation Permit M-094293 (BLM Alaska State Office, Anchorage Field Office)

- Special Recreation Permit M-092683 (BLM Alaska State Office, Glennallen Field Office)

- Municipality of Anchorage Land Use Permit 2016-21

Exhibit 3 at 13.

SMG has operated in the Prospectus area under a temporary special use permit issued by

the Cordova Ranger District for the 2019-20 and 2020-21 winter seasons. SMG has operated in

the Valdez area on state land since 2008. Exhibit 3 at 13.

Over its 13 years of operations, SMG has a history of close cooperation with fellow heli-

skiing permit holders to avoid conflicts, promote safety, and ensure the best possible guest

experience. Exhibit 1 at ¶¶ 6, 14. This cooperation includes regularly communicating with

Forest Service co-permittees to coordinate plans and exchange information and observations

regarding weather, terrain, and snow stability. Exhibit 1 at ¶ 14; Exhibit 3 at 26.

B.     <u>SMG's safety record and protocols are the strongest among Alaska heli-ski guiding companies.</u>

SMG is owned by Aaron Brill. Exhibit 1 at ¶ 2; Exhibit 6. Mr. Brill is a respected ski

professional with approximately 20 years of technical and business experience in the ski

industry. Exhibit 1 at ¶ 18. During the 20 years that Mr. Brill has owned and operated guided

heli-skiing services around the country, Mr. Brill's heli-skiing operations, including SMG, have

9

**Admin Rcd 000017**

provided approximately 20,000 guided heli-skiing service days.  Exhibit 1 at ¶ 19.  During that time, Mr. Brill's operations have had no avalanche or helicopter accidents, and no fatalities or substantial injuries.  Exhibit 1 at ¶ 19.

Since SMG began operating in 2008, SMG has had no guest or guide fatalities, no substantial injuries, and no avalanche or helicopter accidents during a guest trip.  Exhibit 1 at ¶ 7; Exhibit 3 at 13.  No Alaska heli-ski operator can match that safety record over that extended time period.  Exhibit 1 at ¶ 7.  SMG's safety record is due to its safety policies, superior guide education requirements, and 13 years of permitted experienced in the field.  Exhibit 3 at 14-15. SMG is the only Alaska heli-ski operator that conducts annual testing and examinations of its guides.  Exhibit 1 at ¶ 9.  Generally, Alaska heli-ski operators conduct annual guide training, but SMG is unique in requiring annual testing and examinations in addition to annual training. Exhibit 1 at ¶ 9.

SMG is the only Alaska heli-ski guiding company that provides two guides for each group of four guests.  Exhibit 1 at ¶ 8; Exhibit 3 at 12, 22.  The industry standard in Alaska is one guide for each group of four guests.  Exhibit 1 at ¶ 8.  SMG's policy provides a safer and better customer experience by allowing for more one-on-one instruction, a far quicker medical and rescue response time, and two guides (rather than the usual one) to assess avalanche safety, aviation safety, mountain weather, and other hazards.  Exhibit 1 at ¶ 8; Exhibit 3 at 12.  In the event of an avalanche, whether an individual caught and buried by the avalanche survives or not generally depends on how fast the victim's companions can dig him out.  In an avalanche rescue, each minute matters, and having two guides rather than one doubles the guides' capacity to dig out a victim buried in an avalanche, cutting the response time in half and increasing the chances of survival.  Exhibit 1 at ¶ 8.

**Admin Rcd 000018**

SMG generally has the longest operating season among Alaska heli-ski operators: SMG typically provides services beginning in October, depending on conditions. Exhibit 1 at ¶ 10; Exhibit 3 at 24. This allows SMG's guides to accumulate more days in the field per year than any other Alaska heli-ski operator. Consequently, many of SMG's guides have among the most days logged heli-skiing in Alaska. Exhibit 1 at ¶ 10; Exhibit 3 at 24.

Nearly all SMG guides work at ski resorts as snow safety technicians while not heli-ski guiding. Exhibit 1 at ¶ 11. As snow safety technicians, these guides gain substantial first-hand experience in avalanche forecasting and mitigation, repeatedly observing first-hand when, where, and how avalanches break. This experience allows SMG's guides to overcome the biggest obstacle to gaining avalanche experience: heli-ski guides are trained to avoid avalanches at any cost; as a result, however, heli-ski guiding often provides very little first-hand avalanche experience. SMG's guides who also serve as snow safety technicians at ski resorts have in-depth first-hand knowledge because they work to trigger avalanches to mitigate hazards day after day. Exhibit 1 at ¶ 11.

SMG's helicopters used during heli-ski trips differ from those used by the rest of the industry. Exhibit 1 at ¶ 12; Exhibit 3 at 20. SMG leases new Airbus AS350B3E helicopters for a maximum of five years, and then SMG replaces those helicopters with new ones. Exhibit 1 at ¶ 12. SMG is one of the only Alaska heli-ski operator that uses helicopters specifically outfitted for heli-skiing. Exhibit 1 at ¶ 12; Exhibit 3 at 20. Other Alaska heli-ski operators use helicopters outfitted for general use, including firefighting, resulting in increased weight, decreased maneuverability, and decreased safety margins. Exhibit 1 at ¶ 13. SMG's helicopters are more powerful and lighter than the industry standard helicopter, resulting in increased safety margins. Exhibit 1 at ¶ 13; Exhibit 3 at 20.

Admin Rcd 000019

C.     SMG provides unique benefits to the local Alaska community.

Mr. Brill, SMG's owner, and his wife reside in Girdwood, Alaska, and have lived in Alaska since 2012.  Exhibit 1 at ¶ 3.  To Mr. Brill's knowledge, SMG is the only Alaska-owned heli-ski operator participating in the Prospectus.  Exhibit 1 at ¶ 15.  SMG is also the only Alaska heli-ski operator that provides services generally beginning in October, depending on conditions.  Exhibit 1 at ¶ 10; Exhibit 3 at 24.  Nearly every other Alaska heli-ski operator based in Valdez or Cordova operate exclusively in March and April.  Exhibit 1 at ¶ 10.  In Mr. Brill's and SMG's experience, local residents and Alaskans are more likely than guests from the lower 48 or abroad to hire SMG during early season months.  Exhibit 1 at ¶ 15; Exhibit 3 at 23-24.

SMG provides deep discounts to local residents and children, allowing locals to access nearby public lands that are otherwise inaccessible to much of the local population.  Exhibit 1 at ¶ 15; Exhibit 3 at 23-24.  SMG is the only heli-ski operator that provides Alaskans with an opportunity to heli-ski within the Cordova Ranger District outside of late February, March, or April.  Exhibit 1 at ¶ 10.  None of the other applicants operate in December, January, or most of February.  Exhibit 1 at ¶ 10.

D.     SMG and its owner, Aaron Brill, have a proven history of complying with federal and state corporate and employment laws.

In 2009, Mr. Brill organized SMG in Colorado and registered SMG to do business in Alaska with the Alaska Department of Commerce, Community, and Economic Development.  Exhibits 6, 7.  SMG converted to an Alaska limited liability company in 2016.  Exhibit 6.  Since SMG was organized in 2009, SMG has maintained its status as a limited liability company in good standing and in compliance with Colorado's and Alaska's corporate laws.

SMG is owned by SMG One LLC, which in turn is owned by Mr. Brill.  Exhibit 1 at ¶ 2.  Mr. Brill has more than 20 years of experience in the heli-ski and ski resort industry.  Exhibit 1

12

**Admin Rcd 000020**

at ¶¶ 18, 19; Exhibit 3 at 12-13.  In addition to SMG, Mr. Brill owns and operates Silverton Mountain Ski Area in Silverton, Colorado.  Exhibit 3 at 12.  Silverton Mountain, which Mr. Brill conceived and developed from the ground up in 2002, is a unique ski area that provides guests with a backcountry-like steep skiing experience by using a single chairlift and helicopters to access over 25,000 acres of undeveloped skiable terrain.  Exhibit 1 at ¶ 18.  Silverton Mountain operates the largest heli-ski operation in the United States.  Exhibit 3 at 12.  All of Silverton Mountain's terrain is potential avalanche terrain.  Exhibit 1 at ¶ 18.  As a result, Silverton Mountain has operated a state-of-the-art avalanche mitigation and safety program since before it opened in 2002.  Exhibit 1 at ¶ 18; Exhibit 3 at 12.  Silverton Mountain operates under a 40-year BLM commercial occupancy lease and special recreation permit.  Exhibit 1 at ¶ 5.

SMG maintains workers' compensation insurance as required by Alaska law.  Exhibit 1 at ¶ 16.  SMG has consistently maintained liability insurance in compliance with its permits. Exhibit 1 at ¶ 16.

Mr. Brill has never been arrested for, charged with, or convicted of a violation of a federal or state criminal law.  Exhibit 1 at ¶ 17.  Neither Mr. Brill nor SMG has been charged with or determined liable for a violation of any federal or state tax law.  Exhibit 1 at ¶ 17.  As a holder of a U.S. Bureau of Alcohol, Tobacco and Firearms Federal Explosive License, Mr. Brill is regularly subjected to federal background checks.  Exhibit 1 at ¶ 17.

E.  Reference letters submitted by three BLM officials and a heli-ski competitor company demonstrate SMG's strong working relationships with regulatory agencies and fellow permit holders.

SMG submitted business reference letters from (1) the BLM Glennallen Field Office in Glennallen, Alaska (where SMG has held a heli-skiing special recreation permit since 2011); (2) the BLM Anchorage Field Office (where SMG has been permitted since 2017); and (3) the BLM

Gunnison Field Office in Gunnison, Colorado (where Mr. Brill has been permitted since 2000). Exhibit 3 at 6, 38, 39.  In those reference letters, BLM officials wrote that SMG and Aaron Brill have "shown consistent, exemplary performance and excellent permit compliance" (Exhibit 3 at 39); "are well-established in the skiing and heli-ski industry with an excellent safety and operating history" (Exhibit 3 at 6); have "shown great performance history and permit compliance" (Exhibit 3 at 38); and have "always been very responsive in [their] communications [and] submits all required documents in a timely manner" (Exhibit 3 at 38).

SMG submitted a business reference letter from Valdez Heli-Ski Guides ("Valdez Heli-Ski"), a competitor heli-ski guiding company.  Valdez Heli-Ski stated that it has "work[ed] with SMG over the last year" as a fellow permit holder in the Cordova Ranger District and is "impressed with [SMG's] cooperative spirit and collaborative efforts to ensure success for operations utilizing the CRD temporary permit in 2020."  Exhibit 3 at 8.

SMG attached an October 19, 2020 Guide Performance Evaluation from the Tongass National Forest, Petersburg Ranger District.  Exhibit 3 at 40-42.  The Evaluation stated: "Aaron Brill is professional and courteous when interacting with the special uses permit administrator. Questions regarding proposed operating plans and actual use reports are answered promptly." Exhibit 3 at 41.   The Evaluation gave SMG the highest possible rating ("Acceptable") on each applicable item, as well as on SMG's overall annual performance.  Exhibit 3 at 40-42.

## III.   Pulseline Adventure

A.   Pulseline has a history of failing to comply with state law.

Pulseline was incorporated in Idaho in February 2017.  Exhibit 8.  For nearly half of its existence, though, Pulseline has been in "administratively dissolved" status, as determined by the Idaho Secretary of State.  Exhibit 9.  Pulseline applied to the Idaho Secretary of State for

**Admin Rcd 000022**

reinstatement of good standing on January 8, 2021 (only eleven days before the deadline to submit applications in response to the Prospectus). Exhibit 9.

According to the Alaska Department of Labor and Workforce Development, Pulseline does not currently maintain workers' compensation insurance. Exhibit 10. Alaska law requires each employer having one or more employees in Alaska to obtain workers' compensation insurance, with some exceptions not applicable to Pulseline.[2]

Pulseline was not licensed to do business in Alaska when it submitted its application in response to the Prospectus. Pulseline first obtained an Alaska business license on January 25, 2021 (after the application deadline). Exhibit 11.

Pulseline has not registered any commercial day use with the Alaska Department of Natural Resources (DNR). Exhibit 12. Alaska law requires anyone using state land for commercial recreation purposes to register all commercial day uses with DNR. 11 Ak. Admin. Code § 96.018. SMG has registered commercial day use with DNR each year since the agency began collecting data in 2014. Exhibit 12. Points North Heli-Adventures and Valdez Heli-Ski Guides have also registered their day use. DNR records indicate Pulseline has never registered its commercial day use. Exhibit 12.

B.     Pulseline is an adventure travel agency, not a permitted heli-ski operator.

Pulseline is not a permitted helicopter skiing operator. Pulseline has never held a Forest Service special use permit or BLM special recreation permit. Exhibit 1 at ¶ 24.

---

[2] See Alaska Dep't of Labor and Workforce Development, Workers' Compensation Requirements for Employer, https://labor.alaska.gov/wc/er-profit.html; Ak. Stat. § 23.30.045 (requiring employers to secure workers' compensation insurance); Ak. Stat. § 23.30.085 (requiring employers to file evidence of compliance with insurance requirement).

15

Admin Rcd 000023

Instead, Pulseline acts as a contract broker, akin to a travel agency.  Exhibit 1 at ¶ 24.  A potential client seeking heli-skiing services may book an Alaska heli-ski trip through Pulseline's website.  Pulseline then places the guest with a heli-ski operator that holds a permit or registration to use Alaska public lands for commercial heli-skiing.  Pulseline may provide guides on trips conducted under another operator's permit or registration.  But the permitted or registered operator, not Pulseline, maintains compliance with the permit terms and relevant regulations, maintains insurance, adheres to the operating plan, interfaces with the permitting agency, and handles day-to-day operations such as cooperating with other permitted operators in the same terrain.  At the time it submitted its application, Pulseline had no record or experience in operating a permitted heli-ski company.

Because Pulseline has never held a Forest Service special use permit or a BLM special recreation permit, Pulseline has no proven record of working with those agencies, no experience cooperating with fellow permit holders who operate in the same terrain, no experience managing the near-daily duties of ensuring compliance with permit terms and conditions, and no experience adhering to a heli-skiing operating plan.

According to its website, Pulseline's Alaska heli-ski contract broker service is only a small part of its business.  In addition to coordinating Alaska heli-ski trips, Pulseline brokers: surfing trips in Costa Rica, El Salvador, Indonesia, Nicaragua, and the United States; fishing trips in Alaska and Mexico; and heli-skiing trips in Antarctica, Argentina, Canada, Chile, Japan, and Kyrgyzstan.[3]  Pulseline also provides foreign yoga and surf retreats and mountain biking guide services.[4]

---

[3] https://pulselineadventure.com/locations/; https://pulselineadventure.com/staff/
[4] https://pulselineadventure.com/surf-and-yoga-retreat/

**Admin Rcd 000024**

Pulseline's founder died after triggering an avalanche while guiding guests during one of the first Alaska heli-ski trips that Pulseline participated in. At the time, Pulseline's founder was acting as a guide under a permit held by another company, Southeast Alaska Backcountry Adventures.[5]

C. Pulseline's owner has a record of criminal arrests and convictions and failure to pay corporate taxes.

Gabriel Monroe of Pocatello, Idaho owns 100% of Pulseline. Exhibit 13. Mr. Monroe is also Pulseline's registered agent and manager. Exhibit 13. In addition to Pulseline, Mr. Monroe is the owner of Cornerstone Concrete LLC, located in Pocatello, Idaho. Exhibit 14.

Mr. Monroe has been convicted of two criminal misdemeanor charges of disturbing the peace. Exhibits 15, 16. In 2007, Mr. Monroe pled guilty to and was convicted of disturbing the peace after (according to the police incident report) Mr. Monroe "lost his temper" and "hit and battered" one of his employees at Cornerstone Concrete while on a job, leaving the employee bloodied. Exhibit 15 at 5-6. Mr. Monroe was acting as the job site foreman at the time. In 2008, Mr. Monroe was arrested and charged with battery after twice "pushing" a police officer during a traffic altercation. Exhibit 16 at 15. Mr. Monroe pled guilty to an amended charge of disturbing the peace. Exhibit 16 at 6.

In addition to these criminal convictions, Mr. Monroe was charged with criminal misdemeanors in three additional cases in 2006, 2017, and 2019, including two for "battery-domestic violence." Mr. Monroe was not convicted in any of these three cases. Exhibit 17.

---

[5] Powder Magazine, *AK Heli Guide Dies From Injuries*, https://www.powder.com/stories/ak-heli-guide-critical-condition-avalanche/ (Mar. 18, 2014). According to this article, Pulseline's founder was not wearing an avalanche airbag or helmet at the time of the avalanche.

Admin Rcd 000025

Between 1996 and 2019, Mr. Monroe was charged with eight additional criminal "infractions" in Bannock County, Idaho County, and Ada County Magistrate Courts in Idaho. Exhibit 17.

In 2016, the Internal Revenue Service filed a federal tax lien in the amount of $53,615 against Mr. Monroe in his individual capacity and Cornerstone Concrete, LLC. Exhibit 18. The lien was released in September 2020, approximately four months before Pulseline submitted its application in response to the Prospectus. Exhibit 18.

IV.    **The Evaluation Panel's Decision**

By correspondence dated March 1, 2021, the Cordova District Ranger notified SMG that the Forest Service had completed reviewing applications submitted in response to the Prospectus. Exhibit 4. The District Ranger stated:

> Based on the [Evaluation Panel's] evaluation and my review of applications, I have decided to select the following applicants for further processing (listed in order of rank and score; maximum score = 60 points):
>
>    1. Points North Heli-Adventures, Inc. (score: 54.50)
>    2. Pulseline Adventures (score: 52.50)
>    3. Valdez Heli-Ski Guides, LLC (score: 51.00)
>
> *Your rank and score:*
>
>    *4. Silverton Mountain Guides (score: 48.75)*

Exhibit 4 at 1 (emphasis added). The correspondence reproduced the Evaluation Panel's "synopsis" of SMG's application: "It was a good proposal but not nearly as thorough as others. Appears they would be a good permit holder and a good partner on the land, however more detail was needed. Appreciated some of the approaches they use that are consistent with ski area management." Exhibit 4 at 1.

The Cordova Ranger District did not provide SMG the score report completed by the Evaluation Panel for SMG's application, or the score report the Evaluation Panel completed for

18

**Admin Rcd 000026**

Pulseline. On March 11, 2021, SMG submitted a Freedom of Information Act request for information related to the selection decision, including a copy of Pulseline's application and the Evaluation Panel's score report for SMG's and Pulseline's applications. Exhibit 5. As of the date of this appeal, the Forest Service has not provided the requested documents.

**LEGAL STANDARD**

I.      **The Appeal Deciding Officer has the authority to direct the Cordova District Ranger to select SMG's permit application for further processing.**

As the Appeal Deciding Officer pursuant to 36 C.F.R. §§ 214.2 and 214.7(a)(1), the Forest Supervisor has the authority to direct the Cordova District Ranger to advance SMG's application for further processing. The Forest Supervisor does not need to find that the Evaluation Panel or District Ranger committed legal error to reverse the decision, or that the decision is arbitrary and capricious. The governing regulations empower and require the Forest Supervisor to ensure that the applicants selected for the second phase of the Prospectus process are technically capable and qualified to hold a heli-skiing special use permit. *See* 36 C.F.R. § 251.54(d)(3), (e)(5)(ii) (applicant must demonstrate "technical and financial capability" and the authorized officer "shall reject any proposal" for a special use authorization if the officer determines the "proposed use would not be in the public interest" or the "proponent is not qualified").

SMG's application demonstrated that it is a "best qualified" applicant with the proven technical and financial capability to hold a special use permit for guided heli-skiing in the Cordova Ranger District. Exhibit 2 at 2. Although the Forest Service has not provided Pulseline's application or the Evaluation Panel's score reports, the readily available facts show that Pulseline is not a best qualified applicant and does not possess the requisite technical capability to hold a heli-ski permit. The Forest Supervisor may resolve this appeal in accord

with the agency's special use permit regulations by directing the Cordova District Ranger to advance SMG's application for further processing and by directing that Pulseline's application be eliminated from consideration.

## II.    Forest Service regulations and policy require the agency to protect the public health and safety in issuing special use permits and to reject any special use application by a proponent who is "not qualified."

The governing Forest Service special use permit regulations provide that the "authorized officer *shall reject* any proposal" for a special use permit if "the officer determines" that: "the proposed use would not be in the public interest"; "the proponent is not qualified"; or the proponent does not demonstrate "technical capability to undertake the use and to fully comply with the terms and conditions of the authorization."  36 C.F.R. § 251.54(d)(3),  (e)(5)(ii)-(iv) (emphasis added).  The Forest Service Special Uses Handbook underscores that for a proponent to receive a special use authorization, "[t]he proponent *must* be qualified."  FSH 2709.11, Chapter 10, at 19 (emphasis added).[6]

The Forest Service Manual provides that one of the "objectives of the special-uses program" is to "[a]uthorize and manage special uses of National Forest System lands in a manner which protects natural resources and *public health and safety*."  FSM 2702 – Special Uses Management (emphasis added).[7]  The Special Uses Handbook provides that the one of the "objectives of the special uses application and authorization process" is to "[e]nsure that authorizations to use and occupy National Forest System lands are in the public interest."  FSH 2709.11, Chapter 10, at 4.  The Forest Service's objectives in issuing special use permits for

---

[6] Forest Service Handbooks are available at https://www.fs.fed.us/im/directives/dughtml/fsh_1.html
[7] The Forest Service Manual is available at https://www.fs.fed.us/im/directives/dughtml/fsm.html

**Admin Rcd 000028**

outfitter and guiding services include: (1) "Provide for outfitting and guiding services that address concerns of *public health and safety* and that foster successful small businesses consistent with the applicable land management plan;" and (2) "Encourage *skilled and experienced individuals and entities* to conduct outfitting and guiding activities in a manner that protects environmental resources and ensures that national forest visitors receive high-quality services."  FSH 2709.14, at 3 (emphasis added).

The Special Uses Handbook requires the Forest Service to reject any proposal that does not meet each of nine criteria, including: the proposed use (1) "is consistent with the laws, regulations, orders, and policies establishing or governing National Forest System lands (including policy in FSM 2703.1 and 2703.2)"; and (2) "will not create a serious and substantial risk to public health or safety."  FSH 2709.11, Chapter 10, at 15.  "The Authorized Officer *shall* return to proponents those proposals that fail to meet" either of these criteria.  FSH 2709.11, Chapter 10, at 20.

The special use permit regulations require the agency to consider safety in screening applicants for a special use permit.  "Each special use authorization must contain … terms and conditions which will … carry out the purposes of applicable statutes and rules and regulations issued thereunder [and] require compliance with State standards for public health and safety . . . ."  36 C.F.R. § 251.54(a)(1)(i).  "Each special use authorization must contain … such terms and conditions as the authorized officer deems necessary to … [p]rotect other lawful users of the lands adjacent to or occupied by such use" and "[p]rotect lives and property."  36 C.F.R. § 251.54(a)(1)(ii).

**Admin Rcd 000029**

**III.** **The Prospectus established objective selection criteria to be used by the Evaluation Panel to rank applicants.**

In accord with the Forest Service special use permit regulations, the Prospectus stated that the District Ranger must "determine the *best qualified* businesses to be awarded a special use permit for guided helicopter skiing." Exhibit 2 at 2 (emphasis added). The Prospectus provided that it "is focused on identifying service providers who demonstrate a *high standard of professionalism and cooperative spirit*. Proponents must commit to . . . set a good example regarding *ethical behavior, compliance with regulations*, low impacts practices, and caring for the land." Exhibit 2 at 7 (emphasis added).

The Prospectus identified sixteen criteria (the "Selection Criteria") to be used by the Evaluation Panel "to evaluate and score proposal packages" on a 60-point scale. Exhibit 2 at Attachment 1.3, at p. 1. The Selection Criteria provided an objective standard that the Evaluation Panel, and the Cordova District Ranger, would use to score and rank applications. Some of those Selection Criteria (and the "objectives" served by the criteria) include:

- B-1: Experience performing guided helicopter skiing services. Objective: Has substantial experience that establishes legitimate basis for proposed use.

- B-2: Company safety policy. Objective: Provides a safe work environment and safe client experience.

- W-1: Working relationship with regulatory agencies. Objective: Company maintains a positive working relationship with regulatory agencies.

- W-2: Employee licenses, certifications, and training. Objective: Employees have required licenses, certifications, and training for heli-ski operations.

- W-3: Medical emergency training. Objective: Employees are trained to stabilize a person until emergency responders can take over.

- O-1: Permit compliance. Objective: Company complies with the terms and conditions of permits issued by regulatory agencies like the Forest Service.

- O-2: Performance history. Objective: Records demonstrate sustained good performance and any issues identified are satisfactorily resolved.

22

**Admin Rcd 000030**

- O-3: Operating in shared use areas. <u>Objective</u>: Company employees and agents work together with other heli-ski operators to provide a positive experience for their clients and other forest users.

- L-1: Role in sustaining local communities. <u>Objective</u>: Contributes to the local economy through generation of jobs and income.

Exhibit 2 at Attachment 1.3, at p. 1-3. The Selection Criteria above accounted for 39 of the possible 60 points. Other Selection Criteria addressed financial capability, client feedback system, client education and safety, equal opportunity and accessibility, leave no trace principles, and resource stewardship. Exhibit 2 at Attachment 1.3, at p. 1-3. SMG's Prospectus application demonstrates its qualifications under each of these criteria.

**IV. <u>A court would set aside the Forest Service's final decision if the Forest Service does not follow the selection criteria or the special use permit regulations.</u>**

As the Appeal Deciding Officer, the Forest Supervisor has authority to ensure that the "best qualified" applicants are considered for a special use permit. The Forest Supervisor has the authority (and the duty) to reject any application that would not be in the public interest or if the proponent lacks technical qualifications. 36 C.F.R. § 251.54(d)(3), (e)(5)(ii)-(iv) . To reverse the District Ranger's decision, the Forest Supervisor need not determine that the District Ranger's decision was unlawful, arbitrary, or capricious. *Id.*

A federal court will apply a different standard if it reviews the Forest Service's final decision on this appeal under the Administrative Procedure Act (APA). A federal court will set aside the Forest Service's final decision on SMG's application if the judge determines that the Forest Service's decision is arbitrary, capricious, or not in accord with the agency's regulations. 5 U.S.C. § 706(2)(A). A court will set aside the decision to process Pulseline's application, rather than SMG's, if the court determines the decision is contrary to the weight of the evidence or contrary to the Prospectus Selection Criteria. *Motor Vehicles Mfrs. Ass'n v. State Farm Mut.*

*Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). A court will reverse a Forest Service decision if the Forest Service ignored substantial evidence contradicting its decision. *See Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 924 (D.C. Cir. 2017) (reversing a Forest Service decision and noting that "[b]linders may work for horses, but they are no good for administrative agencies").

A federal court will also set aside a Forest Service final decision on SMG's appeal if the Forest Service does not "abide by the regulations it promulgates." *Sameena Inc. v. U.S.A.F.*, 147 F.3d 1148, 1153 (9th Cir. 1998). It is "clear beyond cavil that an agency acts arbitrarily and capriciously if it acts in a manner that is contrary to its own regulations." *Policy & Research, LLC v. U.S. Dep't of Health & Hum. Servs.*, 313 F. Supp. 3d 62, 72 (D.D.C. 2018). "Thus, an agency action may be set aside as arbitrary and capricious" under the APA "if the agency fails to comply with its own regulations." *Nat'l Env't Dev. Assoc's Clean Air Project v. E.P.A.*, 752 F.3d 999 (D.C. Cir. 2014).

Having established objective criteria (the Selection Criteria) by which the Forest Service indicated it would evaluate proposals received in response to the Prospectus, the Forest Service is obligated to apply that criteria. *See Triumvirate, LLC v. Bernhardt*, 367 F. Supp. 3d 1011 (D. Ak. 2019) (vacating decision of BLM Anchorage Field Office to issue heli-skiing special recreation permit because decision violated BLM regulations and Handbook provisions). If the agency does not base its decision upon a rational application of the Selection Criteria, a federal court will reverse that decision. *Latecoere Int'l, Inc. v. U.S. Dep't of Navy*, 19 F.3d 1342, 1359 (11th Cir. 1994). "[O]nce offerors are informed of the criteria against which their proposals will be evaluated, the agency must adhere to those criteria . . . or inform all offerors of any significant changes made in the evaluation scheme." *Id.* (quotation marks omitted) (reversing agency

decision to award a contract to ETC rather than Latecoere because, given that Latecoere should have received higher ratings than ETC under the agency's objective evaluation criteria, "no rational basis exists for the award to ETC instead of Latecoere").

## ARGUMENT

The Forest Supervisor should reverse the decision to select Pulseline's application for further processing and direct the Cordova District Ranger to advance SMG's application for further processing.  According to the Forest Service's objective Selection Criteria, SMG is a far more qualified applicant than Pulseline.  The Authorized Officer should have rejected Pulseline's application because Pulseline's lack of any experience holding a special use permit or operating a permitted heli-ski business, and the failure by Pulseline's owner to comply with state criminal laws and federal corporate tax laws, demonstrate that Pulseline is "not qualified."  36 C.F.R. § 251.54(e)(5) (authorized officer "shall reject" any application by a proponent who is "not qualified).  The Evaluation Panel's decision to process Pulseline's application over SMG's application violates Forest Service regulations that mandate that only technically capable applicants may be considered for a special use authorization.  36 C.F.R. § 251.54(e)(5)(iv).  If the Forest Supervisor does not correct these deficiencies by advancing SMG's application for further processing, and rejecting Pulseline's, a federal district court will set aside the decision.

## I.    SMG is the "best qualified" applicant compared to Pulseline.

The Evaluation Panel should have ranked SMG's permit application higher than Pulseline's application because, under the Prospectus's objective Selection Criteria, SMG is the "best qualified" applicant compared to Pulseline.  Exhibit 2 at 2.

25

**Admin Rcd 000033**

A. SMG has extensive experience as a permitted heli-ski operator in Alaska, while Pulseline has no experience.

SMG's experience demonstrates that SMG performs better than Pulseline on Selection Criteria B-1 (experience performing guided helicopter skiing services); W-1 (working relationship with regulatory agencies); O-1 (permit compliance); O-2 (performance history); and O-3 (operating in shared use areas).

**SMG.** SMG has more operational experience and a longer record of working with regulatory permitting agencies and fellow permittees than Pulseline. Since 2005, SMG's owner and operator has held ten permits issued by federal, state, and local agencies to provide heli-skiing services. Exhibit 1 at ¶ 5. SMG currently holds six permits from federal and local agencies. Exhibit 3 at 13. As demonstrated by three reference letters from BLM field offices where SMG currently conducts heli-ski operations pursuant to BLM special recreation permits, SMG has an established history of working with regulating agencies and maintaining compliance with permit terms. Exhibit 3 at 6, 38, 39. Each reference letter from a BLM official provided an unqualified endorsement of SMG's qualifications and experience.

**Pulseline**. Pulseline has never held a Forest Service special use permit or BLM special recreation permit. Exhibit 1 at ¶ 24. Pulseline has no experience operating as a permitted heli-ski operator. Exhibit 1 at ¶ 24. Pulseline has some experience acting as a broker by connecting potential clients to permitted heli-ski operators, collecting a fee for that service, and providing guides. The District Ranger should have rejected Pulseline's application because it lacks the technical qualifications to hold a Forest Service heli-ski special use permit. *See* 36 C.F.R. § 251.54(e)(5)(iv) (The Forest Service "authorized officer *shall reject* any proposal" for a special use permit if the proponent does not demonstrate "technical capability to undertake the use and to fully comply with the terms and conditions of the authorization.").

26

**Admin Rcd 000034**

Because Pulseline has never held a Forest Service or BLM heli-skiing permit, it has no experience in the day-to-day operations involved in permitted heli-ski operations. Maintaining compliance with permit terms requires near-daily contact with the regulating agency regarding duties ranging from reporting wildlife sightings to maintaining GPS flight tracking. The sample special use permit attached to the Prospectus lists some of those duties, including: developing and submitting an annual operating plan (Exhibit 2, Attachment 2.0 at ¶ II.A); submitting an itinerary for each trip (II.B); notifying the agency in case of a change in control of the company (I.H); complying with environmental, nondiscrimination, and other federal laws (II.I, IV.A); maintaining liability insurance (III.K); paying an annual land use fee and other fees (V.A); documenting actual use and submitting a use report to the Forest Service (V.C); maintaining accounting books and making them available for Forest Service inspection (V.E); complying with strict limitations on flight paths to minimize disturbance to Cordova residents (Attachment 2.3 to Prospectus at 1-2); maintaining wildlife flight buffers (*id.* at 1-2); coordinating and maintaining regular communication with fellow heli-ski permittees in the Ranger District (*id.* at 1); complying with seasonal wildlife restrictions (*id.* at 2); logging all landing approaches due to presence of wildlife (*id.* at 2); maintaining a GPS data logger for each flight (*id.* at 3); submitting daily performance reports including log data and maps upon request (*id.* at 3); and reporting wildlife sightings (*id.* at 3). *See* Exhibit 2, Attachments 2.0 and 2.3.

These duties require near-daily interaction with the Forest Service permit administrator. Because Pulseline has never held a special use permit, it has no experience with complying with these duties. *See* Exhibit 2 at Attachment 2.0, at ¶ I.H (noting that the "holder" of the permit—not any entity the holder contracts with to provide support services—"shall conduct the day-to-day activities authorized by this permit" and is "responsible for compliance with all the terms of

**Admin Rcd 000035**

this permit). *See also* FSH 2709.14, at 4 (Forest Service special use policy for outfitting and guiding services states that the agency shall "[n]ot authorize use when an applicant owns no tangible assets, lacks the prerequisites to conduct outfitting and guiding (such as a State license, liability insurance, and equipment), and would serve only as an intermediary for others providing those services on National Forests System lands.").

B.    <u>SMG has an established excellent safety record; Pulseline has none.</u>

SMG's safety protocols and record demonstrate that SMG is entitled to more points than Pulseline under Selection Criteria B-2 (company safety policy); C-2 (client preparation and education); C-3 (client safety orientation); W-2 (employee licenses, certifications, and training); W-3 (medical emergency training); and O-2 (performance history).

**<u>SMG.</u>** SMG has the best and most established safety record among Alaska heli-ski operators. Exhibit 1 at ¶ 7; Exhibit 3 at 13. In the 13 years that SMG has operated in Alaska, it has had no avalanche accidents, no helicopter accidents, no substantial injuries, and no fatalities. Exhibit 1 at ¶ 7. No other Alaska heli-ski operator can claim that safety record. SMG's safety record is unusually strong, given the unfortunate history of fatalities in the Alaska heli-skiing industry.[8]

SMG's safety record is due to its 4:2 guest-to-guide ratio and its rigorous guide education and examination program. SMG is the *only* Alaska heli-ski operator with a policy of maintaining

---

[8] *See, e.g., Skier killed by weekend avalanche was heli-skiing east of Matanuska Glacier*, Anchorage Daily News (Mar. 30, 2021), https://www.adn.com/alaska-news/2021/03/30/skier-killed-by-weekend-avalanche-was-heli-skiing-east-of-matanuska-glacier/; *Heli-ski guide dies in Alaska*, Firsttracksonline.com (Mar. 4, 2013), https://www.firsttracksonline.com/2013/03/04/heli-ski-guide-dies-in-alaska/; *Second skier dies from injuries sustained in avalanche near Haines*, KTOO.org (Mar. 14, 2012), https://www.ktoo.org/2012/03/14/second-skier-dies-from-injuries-sustained-in-avalanche-near-haines/.

**Admin Rcd 000036**

two guides, rather than the usual one guide, for each group of four guests.  Exhibit 1 at ¶ 8; Exhibit 3 at 12, 22.  Providing two guides per guest group allows each guest to maintain visual or verbal contact with a guide at all times.  Exhibit 1 at ¶ 8.  Placing two guides with each group speeds up the loading and unloading process, minimizing guest exposure to the dangers of spinning helicopter rotors, allowing for more skiing, and providing a better guest experience.  Most importantly, it doubles the expert resources available for on-site avalanche risk assessment, route selection, and, if necessary, avalanche and crevasse rescue.  This results in a substantial increase in safety margins and an overall better client experience.  Exhibit 1 at ¶ 8.

SMG is the only Alaska heli-ski operator that requires annual guide testing and guide examinations.  Exhibit 1 at ¶ 9.  SMG also requires annual training and certifications.  Exhibit 1 at ¶ 9.

**Pulseline.**  In 2014, Pulseline's founder and initial owner died after he triggered and was buried by an avalanche while guiding heli-skiing guests near Haines, Alaska.  At the time, Pulseline did not hold a Forest Service special use permit or BLM special recreation permit for heli-skiing.  Pulseline's owner was a participating guide on a trip conducted by another company, Southeast Alaska Backcountry Adventures, which held a heli-ski permit.[9]

Because Pulseline has no experience operating under a Forest Service special use permit or a BLM special recreation permit, it has no experience implementing or maintaining company safety protocols.  Pulseline has no experience in maintaining a guide certification, training, education, or examination program for a permitted operation.

---

[9] https://www.powder.com/stories/ak-heli-guide-critical-condition-avalanche/

29

**Admin Rcd 000037**

C.  SMG has an established history of compliance with corporate, employment, workers' compensation, and other laws, while Pulseline has a history of sloppy corporate governance and a failure to comply with federal and state laws.

SMG's history of compliance with federal and state laws and permit terms demonstrates SMG is entitled to more points than Pulseline for Selection Criteria W-1 (working relationship with regulatory agencies); and O-1 (permit compliance).

**SMG.**  During SMG's 13-year history, SMG has maintained its status as a limited liability company in good standing and in compliance with Colorado and Alaska corporate law. Exhibit 1 at ¶ 16.  SMG maintains workers' compensation insurance as required by Alaska law. SMG has consistently maintained liability insurance in compliance with its permits.  Exhibit 1 at ¶ 16.

**Pulseline.**  As of less than two weeks before the Prospectus application deadline, Pulseline was an "administratively dissolved" limited liability company, did not hold an Alaska business license, and did not maintain Alaska workers' compensation insurance.  Exhibits 8-11. On January 8, 2021, shortly before the deadline to submit an application, Pulseline requested the Idaho Secretary of State to reinstate its status as an active limited liability company.  Exhibit 9. Pulseline acquired an Alaska business license only after it submitted its Prospectus application. Exhibit 11.  It appears Pulseline does not maintain Alaska workers' compensation insurance, despite that the "Alaska Workers' Compensation Act requires each employer having one or more employees in Alaska to obtain workers' compensation insurance."[10]  Exhibit 10.

Pulseline's website advertises heli-ski trips in the Haines and Valdez area in March and April 2021.[11]  Given that Alaska law requires any employer with employees in Alaska to obtain

---

[10] https://labor.alaska.gov/wc/er-profit.html

[11] https://pulselineadventure.com/heliskialaska/; https://pulselineadventure.com/ak-tour-camp-2021/ (last accessed Apr. 7, 2021).

Admin Rcd 000038

workers' compensation insurance, it appears that Pulseline (1) has no employees in Alaska or (2) unlawfully failed to obtain workers' compensation insurance.

   D.   <u>Pulseline's owner has a history of criminal arrests and convictions and a failure to timely pay federal corporate tax.</u>

   **SMG.**  SMG's owner, Aaron Brill, has never been arrested for, charged with, or convicted of a violation of a federal or state criminal law.  Exhibit 1 at ¶ 17.  Neither Mr. Brill nor SMG has been charged with any violation of federal or state tax laws.  Exhibit 1 at ¶ 17.  No Forest Service special use permit or BLM special recreation permit held by SMG or any of Mr. Brill's other ski companies has been suspended or terminated.  Exhibit 1 at ¶ 26.

   **Pulseline.**  Gabriel Monroe, who in his capacity as Pulseline's sole owner and manager would sign a special use permit on Pulseline's behalf, has a history of unprofessional and violent conduct.  Mr. Monroe's history makes him not qualified to provide permitted heli-ski services on public lands.  Exhibits 15-18.

   Mr. Monroe has a criminal record showing five arrests and two convictions.  Exhibit 17.  Records related to these proceedings show a long-term history of anger control issues and violent behavior, including convictions following incidents where Mr. Monroe shoved a police officer and battered one his employees while on a job site.  Exhibits 15, 16.  Mr. Monroe was twice arrested and charged with domestic violence.  Exhibit 17.  Mr. Monroe was charged with eight criminal "infractions" between 1996 and 2019.  Exhibit 17.

   Given this history, Mr. Monroe (and by extension, Pulseline) is "not qualified" to hold a special use permit allowing the use of Forest Service lands for commercial use.  *See* 36 C.F.R. § 251.54 (e)(5) (Forest Service "authorized officer shall reject any proposal" for a special use permit if the officer determines "the proponent is not qualified").

**Admin Rcd 000039**

The Prospectus provides that it "is focused on identifying service providers who demonstrate a high standard of professionalism" and who will "set a good example regarding ethical behavior." Exhibit 2 at 7. The sample special use permit attached to the Prospectus provides:

> In general, the holder is expected to behave in a professional demeanor regarding their interactions with the Forest Service, other agencies, their peer group, and the people they serve. Disorderly or objectionable conduct by the Holder, (or those occupying the premises with holder's permission) may be cause for termination of this authorization.

Exhibit 2 at Attachment 2.0, p. 9. Mr. Monroe has not demonstrated an ability to comply with these requirements.

Pulseline is not qualified to hold a Forest Service special use permit because granting a permit to Pulseline would violate the Forest Service's objectives in issuing special use permits for outfitter and guiding services, which include: "Encourage *skilled and experienced individuals and entities* to conduct outfitting and guiding activities in a manner that protects environmental resources and ensures that national forest visitors receive *high-quality services*." FSH 2709.14, at 3 (emphasis added). *See* 36 C.F.R. § 251.54(e)(5) (Forest Service must reject a special use permit application if the proponent is "not qualified"); FSM 2716.82 ("Holders of special use authorizations . . . are subject to referral for debarment and suspension" if the holder is convicted of any "offense indicating a lack of business integrity . . . that seriously and directly affects the holder's present responsibility").

A heli-ski operator awarded a permit pursuant to the Prospectus will operate in an environment characterized by extreme conditions and a risk of injury or death. Guests have devoted a substantial amount of money and time to the trip and, consequently, often exert pressure on the guide to take risks to allow more time skiing. Guiding heli-ski trips requires an

Admin Rcd 000040

exceptional ability to make reasoned decisions in high-pressure situations.  Mr. Monroe's criminal history and inability to control his impulses show he lacks those skills.

Another business wholly owned and operated by Mr. Monroe, Cornerstone Concrete, LLC, failed to pay federal corporate taxes.  In 2016, the Internal Revenue Service filed a tax lien of over $50,000 against Mr. Monroe and Cornerstone Concrete, LLC.  Exhibit 18.  This lien remained in place and was not released until September 2020, two months before issuance of the Prospectus.  Exhibit 18.  Mr. Monroe's failure to pay federal corporate taxes is further evidence that Mr. Monroe is not qualified to manage and operate a holder of a Forest Service heli-ski special use permit.

     E.     <u>SMG, an Alaska-owned company, would provide far more benefits to the local economy and population than Pulseline, an Idaho-owned company, would provide.</u>

SMG is entitled to more points than Pulseline under Selection Criteria L-1 (role in sustaining local communities).

**<u>SMG.</u>**  SMG is an Alaska limited liability company wholly owned and managed by an Alaskan resident (Mr. Brill).  Mr. Brill has resided in Alaska with his wife since 2012.  Exhibit 1 at ¶ 3.  SMG is based in Palmer, Seward, and Girdwood, Alaska.  Many of SMG's employees live in Alaska.  Exhibit 1 at ¶ 4.

Congress has adopted a policy of favoring Alaskan-owned outfitters in issuing special use authorizations on certain federal lands in Alaska.  *See* 16 U.S.C. § 3197; 36 C.F.R. part 251, subpart E.  Due in part to SMG's early annual opening date, which is generally months before other heli-ski operators based in Cordova or Valdez, SMG has guided local Alaska residents who otherwise may not have an opportunity to access nearby federal lands.  Exhibit 1 at ¶ 15; Exhibit 3 at 23-24.

**Admin Rcd 000041**

**Pulseline.**  Pulseline, by contrast, is a limited liability company organized in Idaho and owned by an Idaho resident.  Exhibits 8, 9.  Nearly all of the services advertised by Pulseline's website occur outside of Alaska, and much of it occurs outside the United States.[12]  Pulseline does not maintain Alaska workers' compensation insurance, indicating either (1) Pulseline has no employees in Alaska or (2) Pulseline is in violation of the Alaska Workers' Compensation Act.  *See* Ak. Stat. § 23.30.045 (requiring employers with one or more employees in Alaska to obtain workers' compensation insurance); Exhibit 10.

F.     Using the Prospectus Selection Criteria, SMG is more qualified than Pulseline.

The table below compares SMG's qualifications and experience with Pulseline's using some of the Prospectus Selection Criteria.  The Evaluation Panel's decision to score Pulseline higher than SMG cannot be squared with the facts.

---

[12] *See* https://pulselineadventure.com/locations/ (last accessed Apr. 7, 2021).

34

**Admin Rcd 000042**

| | Prospectus Selection Criteria | Silverton Mountain Guides | Pulseline Adventure | Possible points |
|---|---|---|---|---|
| B-1 | Experience performing guided helicopter skiing services | SMG has 13 years of experience as a permitted and registered heli-ski operator; has guided thousands of guests; SMG's owner and lead guide has over 20 years' experience in permitted mechanized ski operations | No experience as a permitted operator; some experience as a contract broker and providing guides to permitted operators | 3 |
| B-2 | Company safety policy | Perfect safety record over 13 years; only Alaska heli-skiing operator that provides two guides per four-guest group | No experience in implementing, maintaining, or improving a safety policy | 5 |
| W-1 | Working relationship with regulatory agencies | 13 years of experience; submitted references from three BLM Field Offices endorsing SMG's experience | None | 5 |
| W-2 | Employee licenses, certification, and training | Only Alaska heli-ski operator that requires annual guide testing and examination; requires annual training | No experience in implementing, maintaining, or improving guide education and examination policy | 5 |
| W-3 | Medical emergency training | Only Alaska heli-ski operator that requires annual guide testing and examination; requires annual training | No experience in implementing, maintaining, or improving guide education and examination policy | 3 |
| O-1 | Permit compliance | 13 years of experience operating in compliance with ten permits issued by federal, state, and local agencies | None; never held a permit; owner/manager has two criminal convictions and extensive record of arrests; failed to pay federal corporate taxes for another business | 5 |
| O-2 | Performance history | No fatalities, substantial injuries, avalanches, or accidents in 13 years of operations | Founder and first owner died after triggering avalanche while guiding guests; no experience as a permitted operator | 3 |
| O-3 | Operating in shared use areas | 13 years of experience; submitted reference letter from a competitor and fellow permittee in the Cordova Ranger District | None | 5 |
| L-1 | Role in sustaining local communities | Alaska-owned LLC organized under Alaska law; provides discounted trips to locals; employs Alaskans; maintains Alaska workers' compensation insurance | Idaho-owned LLC organized under Idaho law; does not provide workers' compensation insurance to guides | 5 |

**Admin Rcd 000043**

**II.**     **The Evaluation Panel's selection of Pulseline's application rather than SMG's application violates the Forest Service's policy to protect the public health and safety in the special use authorization application process.**

Ensuring the public health and safety is an important component of the Forest Service's special use permit program. The Forest Service Manual provides that the one of the "objectives of the special-uses program" is to "[a]uthorize and manage special uses of National Forest System lands in a manner which protects . . . public health and safety." FSM 2702 – Special Uses Management. The Forest Service's objectives in issuing special use permits for outfitter and guiding services include: "Provide for outfitting and guiding services that address concerns of *public health and safety* and that foster successful small businesses consistent with the applicable land management plan." FSH 2709.14, at 3 (emphasis added).

The decision to continue processing Pulseline's application does not conform with these policies. *See* FSH 2709.11, Chapter 10, at 15, 20 (requiring the authorized officer to reject any special use proposal that does not meet certain criteria, including that the proposed use "will not create a serious and substantial risk to public health or safety"). Pulseline lacks any experience in implementing a safety plan and, because it has never held a Forest Service special use permit or BLM special recreation permit, has no established safety record.

Processing an application from a proponent with no established safety record (Pulseline), rather than one from a proponent with a 13-year history of no accidents or fatalities and a guide training and examination procedure that exceeds every other Alaska heli-ski operator's procedure (SMG), does not conform with the Forest Service's policy of protecting public health and safety in issuing special use authorizations. FSM 2702; FSH 2709.14, at 3.

**Admin Rcd 000044**

**III.** **The Evaluation Panel should have rejected Pulseline's application because Pulseline is "not qualified."**

Pulseline is "not qualified" to hold a special use permit for heli-skiing because (1) Pulseline lacks any experience as a permitted heli-ski operator, (2) until eleven days before the Prospectus application deadline, Pulseline Adventure, LLC was in "administratively dissolved" status and did not hold an Alaska business license (Exhibits 9, 11); (3) Pulseline does not maintain Alaska workers' compensation insurance (Exhibit 10); (4) Pulseline's owner and manager has a history of criminal arrests and convictions that reveal a tendency to resort to anger and violence in high-pressure situations (Exhibits 15-17); and (5) Pulseline's owner failed to timely pay taxes owed by one of his other businesses (Exhibit 18). These facts prevent Pulseline from demonstrating it is technically capable of complying with the terms and conditions of a special use permit. *See* 36 C.F.R. § 251.54(e)(5)(iv) (Forest Service authorized officer "shall reject any proposal" if the officer determines the proponent does not demonstrate "technical capability to undertake the use and to fully comply with the terms and conditions of the authorization"). The Forest Service should have rejected Pulseline's application because it is "not qualified" to hold a heli-skiing special use permit. 36 C.F.R. § 251.54(e)(5) (authorized officer must reject an application if the officer determines the proponent is "not qualified").

**IV.** **A federal district court will reverse the decision to process Pulseline's application rather than SMG's application.**

Under the Administrative Procedure Act (APA), a federal district court "shall" set aside agency action that is "arbitrary," "capricious," or contrary to law. 5 U.S.C. § 706(2)(A); *see also Triumvirate, LLC v. Bernhardt*, 367 F. Supp. 3d 1011 (D. Ak. 2019) (vacating decision of BLM Anchorage Field Office to issue heli-skiing special recreation permit because decision violated BLM regulations and Handbook provisions). A court will set aside the decision to process

Pulseline's application, rather than SMG's, because that decision is contrary to the weight of the evidence and not supported by the Prospectus Selection Criteria. *See Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins*., 463 U.S. 29, 43 (1983) (agency decision is arbitrary and capricious where it "runs counter to the evidence before the agency"); *Olenhouse v. Commodity Credit Corp*., 42 F.3d 1560, 1575 (10th Cir. 1994) ("[T]he arbitrary and capricious standard focuses on the rationality of an agency's decision making process.").

The decision to process Pulseline's application, rather than SMG's, is contrary to the evidence before the Evaluation Panel. The evidence shows that SMG is the better qualified applicant, including because it has actual operational experience as a permitted heli-skiing operator, an established safety record, safety procedures that exceed industry standards, and demonstrated working relationships with regulatory agencies. Unless the Forest Supervisor reverses the decision, a court will set it aside because the record shows that the Evaluation Panel failed to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicles Mfrs. Ass'n*, 463 U.S. at 43. The Evaluation Panel's decision does not articulate the "rational connection" between the evidence and the decision that a federal judge will require under the APA. *See Natural Res. Def. Council v. U.S. Forest Serv.*, 421 F.3d 797, 810 (9th Cir. 2005) (vacating Forest Service decision because the agency's explanation "runs counter to the evidence before" the agency and because the agency "did not "state a rational connection between [the facts] found and its decision"). The decision to process Pulseline's application, and to reject SMG's application, does not address this evidence. Given the Selection Criteria and the facts, a court will set aside the decision (unless the Forest Supervisor corrects it, as he should). *E.g.*, *Eco Tour Adventures Inc. v. Zinke*, 249 F. Supp.3d 360, 378-79 (D.D.C. 2017) (reversing National

35

**Admin Rcd 000046**

Park Service decision to award cross-country skiing concession contracts to applicants that did not satisfy identified selection criteria).

The decision to select Pulseline for further processing, and the decision to eliminate SMG from consideration, also violates the agency's binding obligation to ensure that a holder of a special use authorization possesses the "technical and financial capability" to hold the authorization and is "otherwise acceptable." 36 C.F.R. § 251.54(d)(3). SMG easily satisfies this standard and Pulseline cannot. Given the facts demonstrated in this appeal, unless the Forest Supervisor reverses the decision, a federal court will set aside the decision because the Forest Service will have failed to follow its own special use permit regulations by rejecting a "best qualified" applicant in favor of a grossly unqualified one. *E.g.*, *Nat'l Envtl. Dev. Ass'n's Clean Air Project v. Envtl. Protection Agency*, 752 F.3d 999, 1011 (D.C. Cir. 2014) (an "agency is not free to ignore or violate its own regulations while they remain in effect"); *Exportal LTDA v. United States*, 902 F.2d 45, 46 (D.C. Cir. 1990) (reversing agency decision that was "flatly inconsistent with the plain terms" of the agency's regulations).

### THE ISSUANCE OF PERMITS PURSUANT TO THE PROSPECTUS IS AUTOMATICALLY STAYED PURSUANT TO 36 C.F.R. § 214.13(c)(1)

Pursuant to 36 C.F.R. § 214.13(c)(1), the issuance of any special use authorizations pursuant to the Prospectus is automatically stayed "until a final administrative decision is issued" in this appeal, as provided by 36 C.F.R. § 214.13(d).

### CONCLUSION

SMG respectfully requests the Forest Supervisor to reverse the decision to select Pulseline's permit application for further processing and to direct the Cordova District Ranger to advance SMG's application for further consideration within the top three ranked applicants. SMG looks forward to continuing to partner with the Forest Service in providing high-quality

36

**Admin Rcd 000047**

public recreation on National Forest System lands under conditions that protect the environment and promote appreciation of the resource. SMG appreciates the work of the Cordova District Ranger and District staff and will continue to work cooperatively with Forest Service personnel and other permitted operators in providing guided heli-skiing within the Chugach National Forest.

Respectfully submitted,

*s/ Ezekiel J. Williams*
Ezekiel J. Williams (USDC DC Bar No. CO0056)
John H. Bernetich (USDC DC Bar No. 1018769)
WILLIAMS WEESE PEPPLE & FERGUSON PC
1801 California St., Suite 3400
Denver, CO 80202
Telephone: 303-228-2529
Facsimile: 303-861-4017
zwilliams@williamsweese.com
jbernetich@williamsweese.com

Andrew L. Spielman
AK Bar No. 2002005
DC Bar No. 462474
BROWNSTEIN HYATT FARBER SCHRECK, LLP
1155 F Street, NW, Suite 1200
Washington, DC 20004
Telephone: 202-383-5913
Fax: 202-296-7009
aspielman@bhfs.com

*Attorneys for Silverton Mountain Guides LLC*

Dated this 12th day of April, 2021.

## LIST OF EXHIBITS

1. Declaration of Aaron Brill (Apr. 9, 2021)

2. U.S. Forest Service, Chugach National Forest, Cordova Ranger District, Guided Helicopter Skiing Prospectus (Nov. 2020)

3. Silverton Mountain Guides LLC Application in Response to Cordova Ranger District Guided Helicopter Skiing Prospectus (dated Dec. 17, 2020; submitted Jan. 7, 2021)

4. Correspondence from Steven Namitz, Cordova District Ranger to Aaron Brill, Silverton Mountain Guides LLC (Mar. 1, 2021)

5. Freedom of Information Act Request submitted by Aaron Brill to Jennifer Mac Donald, U.S. Forest Service Special Uses Program Manager, and Region 10 FOIA Officer (Mar. 11, 2021)

6. Alaska Department of Commerce, Community, and Economic Development, Corporations, Business & Professional Licensing, Entity Details Summary for Silverton Mountain Guides LLC and SMG One LLC

7. Colorado Secretary of State, Entity Details Summary for Silverton Mountain Guides LLC

8. Idaho Secretary of State, Certificate of Organization for Pulseline Adventure, LLC

9. Idaho Secretary of State, History for Pulseline Adventure, LLC

10. Search Results, Alaska Department of Labor and Workforce Development, Division of Workers Compensation (Mar. 30, 2021)

11. Alaska Department of Commerce, Community, and Economic Development, Division of Corporations, Business & Professional Licensing, License Details for Pulseline Adventure, LLC

12. Alaska Department of Natural Resources, Division of Mining, Land and Water, Commercial Day Use Registration (2014-2021)

13. Alaska Department of Commerce, Community, and Economic Development, Corporations, Business & Professional Licensing, Entity Details for Pulseline Adventure, LLC

14. Screenshot of Cornerstone Concrete webpage, "Eastern Idaho Concrete Contractor," http://www.cornerstoneconcreteidaho.com/component/content/article/2-uncategorised/1-eastern-idaho-concrete-contractor (last accessed Apr. 6, 2021)

15. Case File for CR-2007-0019442-MD, Sixth Judicial District Court, Bannock County, Idaho

16. Case File for CR-2008-6764, Bingham County Magistrate Court

17. Court database list of criminal actions filed against Gabriel Monroe

18. Documents related to tax lien filed by Internal Revenue Service against Gabriel Monroe and Cornerstone Concrete, LLC

39

**Admin Rcd 000050**

## CERTIFICATE OF SERVICE

Pursuant to 36 C.F.R. § 214.14(g)(1), I certify that on April 12, 2021 the foregoing document was served via FedEx next-day delivery and electronic mail on the following parties:

Jeff Schramm
Chugach National Forest Supervisor
161 East 1st Ave., Door 8
Anchorage, AK 99501
jeff.schramm@usda.gov
mailroom_R10_chugach@usda.gov

Steven Namitz
Cordova District Ranger
P.O. Box 280
612 Second Street
Cordova, AK 99574
steven.namitz@usda.gov

Pursuant to 36 C.F.R. § 214.14(g)(1), I certify that on April 12, 2021 the foregoing document was served via first class US mail on the following parties:

Pulseline Adventure, LLC
928 W. Alameda Rd.
Pocatello, ID 83201

Points North Heli-Adventures Inc.
P.O. Box 1610
Cordova, AK 99574

Valdez Heli-Ski Guides
HC-1 Box 85
Mile Post 35 Richardson Highway
Valdez, AK 99686

/s/ Patricia Krakowski

40

**Admin Rcd 000051**

Williams Weese
IIII Pepple & Ferguson

Ezekiel J. Williams
EMAIL zwilliams@williamsweese.com
DIRECT 303.228.2529
CELL 303.748.9968
WEB www.williamsweese.com

1801 California Street
Suite 3400
Denver, Colorado 80202
MAIN 303.861.2828
FAX 303.861.4017

April 12, 2021

Via Email – Mailroom_R10_Chugach@usda.gov; jeff.schramm@usda.gov

Jeff Schramm
Forest Supervisor & Appeal Deciding Officer
Chugach National Forest
161 East 1st Avenue, Door 8
Anchorage, Alaska 99501

Re:     Appeal by Silverton Mountain Guides LLC of the March 1, 2021 Selection Process
Decision by the Cordova Ranger District for the Guided Helicopter Skiing Prospectus

Dear Forest Supervisor Schramm:

    I am writing in connection with the April 12, 2021 appeal of the above-described
decision that I filed today with you on behalf of Silverton Mountain Guides LLC (SMG).  As
shown in the certificate of service attached to the appeal, SMG served a copy of the appeal on
three parties that the Cordova Ranger District identified in the decision (Points North Heli-
Adventures, Pulseline Adventures, and Valdez Heli-Ski Guides).  Could you please identify the
names and addresses of any other parties to the appeal as stated in 36 C.F.R. § 214.14(g) so that
SMG may serve a copy of its appeal on them?

    Thank you, and please direct any communications concerning SMG's appeal to me.

                        Sincerely,

                        Ezekiel J. Williams
                        Counsel to Silverton Mountain Guides LLC

cc:     Aaron Brill
        Andy Spielman

Admin Rcd 000052

**APPEAL TO THE CHUGACH NATIONAL FOREST SUPERVISOR**
**UNITED STATES FOREST SERVICE**

In the Matter of the March 1, 2021
Selection Decision of Chugach National Forest, Cordova District Ranger Steven Namitz
Regarding the Cordova Ranger District Guided Helicopter Skiing Prospectus

---

**APPEAL PURSUANT TO 36 C.F.R. PART 214 BY**
**SILVERTON MOUNTAIN GUIDES LLC OF THE SELECTION DECISION IN THE**
**CORDOVA RANGER DISTRICT GUIDED HELICOPTER SKIING PROSPECTUS**

**ORAL PRESENTATION REQUESTED PURSUANT TO 36 C.F.R. § 214.16(d)**

**ISSUANCE OF PERMITS AUTOMATICALLY STAYED**
**PURSUANT TO 36 C.F.R. § 214.13(c)(1)**

---

Ezekiel J. Williams
USDC DC Bar No. CO0056
John H. Bernetich
USDC DC Bar No. 1018769
WILLIAMS WEESE PEPPLE & FERGUSON PC
1801 California St., Suite 3400
Denver, CO 80202
Telephone: 303-228-2529
Fax: 303-861-4017
zwilliams@williamsweese.com
jbernetich@williamsweese.com

<u>Name and Address of Appellant</u>

Silverton Mountain Guides LLC
Attn: Aaron Brill
PO Box 4012
Palmer, AK 99645
(907) 830-1122
aaron@smgak.com

Andrew L. Spielman
AK Bar No. 2002005
DC Bar No. 462474
BROWNSTEIN HYATT FARBER SCHRECK, LLP
1155 F Street, NW, Suite 1200
Washington, DC 20004
Telephone: 202-383-5913
Fax: 202-296-7009
aspielman@bhfs.com

*Attorneys for Appellant Silverton Mountain
Guides LLC*

**Admin Rcd 000053**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iii

INTRODUCTION & SUMMARY .......................................................................................... 1

STATEMENT REGARDING COMPLIANCE WITH 36 C.F.R. § 214.8 ................................... 5

FACTUAL BACKGROUND .................................................................................................. 7

    I.   The Prospectus .......................................................................................................... 7

    II.  Silverton Mountain Guides ....................................................................................... 8

          A.   SMG has over 13 years of operational experience. ...................................... 8

          B.   SMG's safety record and protocols are the strongest among Alaska heli-ski guiding companies. ................................................................................... 9

          C.   SMG provides unique benefits to the local Alaska community. ............................... 12

          D.   SMG and its owner, Aaron Brill, have a proven history of complying with federal and state corporate and employment laws. .............................................................. 12

          E.   Reference letters submitted by three BLM officials and a heli-ski competitor company demonstrate SMG's strong working relationships with regulatory agencies and fellow permit holders. ................................................................................... 13

    III. Pulseline Adventure ............................................................................................... 14

          A.   Pulseline has a history of failing to comply with state law. ...................................... 14

          B.   Pulseline is an adventure travel agency, not a permitted heli-ski operator. .............. 15

          C.   Pulseline's owner has a record of criminal arrests and convictions and failure to pay corporate taxes. ................................................................................................... 17

    IV. The Evaluation Panel's Decision ............................................................................ 18

LEGAL STANDARD ........................................................................................................... 19

    I.   The Appeal Deciding Officer has the authority to direct the Cordova District Ranger to select SMG's permit application for further processing. .................................................. 19

    II.  Forest Service regulations and policy require the agency to protect the public health and safety in issuing special use permits and to reject any special use application by a proponent who is "not qualified." .................................................................................. 20

**Admin Rcd 000054**

i

III.   The Prospectus established objective selection criteria to be used by the Evaluation Panel to rank applicants. .................................................................................................. 22

IV.   A court would set aside the Forest Service's final decision if the Forest Service does not follow the selection criteria or the special use permit regulations. ..................................... 23

ARGUMENT .................................................................................................................. 25

I.   SMG is the "best qualified" applicant compared to Pulseline. .......................................... 25

A.   SMG has extensive experience as a permitted heli-ski operator in Alaska, while Pulseline has no experience. ....................................................................................... 26

B.   SMG has an established excellent safety record; Pulseline has none. ....................... 28

C.   SMG has an established history of compliance with corporate, employment, workers' compensation, and other laws, while Pulseline has a history of sloppy corporate governance and a failure to comply with federal and state laws. .............. 30

D.   Pulseline's owner has a history of criminal arrests and convictions and a failure to timely pay federal corporate tax. ................................................................................ 31

E.   SMG, an Alaska-owned company, would provide far more benefits to the local economy and population than Pulseline, an Idaho-owned company, would provide…. ................................................................................................................ 33

F.   Using the Prospectus Selection Criteria, SMG is more qualified than Pulseline. ..... 34

II.   The Evaluation Panel's selection of Pulseline's application rather than SMG's application violates the Forest Service's policy to protect the public health and safety in the special use authorization application process. ................................................................................ 33

III.   The Evaluation Panel should have rejected Pulseline's application because Pulseline is "not qualified." ................................................................................................................ 34

IV.   A federal district court will reverse the decision to process Pulseline's application rather than SMG's application. ................................................................................................ 34

CONCLUSION ................................................................................................................ 36

LIST OF EXHIBITS ........................................................................................................ 38

**Admin Rcd 000055**

# TABLE OF AUTHORITIES

**CASES**

*Am. Wild Horse Pres. Campaign v. Perdue*,
  873 F.3d 914 (D.C. Cir. 2017) ................................................................................... 24

*Eco Tour Adventures Inc. v. Zinke*,
  249 F. Supp.3d 360 (D.D.C. 2017) ............................................................................. 35

*Exportal LTDA v. United States*,
  902 F.2d 45 (D.C. Cir. 1990) ..................................................................................... 36

*Latecoere Int'l, Inc. v. U.S. Dep't of Navy*,
  19 F.3d 1342 (11th Cir. 1994) .................................................................................... 24

*Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ............................................................................................... 24, 35

*Nat'l Env't Dev. Assoc's Clean Air Project v. E.P.A.*,
  752 F.3d 999, 1009 (D.C. Cir. 2014) .......................................................................... 24

*Natural Res. Def. Council v. U.S. Forest Serv.*,
  421 F.3d 797 (9th Cir. 2005) ..................................................................................... 35

*Olenhouse v. Commodity Credit Corp.*,
  42 F.3d 1560 (10th Cir. 1994) .................................................................................... 35

*Policy & Research, LLC v. U.S. Dep't of Health & Hum. Servs.*,
  313 F. Supp. 3d 62 (D.D.C. 2018) .............................................................................. 24

*Sameena Inc. v. U.S.A.F.*,
  147 F.3d 1148 (9th Cir. 1998) .................................................................................... 24

*Triumvirate, LLC v. Bernhardt*,
  367 F. Supp. 3d 1011 (D. Ak. 2019) ...................................................................... 24, 34

**STATUTES**

5 U.S.C. § 706(2)(A) ..................................................................................................... 23

16 U.S.C. § 3197 ........................................................................................................... 33

Ak. Stat. § 23.30.045 ............................................................................................... 15, 34

Ak. Stat. § 23.30.085 ..................................................................................................... 15

**Admin Rcd 000056**

## RULES AND REGULATIONS

11 Ak. Admin. Code § 96.018 ................................................................. 15

36 C.F.R. § 214.13 ................................................................. 5, 6, 36

36 C.F.R. § 214.16 ................................................................. 6

36 C.F.R. § 214.2 ................................................................. 19

36 C.F.R. § 214.7(a)(1) ................................................................. 19

36 C.F.R. § 214.8 ................................................................. 5, 6

36 C.F.R. § 214.9(a) ................................................................. 6

36 C.F.R. § 251.54 ................................................................. passim

## OTHER AUTHORITIES

FSM 2702 ................................................................. 2, 20, 33

FSM 2703.1 ................................................................. 21

FSM 2703.2 ................................................................. 21

FSH 2709.11 ................................................................. 20, 21, 33

FSH 2709.14 ................................................................. passim

FSM 2716.82 ................................................................. 32

**Admin Rcd 000057**

## INTRODUCTION & SUMMARY

Silverton Mountain Guides LLC ("SMG") respectfully appeals the Cordova District Ranger's March 1, 2021 decision in the Cordova Ranger District Guided Helicopter Skiing Prospectus ("Prospectus") ranking the application of Pulseline Adventure, LLC ("Pulseline") second among all applicants, selecting Pulseline's application for further processing, and declining to select SMG's application for further processing. *See* Exhibit 4. Under the Prospectus, a panel (the "Evaluation Panel") was tasked with selecting the "best qualified" applicants for a Forest Service heli-ski special use permit. The Evaluation Panel evaluated permit applications using selection criteria ("Selection Criteria"), scored each application using a point system, and sent its scores and recommendations to the District Ranger.

Aaron Brill, owner and operator of SMG, has provided approximately 20,000 guided heli-skiing service days over sixteen years under Forest Service special use permits, Bureau of Land Management ("BLM") special recreation permits, and Alaska permits. SMG's heli-ski operations have a perfect safety record.

Pulseline, on the other hand, has never held a heli-skiing permit, has no record of actually running a permitted heli-ski operation, did not exist for two of the four years after it was formed, was not qualified to do business in Alaska until after the Prospectus application deadline had passed, and its principal owner has a criminal record.

Yet the Evaluation Panel awarded Pulseline more points than SMG, ranked Pulseline second among applicants, and recommended that the District Ranger reject SMG's application. The Evaluation Panel's conclusions cannot be squared with the Selection Criteria. The Evaluation Panel failed to screen out the grossly unqualified Pulseline, an applicant that cannot, based on the facts identified in this appeal, demonstrate that it is technically capable of holding a heli-skiing special use permit as required by 36 C.F.R. § 251.54(d)(3). Worse, SMG is easily a

1

**Admin Rcd 000058**

"best qualified" applicant that possesses the requisite technical and financial capability when compared to Pulseline, but the Evaluation Panel inappropriately scored SMG's application under the Selection Criteria, thereby depriving the Chugach National Forest of a highly qualified applicant to provide guided heli-skiing to the public.

Pulseline is not qualified to hold a Forest Service heli-ski special use permit because it cannot show that it is a "best qualified" applicant as required by the Prospectus, or that it is technically capable of holding the authorization as required by the applicable regulations. *See* 36 C.F.R. § 251.54(d)(3) (applicant for special use authorization must demonstrate that it has "the technical and financial capability" to hold the permit and "is otherwise qualified"). Regulations and policies codified in the Forest Service Manual and Handbooks require the agency to consider public health and safety in considering applications for special use permits. *See, e.g.,* FSH 2709.14_50, at 3; FSM 2702. Pulseline has no experience as a permitted heli-ski operator. Pulseline has never held any Forest Service special use permit or BLM special recreation permit, much less one for heli-skiing. According to Pulseline's website, the majority of its business is organizing guided yoga, surfing, and fishing trips.[1] Until days before the deadline to submit applications under the Prospectus, Pulseline Adventure, LLC (which was organized under Idaho state law) was in "administratively dissolved" status as ordered by the Idaho Secretary of State, did not hold an Alaska business license, and did not maintain Alaska workers' compensation insurance. As of the date of this appeal, Pulseline does not maintain Alaska workers' compensation insurance. Pulseline's sole owner and manager has a history of criminal arrests and convictions that demonstrate a tendency to resort to violence in high-pressure situations.

---

[1] *See* https://pulselineadventure.com/locations/; https://pulselineadventure.com/surf-and-yoga-retreat/ (last accessed Apr. 7, 2021).

2

**Admin Rcd 000059**

Most critically, Pulseline has no established safety record in actually operating a permitted heli-skiing business. Pulseline's heli-ski experience is as a contract broker, akin to a travel agent, whereby Pulseline itself does not actually operate a heli-skiing business, but connects potential guests with other permitted heli-ski operators. Because Pulseline has never held a heli-skiing permit and has no experience actually operating, it has never itself followed a permit operating plan, never shown that it can independently implement crucial safety procedures, and never demonstrated that it can cooperate with other permitted heli-ski operators to fly and ski in the same terrain. Pulseline has never demonstrated day-to-day compliance with a Forest Service special use permit. It is not reasonable to assume that Pulseline can comply with an operating plan or a permit that it has never held given its proven failure to maintain basic business licenses and authorizations. The Evaluation Panel's conclusions should have reflected Pulseline's utter lack of operating experience.

Since Aaron Brill, SMG's owner and operator, began heli-ski operations in 2005, Mr. Brill has held ten permits allowing for heli-skiing issued by federal, state, and local land managers, and has demonstrated excellent working relationships with Forest Service and BLM permit managers in Alaska. In its 13-year history, SMG (an Alaska-owned company) has guided thousands of skiers on hundreds of trips and has not suffered any avalanche or helicopter accidents and has not incurred any fatalities or substantial injuries. No other Alaska heli-ski operator can match SMG's safety record over that length of time. SMG's safety record is due in part to its policy, unique among Alaska heli-ski operators, of placing two guides (rather than the usual one) with each group of four guests. This policy allows at least one guide to maintain constant visual or verbal contact with each guest, and allows two guides (rather than one) to

3

**Admin Rcd 000060**

analyze snow conditions, avalanche risk, and other safety considerations, allowing for a much safer and better guest experience.

SMG's application demonstrated that it is far more qualified than Pulseline under the selection criteria identified in the Prospectus. SMG has actually held and complied with Forest Service and BLM heli-ski permits, and has operated permitted guided heli-skiing operations for over a decade with a perfect safety record. SMG's application showed, over and over, that SMG implements and follows rigorous safety protocols, that SMG works cooperatively with other permitted operators in the same terrain, and that SMG adheres to permit operating plans and permit terms and conditions without exception.

SMG has an excellent working relationship with the Cordova Ranger District and in no way faults the District Ranger for relying upon the Evaluation Panel's recommendation to process Pulseline's application rather than SMG's. Rather, SMG asserts that, under the Evaluation Panel's objective criteria, SMG is more qualified than Pulseline and should have received more points and a higher ranking than Pulseline. SMG looks forward to continuing its working relationship with the Cordova Ranger District.

This appeal demonstrates that, compared to Pulseline, SMG is the "best qualified" applicant for a special use permit. Exhibit 2 at 2 (the Prospectus's "goal is to select" the "best qualified" applicant(s)). (SMG does not challenge the ranking of Points North Heli-Adventures, Inc. and Valdez Heli-Ski Guides, LLC because each, unlike Pulseline, is qualified to hold a heli-ski permit.) The Forest Supervisor has the authority and discretion to ensure the "best qualified" proponents receive further consideration, and to reject Pulseline's application from further processing if the Forest Supervisor determines Pulseline is not qualified to hold a heli-ski permit. 36 C.F.R. § 251.54(d)(3), (e)(5)(iii). The Forest Supervisor should reverse the Cordova District

4

**Admin Rcd 000061**

Ranger's decision to process Pulseline's application rather than SMG's because that decision does not meet the agency's "objectives" of the special use permit program, which include "[e]ncourag[ing] *skilled and experienced* individuals and entities to conduct" guiding activities in a manner that "ensures that national forest visitors receive high-quality services." FSH 2709.14_50, at 3 (emphasis added). SMG respectfully requests the Forest Supervisor to reverse the decision to process Pulseline's permit application and direct the Cordova District Ranger to advance SMG's application for further processing within the top three ranked applicants.

Pursuant to 36 C.F.R. § 214.13(c)(1) and (d), the issuance of special use permits pursuant to the Prospectus is automatically stayed "until a final administrative decision is issued in the appeal."

## STATEMENT REGARDING COMPLIANCE WITH 36 C.F.R. § 214.8

This appeal complies with 36 C.F.R. § 214.8(a)(1) because the appellant's name, mailing address, daytime telephone number, and email address appear on the cover page of this appeal. Please direct any contact with the appellant to appellant's counsel, identified on the cover page of this appeal. The signature of appellant's counsel and the date of signature appear on the last page of this appeal, as required by 36 C.F.R. § 214.8(a)(10).

The name of the decision being appealed, including the name and title of the responsible official and the date of the decision, appear on the cover page and the first page of this appeal, as required by 36 C.F.R. § 214.8(a)(2). The type of written authorization that is the subject of this appeal appears on the cover page and the first page of this appeal, as required by 36 C.F.R. § 214.8(a)(3).

SMG is adversely affected by the decision on appeal because the Evaluation Panel ranked the unqualified Pulseline's application higher than SMG's application and failed to properly

**Admin Rcd 000062**

score SMG's application, thereby eliminating SMG from further consideration for a special use permit to provide guided heli-skiing in the Cordova Ranger District. This satisfies 36 C.F.R. § 214.8(a)(4).

This appeal includes a statement of the relevant facts underlying the decision being appealed, a discussion of issues raised by the decision being appealed, and documents and other information upon which SMG relies, as required by 36 C.F.R. § 214.8(a)(5), (6), and (9).

As required by 36 C.F.R. § 214.8(a)(7), SMG states that SMG and the responsible official have not attempted to resolve the issues under appeal.

This appeal requests the Forest Supervisor to reverse the Cordova District Ranger's decision (at the recommendation of the Evaluation Panel) to select Pulseline's permit application for further processing and direct the District Ranger to select SMG's application for further processing within the top three ranked operators, for the reasons explained in this appeal. This satisfies 36 C.F.R. § 214.8(a)(8).

SMG requests an oral presentation under 36 C.F.R. § 214.16 as provided in 36 C.F.R. § 214.8(b)(1).

In accord with 36 C.F.R. § 214.8(b)(2), SMG states that issuance of any special use permits pursuant to the Prospectus is "automatically stayed" pursuant to 36 C.F.R. § 214.13(c)(1) and (d) "until a final administrative decision is issued in the appeal."

This appeal is filed with the Forest Supervisor on or before April 15, 2021 and is therefore timely within the meaning of 36 C.F.R. § 214.9(a).

**Admin Rcd 000063**

## FACTUAL BACKGROUND

### I.      The Prospectus

In November 2020, the Cordova Ranger District issued the Guided Helicopter Skiing Prospectus.  Exhibit 2.  The Prospectus invited proposals from interested parties to provide guided helicopter skiing services on the Cordova Ranger District.  The Prospectus's stated "goal is to select businesses *best qualified* to provide visitors with a safe, satisfying recreation experience that promotes enjoyment, understanding, and appreciation of the Chugach National Forest while minimizing impacts to resources and other forest users."  Exhibit 2 at 2 (emphasis added).

The Prospectus stated that "the Forest Service expects to authorize one or more service providers to conduct guided helicopter skiing services in the project area."  Exhibit 2 at 5.  The Prospectus continued:

> Proponents should not expect exclusive use of the project area.  As such, this prospectus is focused on identifying service providers who demonstrate a high standard of professionalism and cooperative spirit.  Proponents must commit to work together with other service providers to share the public space, and set a good example regarding ethical behavior, compliance with regulations, low impact practices, and caring for the land.

Exhibit 2 at 7.

The Prospectus directed applicants to submit a complete application, including a proposed operating plan detailing the applicant's operations, employee training, transportation, environmental protection, first aid, emergency rescue, avalanche, incident reporting, and communications protocols; a notarized financial statement; and three business reference letters.  "Incomplete proposal packages [would] not be considered."  Exhibit 2 at Attachments 1.1-1.5.

The Prospectus established a process whereby a review panel (the Evaluation Panel) would score each application using the Selection Criteria, which focused on the applicant's

Admin Rcd 000064

business model, client experience, workplace practices, operations, resource protection, and local community benefits.  Exhibit 2 at 10.  The Selection Criteria placed special emphasis on (1) prior experience as a permitted helicopter skiing operator and (2) safety.  The Prospectus stated that the Evaluation Panel would rank applications according to the assigned score.  Exhibit 2 at 10.

The Prospectus provided that "[r]esponses to this prospectus will be used to determine the *best qualified* businesses to be awarded a special use permit for guided helicopter skiing." Exhibit 2 at 2 (emphasis added).  The Prospectus required the Evaluation Panel to "make a recommendation to the Authorized Officer indicating the applicant(s) that offer the best service to the public, partnership with the Forest Service, protection of resources, and local community benefits."  Exhibit 2 at 10.

The Prospectus noted that the Forest Service would conduct an environmental analysis, as required by the National Environmental Policy Act, analyzing the effects of issuing one or more heli-ski special use permits in the Cordova Ranger District.  Exhibit 2 at 10.

## II.    Silverton Mountain Guides

On January 7, 2021, SMG submitted its application in response to the Prospectus. Exhibit 3.  SMG's application described its established history operating as a permitted heli-ski guiding company and its safety record.  Exhibit 3 at 12-13.

### A.    SMG has over 13 years of operational experience.

Since SMG was established in 2008, SMG has guided thousands of guests on hundreds of trips in Alaska as a permitted heli-ski operator.  Aaron Brill, SMG's owner and operator, has operated under ten authorizations issued by the Forest Service, BLM, Alaska Department of Natural Resources, and the Municipality of Anchorage.  Exhibit 1 at ¶ 5.  SMG currently holds

six active heli-ski permits issued by the Forest Service, BLM, and the Municipality of

Anchorage:

- Temporary Special Use Permit COR417 (within the Prospectus area) (issued by the Chugach National Forest, Cordova Ranger District)

- Special Use Permit SEW678 (Chugach National Forest)

- Special Use Permit PET512 (Tongass National Forest)

- Special Recreation Permit M-094293 (BLM Alaska State Office, Anchorage Field Office)

- Special Recreation Permit M-092683 (BLM Alaska State Office, Glennallen Field Office)

- Municipality of Anchorage Land Use Permit 2016-21

Exhibit 3 at 13.

SMG has operated in the Prospectus area under a temporary special use permit issued by

the Cordova Ranger District for the 2019-20 and 2020-21 winter seasons. SMG has operated in

the Valdez area on state land since 2008. Exhibit 3 at 13.

Over its 13 years of operations, SMG has a history of close cooperation with fellow heli-

skiing permit holders to avoid conflicts, promote safety, and ensure the best possible guest

experience. Exhibit 1 at ¶¶ 6, 14. This cooperation includes regularly communicating with

Forest Service co-permittees to coordinate plans and exchange information and observations

regarding weather, terrain, and snow stability. Exhibit 1 at ¶ 14; Exhibit 3 at 26.

B. <u>SMG's safety record and protocols are the strongest among Alaska heli-ski guiding companies.</u>

SMG is owned by Aaron Brill. Exhibit 1 at ¶ 2; Exhibit 6. Mr. Brill is a respected ski

professional with approximately 20 years of technical and business experience in the ski

industry. Exhibit 1 at ¶ 18. During the 20 years that Mr. Brill has owned and operated guided

heli-skiing services around the country, Mr. Brill's heli-skiing operations, including SMG, have

9

Admin Rcd 000066

provided approximately 20,000 guided heli-skiing service days.  Exhibit 1 at ¶ 19.  During that time, Mr. Brill's operations have had no avalanche or helicopter accidents, and no fatalities or substantial injuries.  Exhibit 1 at ¶ 19.

Since SMG began operating in 2008, SMG has had no guest or guide fatalities, no substantial injuries, and no avalanche or helicopter accidents during a guest trip.  Exhibit 1 at ¶ 7; Exhibit 3 at 13.  No Alaska heli-ski operator can match that safety record over that extended time period.  Exhibit 1 at ¶ 7.  SMG's safety record is due to its safety policies, superior guide education requirements, and 13 years of permitted experienced in the field.  Exhibit 3 at 14-15. SMG is the only Alaska heli-ski operator that conducts annual testing and examinations of its guides.  Exhibit 1 at ¶ 9.  Generally, Alaska heli-ski operators conduct annual guide training, but SMG is unique in requiring annual testing and examinations in addition to annual training. Exhibit 1 at ¶ 9.

SMG is the only Alaska heli-ski guiding company that provides two guides for each group of four guests.  Exhibit 1 at ¶ 8; Exhibit 3 at 12, 22.  The industry standard in Alaska is one guide for each group of four guests.  Exhibit 1 at ¶ 8.  SMG's policy provides a safer and better customer experience by allowing for more one-on-one instruction, a far quicker medical and rescue response time, and two guides (rather than the usual one) to assess avalanche safety, aviation safety, mountain weather, and other hazards.  Exhibit 1 at ¶ 8; Exhibit 3 at 12.  In the event of an avalanche, whether an individual caught and buried by the avalanche survives or not generally depends on how fast the victim's companions can dig him out.  In an avalanche rescue, each minute matters, and having two guides rather than one doubles the guides' capacity to dig out a victim buried in an avalanche, cutting the response time in half and increasing the chances of survival.  Exhibit 1 at ¶ 8.

Admin Rcd 000067

SMG generally has the longest operating season among Alaska heli-ski operators: SMG typically provides services beginning in October, depending on conditions. Exhibit 1 at ¶ 10; Exhibit 3 at 24. This allows SMG's guides to accumulate more days in the field per year than any other Alaska heli-ski operator. Consequently, many of SMG's guides have among the most days logged heli-skiing in Alaska. Exhibit 1 at ¶ 10; Exhibit 3 at 24.

Nearly all SMG guides work at ski resorts as snow safety technicians while not heli-ski guiding. Exhibit 1 at ¶ 11. As snow safety technicians, these guides gain substantial first-hand experience in avalanche forecasting and mitigation, repeatedly observing first-hand when, where, and how avalanches break. This experience allows SMG's guides to overcome the biggest obstacle to gaining avalanche experience: heli-ski guides are trained to avoid avalanches at any cost; as a result, however, heli-ski guiding often provides very little first-hand avalanche experience. SMG's guides who also serve as snow safety technicians at ski resorts have in-depth first-hand knowledge because they work to trigger avalanches to mitigate hazards day after day. Exhibit 1 at ¶ 11.

SMG's helicopters used during heli-ski trips differ from those used by the rest of the industry. Exhibit 1 at ¶ 12; Exhibit 3 at 20. SMG leases new Airbus AS350B3E helicopters for a maximum of five years, and then SMG replaces those helicopters with new ones. Exhibit 1 at ¶ 12. SMG is one of the only Alaska heli-ski operator that uses helicopters specifically outfitted for heli-skiing. Exhibit 1 at ¶ 12; Exhibit 3 at 20. Other Alaska heli-ski operators use helicopters outfitted for general use, including firefighting, resulting in increased weight, decreased maneuverability, and decreased safety margins. Exhibit 1 at ¶ 13. SMG's helicopters are more powerful and lighter than the industry standard helicopter, resulting in increased safety margins. Exhibit 1 at ¶ 13; Exhibit 3 at 20.

Admin Rcd 000068

C.    <u>SMG provides unique benefits to the local Alaska community.</u>

Mr. Brill, SMG's owner, and his wife reside in Girdwood, Alaska, and have lived in Alaska since 2012.  Exhibit 1 at ¶ 3.  To Mr. Brill's knowledge, SMG is the only Alaska-owned heli-ski operator participating in the Prospectus.  Exhibit 1 at ¶ 15.  SMG is also the only Alaska heli-ski operator that provides services generally beginning in October, depending on conditions. Exhibit 1 at ¶ 10; Exhibit 3 at 24.  Nearly every other Alaska heli-ski operator based in Valdez or Cordova operate exclusively in March and April.  Exhibit 1 at ¶ 10.  In Mr. Brill's and SMG's experience, local residents and Alaskans are more likely than guests from the lower 48 or abroad to hire SMG during early season months.  Exhibit 1 at ¶ 15; Exhibit 3 at 23-24.

SMG provides deep discounts to local residents and children, allowing locals to access nearby public lands that are otherwise inaccessible to much of the local population.  Exhibit 1 at ¶ 15; Exhibit 3 at 23-24.  SMG is the only heli-ski operator that provides Alaskans with an opportunity to heli-ski within the Cordova Ranger District outside of late February, March, or April.  Exhibit 1 at ¶ 10.  None of the other applicants operate in December, January, or most of February.  Exhibit 1 at ¶ 10.

D.    <u>SMG and its owner, Aaron Brill, have a proven history of complying with federal and state corporate and employment laws.</u>

In 2009, Mr. Brill organized SMG in Colorado and registered SMG to do business in Alaska with the Alaska Department of Commerce, Community, and Economic Development. Exhibits 6, 7.  SMG converted to an Alaska limited liability company in 2016.  Exhibit 6.  Since SMG was organized in 2009, SMG has maintained its status as a limited liability company in good standing and in compliance with Colorado's and Alaska's corporate laws.

SMG is owned by SMG One LLC, which in turn is owned by Mr. Brill.  Exhibit 1 at ¶ 2. Mr. Brill has more than 20 years of experience in the heli-ski and ski resort industry.  Exhibit 1

at ¶¶ 18, 19; Exhibit 3 at 12-13.  In addition to SMG, Mr. Brill owns and operates Silverton Mountain Ski Area in Silverton, Colorado.  Exhibit 3 at 12.  Silverton Mountain, which Mr. Brill conceived and developed from the ground up in 2002, is a unique ski area that provides guests with a backcountry-like steep skiing experience by using a single chairlift and helicopters to access over 25,000 acres of undeveloped skiable terrain.  Exhibit 1 at ¶ 18.  Silverton Mountain operates the largest heli-ski operation in the United States.  Exhibit 3 at 12.  All of Silverton Mountain's terrain is potential avalanche terrain.  Exhibit 1 at ¶ 18.  As a result, Silverton Mountain has operated a state-of-the-art avalanche mitigation and safety program since before it opened in 2002.  Exhibit 1 at ¶ 18; Exhibit 3 at 12.  Silverton Mountain operates under a 40-year BLM commercial occupancy lease and special recreation permit.  Exhibit 1 at ¶ 5.

SMG maintains workers' compensation insurance as required by Alaska law.  Exhibit 1 at ¶ 16.  SMG has consistently maintained liability insurance in compliance with its permits. Exhibit 1 at ¶ 16.

Mr. Brill has never been arrested for, charged with, or convicted of a violation of a federal or state criminal law.  Exhibit 1 at ¶ 17.  Neither Mr. Brill nor SMG has been charged with or determined liable for a violation of any federal or state tax law.  Exhibit 1 at ¶ 17.  As a holder of a U.S. Bureau of Alcohol, Tobacco and Firearms Federal Explosive License, Mr. Brill is regularly subjected to federal background checks.  Exhibit 1 at ¶ 17.

E.  <u>Reference letters submitted by three BLM officials and a heli-ski competitor company demonstrate SMG's strong working relationships with regulatory agencies and fellow permit holders.</u>

SMG submitted business reference letters from (1) the BLM Glennallen Field Office in Glennallen, Alaska (where SMG has held a heli-skiing special recreation permit since 2011); (2) the BLM Anchorage Field Office (where SMG has been permitted since 2017); and (3) the BLM

Gunnison Field Office in Gunnison, Colorado (where Mr. Brill has been permitted since 2000). Exhibit 3 at 6, 38, 39.  In those reference letters, BLM officials wrote that SMG and Aaron Brill have "shown consistent, exemplary performance and excellent permit compliance" (Exhibit 3 at 39); "are well-established in the skiing and heli-ski industry with an excellent safety and operating history" (Exhibit 3 at 6); have "shown great performance history and permit compliance" (Exhibit 3 at 38); and have "always been very responsive in [their] communications [and] submits all required documents in a timely manner" (Exhibit 3 at 38).

SMG submitted a business reference letter from Valdez Heli-Ski Guides ("Valdez Heli-Ski"), a competitor heli-ski guiding company.  Valdez Heli-Ski stated that it has "work[ed] with SMG over the last year" as a fellow permit holder in the Cordova Ranger District and is "impressed with [SMG's] cooperative spirit and collaborative efforts to ensure success for operations utilizing the CRD temporary permit in 2020."  Exhibit 3 at 8.

SMG attached an October 19, 2020 Guide Performance Evaluation from the Tongass National Forest, Petersburg Ranger District.  Exhibit 3 at 40-42.  The Evaluation stated: "Aaron Brill is professional and courteous when interacting with the special uses permit administrator. Questions regarding proposed operating plans and actual use reports are answered promptly." Exhibit 3 at 41.   The Evaluation gave SMG the highest possible rating ("Acceptable") on each applicable item, as well as on SMG's overall annual performance.  Exhibit 3 at 40-42.

## III.   Pulseline Adventure

### A.   Pulseline has a history of failing to comply with state law.

Pulseline was incorporated in Idaho in February 2017.  Exhibit 8.  For nearly half of its existence, though, Pulseline has been in "administratively dissolved" status, as determined by the Idaho Secretary of State.  Exhibit 9.  Pulseline applied to the Idaho Secretary of State for

**Admin Rcd 000071**

reinstatement of good standing on January 8, 2021 (only eleven days before the deadline to submit applications in response to the Prospectus).  Exhibit 9.

According to the Alaska Department of Labor and Workforce Development, Pulseline does not currently maintain workers' compensation insurance.  Exhibit 10.  Alaska law requires each employer having one or more employees in Alaska to obtain workers' compensation insurance, with some exceptions not applicable to Pulseline.[2]

Pulseline was not licensed to do business in Alaska when it submitted its application in response to the Prospectus.  Pulseline first obtained an Alaska business license on January 25, 2021 (after the application deadline).  Exhibit 11.

Pulseline has not registered any commercial day use with the Alaska Department of Natural Resources (DNR).  Exhibit 12.  Alaska law requires anyone using state land for commercial recreation purposes to register all commercial day uses with DNR.  11 Ak. Admin. Code § 96.018.  SMG has registered commercial day use with DNR each year since the agency began collecting data in 2014.  Exhibit 12.  Points North Heli-Adventures and Valdez Heli-Ski Guides have also registered their day use.  DNR records indicate Pulseline has never registered its commercial day use.  Exhibit 12.

B.    <u>Pulseline is an adventure travel agency, not a permitted heli-ski operator.</u>

Pulseline is not a permitted helicopter skiing operator.  Pulseline has never held a Forest Service special use permit or BLM special recreation permit.  Exhibit 1 at ¶ 24.

---

[2] *See* Alaska Dep't of Labor and Workforce Development, Workers' Compensation Requirements for Employer, https://labor.alaska.gov/wc/er-profit.html; Ak. Stat. § 23.30.045 (requiring employers to secure workers' compensation insurance); Ak. Stat. § 23.30.085 (requiring employers to file evidence of compliance with insurance requirement).

Instead, Pulseline acts as a contract broker, akin to a travel agency. Exhibit 1 at ¶ 24. A potential client seeking heli-skiing services may book an Alaska heli-ski trip through Pulseline's website. Pulseline then places the guest with a heli-ski operator that holds a permit or registration to use Alaska public lands for commercial heli-skiing. Pulseline may provide guides on trips conducted under another operator's permit or registration. But the permitted or registered operator, not Pulseline, maintains compliance with the permit terms and relevant regulations, maintains insurance, adheres to the operating plan, interfaces with the permitting agency, and handles day-to-day operations such as cooperating with other permitted operators in the same terrain. At the time it submitted its application, Pulseline had no record or experience in operating a permitted heli-ski company.

Because Pulseline has never held a Forest Service special use permit or a BLM special recreation permit, Pulseline has no proven record of working with those agencies, no experience cooperating with fellow permit holders who operate in the same terrain, no experience managing the near-daily duties of ensuring compliance with permit terms and conditions, and no experience adhering to a heli-skiing operating plan.

According to its website, Pulseline's Alaska heli-ski contract broker service is only a small part of its business. In addition to coordinating Alaska heli-ski trips, Pulseline brokers: surfing trips in Costa Rica, El Salvador, Indonesia, Nicaragua, and the United States; fishing trips in Alaska and Mexico; and heli-skiing trips in Antarctica, Argentina, Canada, Chile, Japan, and Kyrgyzstan.[3] Pulseline also provides foreign yoga and surf retreats and mountain biking guide services.[4]

---

[3] https://pulselineadventure.com/locations/; https://pulselineadventure.com/staff/
[4] https://pulselineadventure.com/surf-and-yoga-retreat/

Admin Rcd 000073

Pulseline's founder died after triggering an avalanche while guiding guests during one of the first Alaska heli-ski trips that Pulseline participated in. At the time, Pulseline's founder was acting as a guide under a permit held by another company, Southeast Alaska Backcountry Adventures.[5]

C.   Pulseline's owner has a record of criminal arrests and convictions and failure to pay corporate taxes.

Gabriel Monroe of Pocatello, Idaho owns 100% of Pulseline. Exhibit 13. Mr. Monroe is also Pulseline's registered agent and manager. Exhibit 13. In addition to Pulseline, Mr. Monroe is the owner of Cornerstone Concrete LLC, located in Pocatello, Idaho. Exhibit 14.

Mr. Monroe has been convicted of two criminal misdemeanor charges of disturbing the peace. Exhibits 15, 16. In 2007, Mr. Monroe pled guilty to and was convicted of disturbing the peace after (according to the police incident report) Mr. Monroe "lost his temper" and "hit and battered" one of his employees at Cornerstone Concrete while on a job, leaving the employee bloodied. Exhibit 15 at 5-6. Mr. Monroe was acting as the job site foreman at the time. In 2008, Mr. Monroe was arrested and charged with battery after twice "pushing" a police officer during a traffic altercation. Exhibit 16 at 15. Mr. Monroe pled guilty to an amended charge of disturbing the peace. Exhibit 16 at 6.

In addition to these criminal convictions, Mr. Monroe was charged with criminal misdemeanors in three additional cases in 2006, 2017, and 2019, including two for "battery-domestic violence." Mr. Monroe was not convicted in any of these three cases. Exhibit 17.

---

[5] Powder Magazine, *AK Heli Guide Dies From Injuries*, https://www.powder.com/stories/ak-heli-guide-critical-condition-avalanche/ (Mar. 18, 2014). According to this article, Pulseline's founder was not wearing an avalanche airbag or helmet at the time of the avalanche.

Admin Rcd 000074

Between 1996 and 2019, Mr. Monroe was charged with eight additional criminal "infractions" in Bannock County, Idaho County, and Ada County Magistrate Courts in Idaho. Exhibit 17.

In 2016, the Internal Revenue Service filed a federal tax lien in the amount of $53,615 against Mr. Monroe in his individual capacity and Cornerstone Concrete, LLC. Exhibit 18. The lien was released in September 2020, approximately four months before Pulseline submitted its application in response to the Prospectus. Exhibit 18.

## IV.    **The Evaluation Panel's Decision**

By correspondence dated March 1, 2021, the Cordova District Ranger notified SMG that the Forest Service had completed reviewing applications submitted in response to the Prospectus. Exhibit 4. The District Ranger stated:

> Based on the [Evaluation Panel's] evaluation and my review of applications, I have decided to select the following applicants for further processing (listed in order of rank and score; maximum score = 60 points):
>
> 1. Points North Heli-Adventures, Inc. (score: 54.50)
> 2. Pulseline Adventures (score: 52.50)
> 3. Valdez Heli-Ski Guides, LLC (score: 51.00)
>
> *Your rank and score:*
>
> *4. Silverton Mountain Guides (score: 48.75)*

Exhibit 4 at 1 (emphasis added). The correspondence reproduced the Evaluation Panel's "synopsis" of SMG's application: "It was a good proposal but not nearly as thorough as others. Appears they would be a good permit holder and a good partner on the land, however more detail was needed. Appreciated some of the approaches they use that are consistent with ski area management." Exhibit 4 at 1.

The Cordova Ranger District did not provide SMG the score report completed by the Evaluation Panel for SMG's application, or the score report the Evaluation Panel completed for

18

**Admin Rcd 000075**

Case 3:22-cv-00048-SLG    Document 23-3    Filed 07/18/22    Page 75 of 107

Pulseline. On March 11, 2021, SMG submitted a Freedom of Information Act request for information related to the selection decision, including a copy of Pulseline's application and the Evaluation Panel's score report for SMG's and Pulseline's applications. Exhibit 5. As of the date of this appeal, the Forest Service has not provided the requested documents.

## LEGAL STANDARD

I.      **The Appeal Deciding Officer has the authority to direct the Cordova District Ranger to select SMG's permit application for further processing.**

As the Appeal Deciding Officer pursuant to 36 C.F.R. §§ 214.2 and 214.7(a)(1), the Forest Supervisor has the authority to direct the Cordova District Ranger to advance SMG's application for further processing. The Forest Supervisor does not need to find that the Evaluation Panel or District Ranger committed legal error to reverse the decision, or that the decision is arbitrary and capricious. The governing regulations empower and require the Forest Supervisor to ensure that the applicants selected for the second phase of the Prospectus process are technically capable and qualified to hold a heli-skiing special use permit. *See* 36 C.F.R. § 251.54(d)(3), (e)(5)(ii) (applicant must demonstrate "technical and financial capability" and the authorized officer "shall reject any proposal" for a special use authorization if the officer determines the "proposed use would not be in the public interest" or the "proponent is not qualified").

SMG's application demonstrated that it is a "best qualified" applicant with the proven technical and financial capability to hold a special use permit for guided heli-skiing in the Cordova Ranger District. Exhibit 2 at 2. Although the Forest Service has not provided Pulseline's application or the Evaluation Panel's score reports, the readily available facts show that Pulseline is not a best qualified applicant and does not possess the requisite technical capability to hold a heli-ski permit. The Forest Supervisor may resolve this appeal in accord

with the agency's special use permit regulations by directing the Cordova District Ranger to advance SMG's application for further processing and by directing that Pulseline's application be eliminated from consideration.

## II. Forest Service regulations and policy require the agency to protect the public health and safety in issuing special use permits and to reject any special use application by a proponent who is "not qualified."

The governing Forest Service special use permit regulations provide that the "authorized officer *shall reject* any proposal" for a special use permit if "the officer determines" that: "the proposed use would not be in the public interest"; "the proponent is not qualified"; or the proponent does not demonstrate "technical capability to undertake the use and to fully comply with the terms and conditions of the authorization." 36 C.F.R. § 251.54(d)(3), (e)(5)(ii)-(iv) (emphasis added). The Forest Service Special Uses Handbook underscores that for a proponent to receive a special use authorization, "[t]he proponent *must* be qualified." FSH 2709.11, Chapter 10, at 19 (emphasis added).[6]

The Forest Service Manual provides that one of the "objectives of the special-uses program" is to "[a]uthorize and manage special uses of National Forest System lands in a manner which protects natural resources and *public health and safety*." FSM 2702 – Special Uses Management (emphasis added).[7] The Special Uses Handbook provides that the one of the "objectives of the special uses application and authorization process" is to "[e]nsure that authorizations to use and occupy National Forest System lands are in the public interest." FSH 2709.11, Chapter 10, at 4. The Forest Service's objectives in issuing special use permits for

---

[6] Forest Service Handbooks are available at
https://www.fs.fed.us/im/directives/dughtml/fsh_1.html
[7] The Forest Service Manual is available at
https://www.fs.fed.us/im/directives/dughtml/fsm.html

**Admin Rcd 000077**

outfitter and guiding services include: (1) "Provide for outfitting and guiding services that address concerns of *public health and safety* and that foster successful small businesses consistent with the applicable land management plan;" and (2) "Encourage *skilled and experienced individuals and entities* to conduct outfitting and guiding activities in a manner that protects environmental resources and ensures that national forest visitors receive high-quality services."  FSH 2709.14, at 3 (emphasis added).

The Special Uses Handbook requires the Forest Service to reject any proposal that does not meet each of nine criteria, including: the proposed use (1) "is consistent with the laws, regulations, orders, and policies establishing or governing National Forest System lands (including policy in FSM 2703.1 and 2703.2)"; and (2) "will not create a serious and substantial risk to public health or safety."  FSH 2709.11, Chapter 10, at 15.  "The Authorized Officer *shall* return to proponents those proposals that fail to meet" either of these criteria.  FSH 2709.11, Chapter 10, at 20.

The special use permit regulations require the agency to consider safety in screening applicants for a special use permit.  "Each special use authorization must contain … terms and conditions which will … carry out the purposes of applicable statutes and rules and regulations issued thereunder [and] require compliance with State standards for public health and safety . . . ."  36 C.F.R. § 251.54(a)(1)(i).  "Each special use authorization must contain … such terms and conditions as the authorized officer deems necessary to … [p]rotect other lawful users of the lands adjacent to or occupied by such use" and "[p]rotect lives and property."  36 C.F.R. § 251.54(a)(1)(ii).

**Admin Rcd 000078**

**III.** **The Prospectus established objective selection criteria to be used by the Evaluation Panel to rank applicants.**

In accord with the Forest Service special use permit regulations, the Prospectus stated that the District Ranger must "determine the *best qualified* businesses to be awarded a special use permit for guided helicopter skiing." Exhibit 2 at 2 (emphasis added). The Prospectus provided that it "is focused on identifying service providers who demonstrate a *high standard of professionalism and cooperative spirit*. Proponents must commit to . . . set a good example regarding *ethical behavior, compliance with regulations*, low impacts practices, and caring for the land." Exhibit 2 at 7 (emphasis added).

The Prospectus identified sixteen criteria (the "Selection Criteria") to be used by the Evaluation Panel "to evaluate and score proposal packages" on a 60-point scale. Exhibit 2 at Attachment 1.3, at p. 1. The Selection Criteria provided an objective standard that the Evaluation Panel, and the Cordova District Ranger, would use to score and rank applications. Some of those Selection Criteria (and the "objectives" served by the criteria) include:

- B-1: Experience performing guided helicopter skiing services. Objective: Has substantial experience that establishes legitimate basis for proposed use.

- B-2: Company safety policy. Objective: Provides a safe work environment and safe client experience.

- W-1: Working relationship with regulatory agencies. Objective: Company maintains a positive working relationship with regulatory agencies.

- W-2: Employee licenses, certifications, and training. Objective: Employees have required licenses, certifications, and training for heli-ski operations.

- W-3: Medical emergency training. Objective: Employees are trained to stabilize a person until emergency responders can take over.

- O-1: Permit compliance. Objective: Company complies with the terms and conditions of permits issued by regulatory agencies like the Forest Service.

- O-2: Performance history. Objective: Records demonstrate sustained good performance and any issues identified are satisfactorily resolved.

22

**Admin Rcd 000079**

- O-3:  Operating in shared use areas.  <u>Objective</u>: Company employees and agents work together with other heli-ski operators to provide a positive experience for their clients and other forest users.

- L-1:  Role in sustaining local communities.  <u>Objective</u>: Contributes to the local economy through generation of jobs and income.

Exhibit 2 at Attachment 1.3, at p. 1-3.  The Selection Criteria above accounted for 39 of the possible 60 points.  Other Selection Criteria addressed financial capability, client feedback system, client education and safety, equal opportunity and accessibility, leave no trace principles, and resource stewardship.  Exhibit 2 at Attachment 1.3, at p. 1-3.  SMG's Prospectus application demonstrates its qualifications under each of these criteria.

**IV.**  **<u>A court would set aside the Forest Service's final decision if the Forest Service does not follow the selection criteria or the special use permit regulations.</u>**

As the Appeal Deciding Officer, the Forest Supervisor has authority to ensure that the "best qualified" applicants are considered for a special use permit.  The Forest Supervisor has the authority (and the duty) to reject any application that would not be in the public interest or if the proponent lacks technical qualifications.  36 C.F.R. § 251.54(d)(3), (e)(5)(ii)-(iv) .  To reverse the District Ranger's decision, the Forest Supervisor need not determine that the District Ranger's decision was unlawful, arbitrary, or capricious.  *Id.*

A federal court will apply a different standard if it reviews the Forest Service's final decision on this appeal under the Administrative Procedure Act (APA).  A federal court will set aside the Forest Service's final decision on SMG's application if the judge determines that the Forest Service's decision is arbitrary, capricious, or not in accord with the agency's regulations.  5 U.S.C. § 706(2)(A).  A court will set aside the decision to process Pulseline's application, rather than SMG's, if the court determines the decision is contrary to the weight of the evidence or contrary to the Prospectus Selection Criteria.  *Motor Vehicles Mfrs. Ass'n v. State Farm Mut.*

*Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). A court will reverse a Forest Service decision if the Forest Service ignored substantial evidence contradicting its decision. *See Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 924 (D.C. Cir. 2017) (reversing a Forest Service decision and noting that "[b]linders may work for horses, but they are no good for administrative agencies").

A federal court will also set aside a Forest Service final decision on SMG's appeal if the Forest Service does not "abide by the regulations it promulgates." *Sameena Inc. v. U.S.A.F.*, 147 F.3d 1148, 1153 (9th Cir. 1998). It is "clear beyond cavil that an agency acts arbitrarily and capriciously if it acts in a manner that is contrary to its own regulations." *Policy & Research, LLC v. U.S. Dep't of Health & Hum. Servs.*, 313 F. Supp. 3d 62, 72 (D.D.C. 2018). "Thus, an agency action may be set aside as arbitrary and capricious" under the APA "if the agency fails to comply with its own regulations." *Nat'l Env't Dev. Assoc's Clean Air Project v. E.P.A.*, 752 F.3d 999 (D.C. Cir. 2014).

Having established objective criteria (the Selection Criteria) by which the Forest Service indicated it would evaluate proposals received in response to the Prospectus, the Forest Service is obligated to apply that criteria. *See Triumvirate, LLC v. Bernhardt*, 367 F. Supp. 3d 1011 (D. Ak. 2019) (vacating decision of BLM Anchorage Field Office to issue heli-skiing special recreation permit because decision violated BLM regulations and Handbook provisions). If the agency does not base its decision upon a rational application of the Selection Criteria, a federal court will reverse that decision. *Latecoere Int'l, Inc. v. U.S. Dep't of Navy*, 19 F.3d 1342, 1359 (11th Cir. 1994). "[O]nce offerors are informed of the criteria against which their proposals will be evaluated, the agency must adhere to those criteria . . . or inform all offerors of any significant changes made in the evaluation scheme." *Id.* (quotation marks omitted) (reversing agency

decision to award a contract to ETC rather than Latecoere because, given that Latecoere should have received higher ratings than ETC under the agency's objective evaluation criteria, "no rational basis exists for the award to ETC instead of Latecoere").

<b><u>ARGUMENT</u></b>

The Forest Supervisor should reverse the decision to select Pulseline's application for further processing and direct the Cordova District Ranger to advance SMG's application for further processing. According to the Forest Service's objective Selection Criteria, SMG is a far more qualified applicant than Pulseline. The Authorized Officer should have rejected Pulseline's application because Pulseline's lack of any experience holding a special use permit or operating a permitted heli-ski business, and the failure by Pulseline's owner to comply with state criminal laws and federal corporate tax laws, demonstrate that Pulseline is "not qualified." 36 C.F.R. § 251.54(e)(5) (authorized officer "shall reject" any application by a proponent who is "not qualified). The Evaluation Panel's decision to process Pulseline's application over SMG's application violates Forest Service regulations that mandate that only technically capable applicants may be considered for a special use authorization. 36 C.F.R. § 251.54(e)(5)(iv). If the Forest Supervisor does not correct these deficiencies by advancing SMG's application for further processing, and rejecting Pulseline's, a federal district court will set aside the decision.

## I.    <u>SMG is the "best qualified" applicant compared to Pulseline.</u>

The Evaluation Panel should have ranked SMG's permit application higher than Pulseline's application because, under the Prospectus's objective Selection Criteria, SMG is the "best qualified" applicant compared to Pulseline. Exhibit 2 at 2.

A.      SMG has extensive experience as a permitted heli-ski operator in Alaska, while Pulseline has no experience.

SMG's experience demonstrates that SMG performs better than Pulseline on Selection Criteria B-1 (experience performing guided helicopter skiing services); W-1 (working relationship with regulatory agencies); O-1 (permit compliance); O-2 (performance history); and O-3 (operating in shared use areas).

**SMG.**  SMG has more operational experience and a longer record of working with regulatory permitting agencies and fellow permittees than Pulseline.  Since 2005, SMG's owner and operator has held ten permits issued by federal, state, and local agencies to provide heli-skiing services.  Exhibit 1 at ¶ 5.  SMG currently holds six permits from federal and local agencies.  Exhibit 3 at 13.  As demonstrated by three reference letters from BLM field offices where SMG currently conducts heli-ski operations pursuant to BLM special recreation permits, SMG has an established history of working with regulating agencies and maintaining compliance with permit terms.  Exhibit 3 at 6, 38, 39.  Each reference letter from a BLM official provided an unqualified endorsement of SMG's qualifications and experience.

**Pulseline**.  Pulseline has never held a Forest Service special use permit or BLM special recreation permit.  Exhibit 1 at ¶ 24.  Pulseline has no experience operating as a permitted heli-ski operator.  Exhibit 1 at ¶ 24.  Pulseline has some experience acting as a broker by connecting potential clients to permitted heli-ski operators, collecting a fee for that service, and providing guides.  The District Ranger should have rejected Pulseline's application because it lacks the technical qualifications to hold a Forest Service heli-ski special use permit.  *See* 36 C.F.R. § 251.54(e)(5)(iv) (The Forest Service "authorized officer *shall reject* any proposal" for a special use permit if the proponent does not demonstrate "technical capability to undertake the use and to fully comply with the terms and conditions of the authorization.").

**Admin Rcd 000083**

Because Pulseline has never held a Forest Service or BLM heli-skiing permit, it has no experience in the day-to-day operations involved in permitted heli-ski operations. Maintaining compliance with permit terms requires near-daily contact with the regulating agency regarding duties ranging from reporting wildlife sightings to maintaining GPS flight tracking. The sample special use permit attached to the Prospectus lists some of those duties, including: developing and submitting an annual operating plan (Exhibit 2, Attachment 2.0 at ¶ II.A); submitting an itinerary for each trip (II.B); notifying the agency in case of a change in control of the company (I.H); complying with environmental, nondiscrimination, and other federal laws (II.I, IV.A); maintaining liability insurance (III.K); paying an annual land use fee and other fees (V.A); documenting actual use and submitting a use report to the Forest Service (V.C); maintaining accounting books and making them available for Forest Service inspection (V.E); complying with strict limitations on flight paths to minimize disturbance to Cordova residents (Attachment 2.3 to Prospectus at 1-2); maintaining wildlife flight buffers (*id.* at 1-2); coordinating and maintaining regular communication with fellow heli-ski permittees in the Ranger District (*id.* at 1); complying with seasonal wildlife restrictions (*id.* at 2); logging all landing approaches due to presence of wildlife (*id.* at 2); maintaining a GPS data logger for each flight (*id.* at 3); submitting daily performance reports including log data and maps upon request (*id.* at 3); and reporting wildlife sightings (*id.* at 3). *See* Exhibit 2, Attachments 2.0 and 2.3.

These duties require near-daily interaction with the Forest Service permit administrator. Because Pulseline has never held a special use permit, it has no experience with complying with these duties. *See* Exhibit 2 at Attachment 2.0, at ¶ I.H (noting that the "holder" of the permit— not any entity the holder contracts with to provide support services—"shall conduct the day-to-day activities authorized by this permit" and is "responsible for compliance with all the terms of

27

Admin Rcd 000084

this permit).  *See also* FSH 2709.14, at 4 (Forest Service special use policy for outfitting and guiding services states that the agency shall "[n]ot authorize use when an applicant owns no tangible assets, lacks the prerequisites to conduct outfitting and guiding (such as a State license, liability insurance, and equipment), and would serve only as an intermediary for others providing those services on National Forests System lands.").

B.  <u>SMG has an established excellent safety record; Pulseline has none.</u>

SMG's safety protocols and record demonstrate that SMG is entitled to more points than Pulseline under Selection Criteria B-2 (company safety policy); C-2 (client preparation and education); C-3 (client safety orientation); W-2 (employee licenses, certifications, and training); W-3 (medical emergency training); and O-2 (performance history).

**<u>SMG.</u>**  SMG has the best and most established safety record among Alaska heli-ski operators.  Exhibit 1 at ¶ 7; Exhibit 3 at 13.  In the 13 years that SMG has operated in Alaska, it has had no avalanche accidents, no helicopter accidents, no substantial injuries, and no fatalities.  Exhibit 1 at ¶ 7.  No other Alaska heli-ski operator can claim that safety record.  SMG's safety record is unusually strong, given the unfortunate history of fatalities in the Alaska heli-skiing industry.[8]

SMG's safety record is due to its 4:2 guest-to-guide ratio and its rigorous guide education and examination program.  SMG is the *only* Alaska heli-ski operator with a policy of maintaining

---

[8] *See, e.g., Skier killed by weekend avalanche was heli-skiing east of Matanuska Glacier*, Anchorage Daily News (Mar. 30, 2021), https://www.adn.com/alaska-news/2021/03/30/skier-killed-by-weekend-avalanche-was-heli-skiing-east-of-matanuska-glacier/; *Heli-ski guide dies in Alaska*, Firsttracksonline.com (Mar. 4, 2013), https://www.firsttracksonline.com/2013/03/04/heli-ski-guide-dies-in-alaska/; *Second skier dies from injuries sustained in avalanche near Haines*, KTOO.org (Mar. 14, 2012), https://www.ktoo.org/2012/03/14/second-skier-dies-from-injuries-sustained-in-avalanche-near-haines/.

**Admin Rcd 000085**

two guides, rather than the usual one guide, for each group of four guests. Exhibit 1 at ¶ 8; Exhibit 3 at 12, 22. Providing two guides per guest group allows each guest to maintain visual or verbal contact with a guide at all times. Exhibit 1 at ¶ 8. Placing two guides with each group speeds up the loading and unloading process, minimizing guest exposure to the dangers of spinning helicopter rotors, allowing for more skiing, and providing a better guest experience. Most importantly, it doubles the expert resources available for on-site avalanche risk assessment, route selection, and, if necessary, avalanche and crevasse rescue. This results in a substantial increase in safety margins and an overall better client experience. Exhibit 1 at ¶ 8.

SMG is the only Alaska heli-ski operator that requires annual guide testing and guide examinations. Exhibit 1 at ¶ 9. SMG also requires annual training and certifications. Exhibit 1 at ¶ 9.

**Pulseline.** In 2014, Pulseline's founder and initial owner died after he triggered and was buried by an avalanche while guiding heli-skiing guests near Haines, Alaska. At the time, Pulseline did not hold a Forest Service special use permit or BLM special recreation permit for heli-skiing. Pulseline's owner was a participating guide on a trip conducted by another company, Southeast Alaska Backcountry Adventures, which held a heli-ski permit.[9]

Because Pulseline has no experience operating under a Forest Service special use permit or a BLM special recreation permit, it has no experience implementing or maintaining company safety protocols. Pulseline has no experience in maintaining a guide certification, training, education, or examination program for a permitted operation.

---

[9] https://www.powder.com/stories/ak-heli-guide-critical-condition-avalanche/

29

**Admin Rcd 000086**

C.    SMG has an established history of compliance with corporate, employment, workers' compensation, and other laws, while Pulseline has a history of sloppy corporate governance and a failure to comply with federal and state laws.

SMG's history of compliance with federal and state laws and permit terms demonstrates SMG is entitled to more points than Pulseline for Selection Criteria W-1 (working relationship with regulatory agencies); and O-1 (permit compliance).

**SMG.**  During SMG's 13-year history, SMG has maintained its status as a limited liability company in good standing and in compliance with Colorado and Alaska corporate law. Exhibit 1 at ¶ 16.  SMG maintains workers' compensation insurance as required by Alaska law. SMG has consistently maintained liability insurance in compliance with its permits.  Exhibit 1 at ¶ 16.

**Pulseline.**  As of less than two weeks before the Prospectus application deadline, Pulseline was an "administratively dissolved" limited liability company, did not hold an Alaska business license, and did not maintain Alaska workers' compensation insurance.  Exhibits 8-11. On January 8, 2021, shortly before the deadline to submit an application, Pulseline requested the Idaho Secretary of State to reinstate its status as an active limited liability company.  Exhibit 9. Pulseline acquired an Alaska business license only after it submitted its Prospectus application. Exhibit 11.  It appears Pulseline does not maintain Alaska workers' compensation insurance, despite that the "Alaska Workers' Compensation Act requires each employer having one or more employees in Alaska to obtain workers' compensation insurance."[10]  Exhibit 10.

Pulseline's website advertises heli-ski trips in the Haines and Valdez area in March and April 2021.[11]  Given that Alaska law requires any employer with employees in Alaska to obtain

_____

[10] https://labor.alaska.gov/wc/er-profit.html

[11] https://pulselineadventure.com/heliskialaska/; https://pulselineadventure.com/ak-tour-camp-2021/ (last accessed Apr. 7, 2021).

30

Admin Rcd 000087

workers' compensation insurance, it appears that Pulseline (1) has no employees in Alaska or (2) unlawfully failed to obtain workers' compensation insurance.

    D.    <u>Pulseline's owner has a history of criminal arrests and convictions and a failure to timely pay federal corporate tax.</u>

**SMG.** SMG's owner, Aaron Brill, has never been arrested for, charged with, or convicted of a violation of a federal or state criminal law. Exhibit 1 at ¶ 17. Neither Mr. Brill nor SMG has been charged with any violation of federal or state tax laws. Exhibit 1 at ¶ 17. No Forest Service special use permit or BLM special recreation permit held by SMG or any of Mr. Brill's other ski companies has been suspended or terminated. Exhibit 1 at ¶ 26.

**Pulseline.** Gabriel Monroe, who in his capacity as Pulseline's sole owner and manager would sign a special use permit on Pulseline's behalf, has a history of unprofessional and violent conduct. Mr. Monroe's history makes him not qualified to provide permitted heli-ski services on public lands. Exhibits 15-18.

Mr. Monroe has a criminal record showing five arrests and two convictions. Exhibit 17. Records related to these proceedings show a long-term history of anger control issues and violent behavior, including convictions following incidents where Mr. Monroe shoved a police officer and battered one his employees while on a job site. Exhibits 15, 16. Mr. Monroe was twice arrested and charged with domestic violence. Exhibit 17. Mr. Monroe was charged with eight criminal "infractions" between 1996 and 2019. Exhibit 17.

Given this history, Mr. Monroe (and by extension, Pulseline) is "not qualified" to hold a special use permit allowing the use of Forest Service lands for commercial use. *See* 36 C.F.R. § 251.54 (e)(5) (Forest Service "authorized officer shall reject any proposal" for a special use permit if the officer determines "the proponent is not qualified").

**Admin Rcd 000088**

The Prospectus provides that it "is focused on identifying service providers who demonstrate a high standard of professionalism" and who will "set a good example regarding ethical behavior." Exhibit 2 at 7. The sample special use permit attached to the Prospectus provides:

> In general, the holder is expected to behave in a professional demeanor regarding their interactions with the Forest Service, other agencies, their peer group, and the people they serve. Disorderly or objectionable conduct by the Holder, (or those occupying the premises with holder's permission) may be cause for termination of this authorization.

Exhibit 2 at Attachment 2.0, p. 9. Mr. Monroe has not demonstrated an ability to comply with these requirements.

Pulseline is not qualified to hold a Forest Service special use permit because granting a permit to Pulseline would violate the Forest Service's objectives in issuing special use permits for outfitter and guiding services, which include: "Encourage *skilled and experienced individuals and entities* to conduct outfitting and guiding activities in a manner that protects environmental resources and ensures that national forest visitors receive *high-quality services*." FSH 2709.14, at 3 (emphasis added). *See* 36 C.F.R. § 251.54(e)(5) (Forest Service must reject a special use permit application if the proponent is "not qualified"); FSM 2716.82 ("Holders of special use authorizations . . . are subject to referral for debarment and suspension" if the holder is convicted of any "offense indicating a lack of business integrity . . . that seriously and directly affects the holder's present responsibility").

A heli-ski operator awarded a permit pursuant to the Prospectus will operate in an environment characterized by extreme conditions and a risk of injury or death. Guests have devoted a substantial amount of money and time to the trip and, consequently, often exert pressure on the guide to take risks to allow more time skiing. Guiding heli-ski trips requires an

exceptional ability to make reasoned decisions in high-pressure situations. Mr. Monroe's criminal history and inability to control his impulses show he lacks those skills.

Another business wholly owned and operated by Mr. Monroe, Cornerstone Concrete, LLC, failed to pay federal corporate taxes. In 2016, the Internal Revenue Service filed a tax lien of over $50,000 against Mr. Monroe and Cornerstone Concrete, LLC. Exhibit 18. This lien remained in place and was not released until September 2020, two months before issuance of the Prospectus. Exhibit 18. Mr. Monroe's failure to pay federal corporate taxes is further evidence that Mr. Monroe is not qualified to manage and operate a holder of a Forest Service heli-ski special use permit.

E.   <u>SMG, an Alaska-owned company, would provide far more benefits to the local economy and population than Pulseline, an Idaho-owned company, would provide.</u>

SMG is entitled to more points than Pulseline under Selection Criteria L-1 (role in sustaining local communities).

**SMG.**  SMG is an Alaska limited liability company wholly owned and managed by an Alaskan resident (Mr. Brill). Mr. Brill has resided in Alaska with his wife since 2012. Exhibit 1 at ¶ 3. SMG is based in Palmer, Seward, and Girdwood, Alaska. Many of SMG's employees live in Alaska. Exhibit 1 at ¶ 4.

Congress has adopted a policy of favoring Alaskan-owned outfitters in issuing special use authorizations on certain federal lands in Alaska. *See* 16 U.S.C. § 3197; 36 C.F.R. part 251, subpart E. Due in part to SMG's early annual opening date, which is generally months before other heli-ski operators based in Cordova or Valdez, SMG has guided local Alaska residents who otherwise may not have an opportunity to access nearby federal lands. Exhibit 1 at ¶ 15; Exhibit 3 at 23-24.

Admin Rcd 000090

**Pulseline.**  Pulseline, by contrast, is a limited liability company organized in Idaho and owned by an Idaho resident.  Exhibits 8, 9.  Nearly all of the services advertised by Pulseline's website occur outside of Alaska, and much of it occurs outside the United States.[12]  Pulseline does not maintain Alaska workers' compensation insurance, indicating either (1) Pulseline has no employees in Alaska or (2) Pulseline is in violation of the Alaska Workers' Compensation Act.  *See* Ak. Stat. § 23.30.045 (requiring employers with one or more employees in Alaska to obtain workers' compensation insurance); Exhibit 10.

F.      Using the Prospectus Selection Criteria, SMG is more qualified than Pulseline.

The table below compares SMG's qualifications and experience with Pulseline's using some of the Prospectus Selection Criteria.  The Evaluation Panel's decision to score Pulseline higher than SMG cannot be squared with the facts.

---

[12] *See* https://pulselineadventure.com/locations/ (last accessed Apr. 7, 2021).

**Admin Rcd 000091**

| | Prospectus Selection Criteria | Silverton Mountain Guides | Pulseline Adventure | Possible points |
|---|---|---|---|---|
| B-1 | Experience performing guided helicopter skiing services | SMG has 13 years of experience as a permitted and registered heli-ski operator; has guided thousands of guests; SMG's owner and lead guide has over 20 years' experience in permitted mechanized ski operations | No experience as a permitted operator; some experience as a contract broker and providing guides to permitted operators | 3 |
| B-2 | Company safety policy | Perfect safety record over 13 years; only Alaska heli-skiing operator that provides two guides per four-guest group | No experience in implementing, maintaining, or improving a safety policy | 5 |
| W-1 | Working relationship with regulatory agencies | 13 years of experience; submitted references from three BLM Field Offices endorsing SMG's experience | None | 5 |
| W-2 | Employee licenses, certification, and training | Only Alaska heli-ski operator that requires annual guide testing and examination; requires annual training | No experience in implementing, maintaining, or improving guide education and examination policy | 5 |
| W-3 | Medical emergency training | Only Alaska heli-ski operator that requires annual guide testing and examination; requires annual training | No experience in implementing, maintaining, or improving guide education and examination policy | 3 |
| O-1 | Permit compliance | 13 years of experience operating in compliance with ten permits issued by federal, state, and local agencies | None; never held a permit; owner/manager has two criminal convictions and extensive record of arrests; failed to pay federal corporate taxes for another business | 5 |
| O-2 | Performance history | No fatalities, substantial injuries, avalanches, or accidents in 13 years of operations | Founder and first owner died after triggering avalanche while guiding guests; no experience as a permitted operator | 3 |
| O-3 | Operating in shared use areas | 13 years of experience; submitted reference letter from a competitor and fellow permittee in the Cordova Ranger District | None | 5 |
| L-1 | Role in sustaining local communities | Alaska-owned LLC organized under Alaska law; provides discounted trips to locals; employs Alaskans; maintains Alaska workers' compensation insurance | Idaho-owned LLC organized under Idaho law; does not provide workers' compensation insurance to guides | 5 |

32

**Admin Rcd 000092**

**II.** **The Evaluation Panel's selection of Pulseline's application rather than SMG's application violates the Forest Service's policy to protect the public health and safety in the special use authorization application process.**

Ensuring the public health and safety is an important component of the Forest Service's special use permit program. The Forest Service Manual provides that the one of the "objectives of the special-uses program" is to "[a]uthorize and manage special uses of National Forest System lands in a manner which protects . . . public health and safety." FSM 2702 – Special Uses Management. The Forest Service's objectives in issuing special use permits for outfitter and guiding services include: "Provide for outfitting and guiding services that address concerns of *public health and safety* and that foster successful small businesses consistent with the applicable land management plan." FSH 2709.14, at 3 (emphasis added).

The decision to continue processing Pulseline's application does not conform with these policies. *See* FSH 2709.11, Chapter 10, at 15, 20 (requiring the authorized officer to reject any special use proposal that does not meet certain criteria, including that the proposed use "will not create a serious and substantial risk to public health or safety"). Pulseline lacks any experience in implementing a safety plan and, because it has never held a Forest Service special use permit or BLM special recreation permit, has no established safety record.

Processing an application from a proponent with no established safety record (Pulseline), rather than one from a proponent with a 13-year history of no accidents or fatalities and a guide training and examination procedure that exceeds every other Alaska heli-ski operator's procedure (SMG), does not conform with the Forest Service's policy of protecting public health and safety in issuing special use authorizations. FSM 2702; FSH 2709.14, at 3.

**Admin Rcd 000093**

33

**III.** **The Evaluation Panel should have rejected Pulseline's application because Pulseline is "not qualified."**

Pulseline is "not qualified" to hold a special use permit for heli-skiing because (1) Pulseline lacks any experience as a permitted heli-ski operator, (2) until eleven days before the Prospectus application deadline, Pulseline Adventure, LLC was in "administratively dissolved" status and did not hold an Alaska business license (Exhibits 9, 11); (3) Pulseline does not maintain Alaska workers' compensation insurance (Exhibit 10); (4) Pulseline's owner and manager has a history of criminal arrests and convictions that reveal a tendency to resort to anger and violence in high-pressure situations (Exhibits 15-17); and (5) Pulseline's owner failed to timely pay taxes owed by one of his other businesses (Exhibit 18). These facts prevent Pulseline from demonstrating it is technically capable of complying with the terms and conditions of a special use permit. *See* 36 C.F.R. § 251.54(e)(5)(iv) (Forest Service authorized officer "shall reject any proposal" if the officer determines the proponent does not demonstrate "technical capability to undertake the use and to fully comply with the terms and conditions of the authorization"). The Forest Service should have rejected Pulseline's application because it is "not qualified" to hold a heli-skiing special use permit. 36 C.F.R. § 251.54(e)(5) (authorized officer must reject an application if the officer determines the proponent is "not qualified").

**IV.** **A federal district court will reverse the decision to process Pulseline's application rather than SMG's application.**

Under the Administrative Procedure Act (APA), a federal district court "shall" set aside agency action that is "arbitrary," "capricious," or contrary to law. 5 U.S.C. § 706(2)(A); *see also Triumvirate, LLC v. Bernhardt*, 367 F. Supp. 3d 1011 (D. Ak. 2019) (vacating decision of BLM Anchorage Field Office to issue heli-skiing special recreation permit because decision violated BLM regulations and Handbook provisions). A court will set aside the decision to process

Pulseline's application, rather than SMG's, because that decision is contrary to the weight of the evidence and not supported by the Prospectus Selection Criteria. *See Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins*., 463 U.S. 29, 43 (1983) (agency decision is arbitrary and capricious where it "runs counter to the evidence before the agency"); *Olenhouse v. Commodity Credit Corp*., 42 F.3d 1560, 1575 (10th Cir. 1994) ("[T]he arbitrary and capricious standard focuses on the rationality of an agency's decision making process.").

The decision to process Pulseline's application, rather than SMG's, is contrary to the evidence before the Evaluation Panel. The evidence shows that SMG is the better qualified applicant, including because it has actual operational experience as a permitted heli-skiing operator, an established safety record, safety procedures that exceed industry standards, and demonstrated working relationships with regulatory agencies. Unless the Forest Supervisor reverses the decision, a court will set it aside because the record shows that the Evaluation Panel failed to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicles Mfrs. Ass'n*, 463 U.S. at 43. The Evaluation Panel's decision does not articulate the "rational connection" between the evidence and the decision that a federal judge will require under the APA. *See Natural Res. Def. Council v. U.S. Forest Serv.*, 421 F.3d 797, 810 (9th Cir. 2005) (vacating Forest Service decision because the agency's explanation "runs counter to the evidence before" the agency and because the agency "did not "state a rational connection between [the facts] found and its decision"). The decision to process Pulseline's application, and to reject SMG's application, does not address this evidence. Given the Selection Criteria and the facts, a court will set aside the decision (unless the Forest Supervisor corrects it, as he should). *E.g.*, *Eco Tour Adventures Inc. v. Zinke*, 249 F. Supp.3d 360, 378-79 (D.D.C. 2017) (reversing National

35

Park Service decision to award cross-country skiing concession contracts to applicants that did not satisfy identified selection criteria).

The decision to select Pulseline for further processing, and the decision to eliminate SMG from consideration, also violates the agency's binding obligation to ensure that a holder of a special use authorization possesses the "technical and financial capability" to hold the authorization and is "otherwise acceptable." 36 C.F.R. § 251.54(d)(3). SMG easily satisfies this standard and Pulseline cannot. Given the facts demonstrated in this appeal, unless the Forest Supervisor reverses the decision, a federal court will set aside the decision because the Forest Service will have failed to follow its own special use permit regulations by rejecting a "best qualified" applicant in favor of a grossly unqualified one. *E.g.*, *Nat'l Envtl. Dev. Ass'n's Clean Air Project v. Envtl. Protection Agency*, 752 F.3d 999, 1011 (D.C. Cir. 2014) (an "agency is not free to ignore or violate its own regulations while they remain in effect"); *Exportal LTDA v. United States*, 902 F.2d 45, 46 (D.C. Cir. 1990) (reversing agency decision that was "flatly inconsistent with the plain terms" of the agency's regulations).

### THE ISSUANCE OF PERMITS PURSUANT TO THE PROSPECTUS IS AUTOMATICALLY STAYED PURSUANT TO 36 C.F.R. § 214.13(c)(1)

Pursuant to 36 C.F.R. § 214.13(c)(1), the issuance of any special use authorizations pursuant to the Prospectus is automatically stayed "until a final administrative decision is issued" in this appeal, as provided by 36 C.F.R. § 214.13(d).

### CONCLUSION

SMG respectfully requests the Forest Supervisor to reverse the decision to select Pulseline's permit application for further processing and to direct the Cordova District Ranger to advance SMG's application for further consideration within the top three ranked applicants. SMG looks forward to continuing to partner with the Forest Service in providing high-quality

36

public recreation on National Forest System lands under conditions that protect the environment and promote appreciation of the resource. SMG appreciates the work of the Cordova District Ranger and District staff and will continue to work cooperatively with Forest Service personnel and other permitted operators in providing guided heli-skiing within the Chugach National Forest.

Respectfully submitted,

*s/ Ezekiel J. Williams*
Ezekiel J. Williams (USDC DC Bar No. CO0056)
John H. Bernetich (USDC DC Bar No. 1018769)
WILLIAMS WEESE PEPPLE & FERGUSON PC
1801 California St., Suite 3400
Denver, CO 80202
Telephone: 303-228-2529
Facsimile: 303-861-4017
zwilliams@williamsweese.com
jbernetich@williamsweese.com

Andrew L. Spielman
AK Bar No. 2002005
DC Bar No. 462474
BROWNSTEIN HYATT FARBER SCHRECK, LLP
1155 F Street, NW, Suite 1200
Washington, DC 20004
Telephone: 202-383-5913
Fax: 202-296-7009
aspielman@bhfs.com

*Attorneys for Silverton Mountain Guides LLC*

Dated this 12th day of April, 2021.

37

**Admin Rcd 000097**

## LIST OF EXHIBITS

1. Declaration of Aaron Brill (Apr. 9, 2021)

2. U.S. Forest Service, Chugach National Forest, Cordova Ranger District, Guided Helicopter Skiing Prospectus (Nov. 2020)

3. Silverton Mountain Guides LLC Application in Response to Cordova Ranger District Guided Helicopter Skiing Prospectus (dated Dec. 17, 2020; submitted Jan. 7, 2021)

4. Correspondence from Steven Namitz, Cordova District Ranger to Aaron Brill, Silverton Mountain Guides LLC (Mar. 1, 2021)

5. Freedom of Information Act Request submitted by Aaron Brill to Jennifer Mac Donald, U.S. Forest Service Special Uses Program Manager, and Region 10 FOIA Officer (Mar. 11, 2021)

6. Alaska Department of Commerce, Community, and Economic Development, Corporations, Business & Professional Licensing, Entity Details Summary for Silverton Mountain Guides LLC and SMG One LLC

7. Colorado Secretary of State, Entity Details Summary for Silverton Mountain Guides LLC

8. Idaho Secretary of State, Certificate of Organization for Pulseline Adventure, LLC

9. Idaho Secretary of State, History for Pulseline Adventure, LLC

10. Search Results, Alaska Department of Labor and Workforce Development, Division of Workers Compensation (Mar. 30, 2021)

11. Alaska Department of Commerce, Community, and Economic Development, Division of Corporations, Business & Professional Licensing, License Details for Pulseline Adventure, LLC

12. Alaska Department of Natural Resources, Division of Mining, Land and Water, Commercial Day Use Registration (2014-2021)

13. Alaska Department of Commerce, Community, and Economic Development, Corporations, Business & Professional Licensing, Entity Details for Pulseline Adventure, LLC

14. Screenshot of Cornerstone Concrete webpage, "Eastern Idaho Concrete Contractor," http://www.cornerstoneconcreteidaho.com/component/content/article/2-uncategorised/1-eastern-idaho-concrete-contractor (last accessed Apr. 6, 2021)

15. Case File for CR-2007-0019442-MD, Sixth Judicial District Court, Bannock County, Idaho

16. Case File for CR-2008-6764, Bingham County Magistrate Court

17. Court database list of criminal actions filed against Gabriel Monroe

18. Documents related to tax lien filed by Internal Revenue Service against Gabriel Monroe and Cornerstone Concrete, LLC

**Admin Rcd 000099**

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to 36 C.F.R. § 214.14(g)(1), I certify that on April 12, 2021 the foregoing document was served via FedEx next-day delivery and electronic mail on the following parties:

Jeff Schramm
Chugach National Forest Supervisor
161 East 1st Ave., Door 8
Anchorage, AK 99501
jeff.schramm@usda.gov
mailroom_R10_chugach@usda.gov

Steven Namitz
Cordova District Ranger
P.O. Box 280
612 Second Street
Cordova, AK 99574
steven.namitz@usda.gov

Pursuant to 36 C.F.R. § 214.14(g)(1), I certify that on April 12, 2021 the foregoing document was served via first class US mail on the following parties:

Pulseline Adventure, LLC
928 W. Alameda Rd.
Pocatello, ID 83201

Points North Heli-Adventures Inc.
P.O. Box 1610
Cordova, AK 99574

Valdez Heli-Ski Guides
HC-1 Box 85
Mile Post 35 Richardson Highway
Valdez, AK 99686

/s/ Patricia Krakowski

40

**Admin Rcd 000100**

# Exhibit 1

Admin Rcd 000101

# Declaration of Aaron Brill

I, Aaron Brill, declare as follows:

1.      I have personal knowledge of the matters set forth in this Declaration and I am competent to testify as to the matters set forth herein.

2.      I am the Manager of Silverton Mountain Guides LLC ("SMG"), and its direct parent, SMG One LLC, both limited liability companies organized under the laws of Alaska.  I own SMG One LLC, and through SMG One LLC, I own SMG.  SMG operates helicopter skiing operations in Alaska.  Additional information about SMG and its helicopter skiing operations is available at www.silvertonmountainguides.com.

3.      I live in Girdwood, Alaska with my wife.  I have been an Alaska resident since 2012.

4.      SMG is a highly qualified and experienced heli-ski operator in Alaska.  SMG is based in Palmer, Seward, and Girdwood, Alaska.  Many of SMG's employees live in Alaska.

5.      I have been managing and operating Alaska heli-ski operations since 2008.  During that time, my companies, including SMG, have held a total of ten permits from federal and state entities that authorize SMG to conduct heli-ski operations, six of which are currently active.  The United States Forest Service, United States Bureau of Land Management, State of Alaska, and Municipality of Anchorage have issued heli-ski permits to SMG to operate on lands managed by those entities.  My current and former heli-ski permits include:

   a.  United States Forest Service, Chugach National Forest, Cordova Ranger District, two seasons, Temporary Special Use Permit COR417;

   b.  United States Forest Service, Chugach National Forest, Seward Ranger District, Special Use Permit SEW716;

   c.  United States Forest Service, Tongass National Forest, Special Use Permit PET512;

   d.  United States Bureau of Land Management, Anchorage Field Office, 10-Year Special Recreation Permit M-094293;

   e.  United States Bureau of Land Management, Glennallen Field Office, 5-Year Special Recreation Permit M092683;

   f.  Alaska Department of Natural Resources Division of Parks and Recreation Chugach State Park Permit 11-018 (former);

   g.  Municipality of Anchorage Land Use Permit 2016-21;

   h.  United States Bureau of Land Management, Colorado, 5-Year Special Recreation Permit CO-160-03-20-007;

**Admin Rcd 000102**

1

     i.    United States Bureau of Land Management, Colorado, Special Recreation Permit COS0-1000-29-14 (former); and

     j.    United States Bureau of Land Management, Colorado, 40-year permit, Commercial Occupancy Lease COC 64613. This permit, for Silverton Mountain Ski Area in Colorado, authorizes SMG to provide heli-skiing on BLM lands.

6.     SMG has an excellent operating record with the United States Forest Service and with the United States Bureau of Land Management. SMG has never been informed that it is not compliant with any of its heli-skiing permits.

7.     In its 13-year history, SMG has had no guest or guide fatalities, no substantial injuries, and no avalanche or helicopter accidents during a guest trip. No other Alaska heli-ski operator can match SMG's safety record over that length of time.

8.     SMG structures its operations to operate safely and responsibly. SMG's standard procedure is to provide two highly trained guides for each group of four guests. This allows the guides to ensure that the guests are recreating properly, safely, and in a manner that avoids adverse effects to the environment. The two-guides-to-four-guests ratio allows SMG to deliver a personalized heli-ski experience for guests, with constant visual or verbal contact and a faster medical and rescue response time, thereby providing a safer and better guest recreational experience. Having two guides with each group provides twice as many guides to assess snow safety, avalanche safety, and helicopter safety for each group. Having two guides is a significant additional safety factor, much like having a co-pilot on airliners increases safety margin and, for that reason, is standard procedure. In the event of an avalanche rescue, each minute matters, and having two guides rather than one doubles the guides' capacity to dig out a victim buried in an avalanche, cutting the response time in half and increasing the chances of survival. SMG is the only Alaska operator with the 2:4 ratio as standard procedure; other Alaska heli-ski operators typically have one guide for every four guests.

9.     SMG's guides are some of the best trained, most qualified, and most experienced guides in Alaska heli-skiing. SMG is the only heli-ski operator that conducts annual testing and exams for its guides, in addition to annual training. Other heli-ski operators may require their guides to have an avalanche certification, which is obtained once, and a current medical certification, typically renewed every few years. SMG, in addition to those requirements, requires its guides to meet an annual continuing education component backed up by annual testing and exams.

10.    SMG works a longer season (October to late May) compared to other heli-ski operators that typically work a shorter season (late February/early March through April). SMG's longer season yields more experienced guides that obtain more field experience per season. SMG is the only heli-ski operator in Alaska that starts the season in October. As a result, SMG's guides have far more annual field experience than guides who work for other heli-ski operators who begin skiing in March or April. The great majority of heli-ski guides for other operators only work two months per year and, as a result, acquire less real-world experience. In Alaska, weather typically prohibits flights nearly 50% of the time, so an Alaska heli-ski guide at another operator may acquire only four weeks of actual heli-ski guiding experience per season. SMG's

**Admin Rcd 000103**

2

guides spend considerably more time on the snow each season, are able to monitor the snowpack and avalanche conditions throughout more of the season, and as a result are among the most experienced in Alaska.

11.     When not heli-ski guiding, nearly all of SMG's guides work as snow safety technicians conducting avalanche mitigation at avalanche-prone ski resorts. This means SMG's guides are actively forecasting avalanches, blasting avalanches, and gaining experience throughout the year. This combined specialized work experience helps make the best heli-ski guide. Heli-ski guides seek to avoid avalanches; snow safety techs at ski resorts intentionally seek out and trigger avalanches, which gives them extensive first-hand knowledge of how avalanches behave, the conditions under which they initiate, and other unique experience. SMG's heli-ski guides possess heli-ski and ski resort snow safety tech experience that makes them uniquely well qualified.

12.     SMG uses brand new aircraft which are specially outfitted for heli-skiing. SMG uses the newest helicopters in the industry. SMG typically leases new aircraft for a maximum of five years, and replaces the aircraft at the end of that period with new aircraft. SMG uses the Airbus AS350B3E, the most powerful helicopter in its class. The specific B3E model used by SMG is equipped with a redundant dual hydraulic control system to provide a backup that permits the aircraft to continue flying if the first system fails. Few Alaska heli-ski operations use the Airbus AS350B3E because the hourly operating cost is higher than alternatives, and many of the AS350B3 aircraft used by other operators are not equipped with a dual hydraulic control system.

13.     The specific helicopter SMG currently uses (serial number 7274) is specially outfitted for heli-skiing. Other helicopters used in Alaska heli-skiing are outfitted for general use, such as firefighting, rather than specially for heli-skiing. As a result, the aircraft SMG uses is considerably lighter than the alternatives because it does not have equipment for other purposes such as firefighting. A light and powerful aircraft performs best, has the best power-to-weight ratio, and consequently better safety margins than heavier and less powerful aircraft.

14.     SMG has worked to closely cooperate with other heli-ski permit holders that may fly and ski in the same terrain at the same time to avoid conflicts, promote safety, and ensure the best possible guest experience. SMG has cooperated with Valdez Heli-Ski Guides, Points North Heli-Adventures, Tordrillo Heli Ski, and others. This cooperation includes regularly communicating with other permit holders to coordinate plans and exchange information and observations about terrain, snow safety concerns, communications protocols, and permitting.

15.     SMG is an Alaskan-owned business. SMG frequently guides Alaska residents heli-skiing. SMG provides discounts to local residents and children, allowing locals to experience guided heli-skiing on public lands that are otherwise inaccessible. In my experience, Alaskans are more likely than guests from the lower 48 states to hire SMG for guided heli-skiing in the early season in which SMG operates, beginning as early as October depending on snow conditions. During those early season months, it can be nearly impossible for local Alaskans to reach the snowline without a helicopter. Many times, the snowline may be several thousand feet above road level, making it nearly impossible to gain access to the snow-covered mountain tops.

**Admin Rcd 000104**

To my knowledge, SMG is the only Alaska-owned heli-ski operator participating in the Prospectus.

16.     In the time after SMG was first organized in Colorado in 2009, and later in Alaska, SMG has been in good standing as a limited liability company in compliance with state law. SMG has maintained workers' compensation insurance as required by Alaska law. SMG has consistently maintained liability insurance in compliance with its permits.

17.     I have never been arrested for, charged with, or convicted of a violation of a federal or state criminal law. Neither I nor SMG have been charged with or determined liable for a violation of any federal or state tax law. I am frequently subjected to federal background checks due to my status as a holder of a Bureau of Alcohol Tobacco and Firearms Federal Explosive License.

18.     In addition to SMG, I own and operate Silverton Mountain Ski Area in Silverton, Colorado, which I conceived and developed from the ground up in 2002. Silverton Mountain Ski Area operates under a 40-year BLM commercial occupancy lease and special recreation permit on BLM lands. Silverton Mountain uses one chairlift and helicopters to access over 25,000 acres of undeveloped ski terrain, all of which is avalanche terrain. As a result, Silverton Mountain has operated an extensive avalanche mitigation and safety program since before opening in 2002.

19.     During my approximately 20 years of experience operating mechanized ski businesses, my companies have provided over 20,000 heli-skiing service days with no avalanche or helicopter accidents, and no fatalities or substantial injuries.

20.     On January 7, 2021, I submitted an application for a heli-ski permit for SMG from the Chugach National Forest, Cordova Ranger District, in response to the Ranger District's November 2020 Guided Helicopter Skiing Prospectus. I personally prepared, and oversaw preparation of, the application on behalf of SMG. I prepared the application to address the Prospectus, including the selection criteria identified in the Prospectus.

21.     The Cordova Ranger District informed me in a March 1, 2021 decision letter that the Evaluation Panel ranked SMG's application fourth, and that SMG's application was not selected for further processing. The March 1, 2021 decision ranked two operators – Points North Heli-Adventures, Inc. and Valdez Heli-Ski Guides, LLC – first and third, respectively. SMG does not object to the ranking of those two entities because they are qualified. The decision also stated that the Evaluation Panel ranked Pulseline Adventure, LLC ("Pulseline") second and selected Pulseline for further processing.

22.     The Cordova Ranger District did not provide SMG with the score report completed by the Evaluation Panel for SMG's application, or the score report for Pulseline or any of the other applicants. On March 11, 2021, SMG submitted a Freedom of Information Act request for information related to the March 1, 2021 selection decision, including a copy of Pulseline's application and the Evaluation Panel's score report for the applications from SMG and Pulseline.

4

**Admin Rcd 000105**

23.     One of the reasons the Cordova Ranger District identified in the March 1, 2021 decision for rejecting SMG's application for a heli-ski permit was that SMG's application was "not nearly as thorough as" other applications, and that "more detail was needed." These are perplexing statements because SMG's application was complete and addressed all selection criteria identified in the Prospectus. Further, in June 2019 I submitted an application for a heli-ski special use permit to the Seward Ranger District of the Chugach National Forest. The application contained extensive details of SMG's proposed operating plan, employee manuals, medical manuals, and other materials. The Seward Ranger District informed me in September 2019 that the application contained too much information, and requested me to instead submit a more concise application that omitted much detail. When I prepared the application for the Cordova Ranger District in response to the Prospectus, I included all the requested information but attempted to follow the prior guidance from the Chugach National Forest to ensure that the information was concise.

24.     I am familiar with Pulseline Adventure LLC. To my knowledge, Pulseline is not a permitted heli-ski operator. Pulseline is a contract broker that itself does not operate a heli-ski operation, but instead connects its customers to permitted or registered heli-ski operators. Pulseline, to my knowledge, has never itself held a permit issued by the United States Forest Service or the United States Bureau of Land Management to provide heli-skiing. On March 22, 2021, Denton Hamby of the United States Bureau of Land Management in Alaska informed me that Pulseline has not submitted any applications for a permit for heli-skiing on Bureau of Land Management lands in Alaska, nor does the Bureau of Land Management have any record of Pulseline ever holding a special recreation permit in Alaska.

25.     SMG is adversely affected by the March 1, 2021 decision of the Cordova Ranger District because the Evaluation Panel failed to properly score SMG's application, and ranked Pulseline's application higher than SMG's, thereby eliminating SMG from further consideration for a special use permit to provide guided heli-skiing in the Cordova Ranger District. SMG has recreational, business, and environmental interests in obtaining a long-term permit to provide guided heli-skiing in the Cordova Ranger District, as it does now under a temporary permit. The elimination of SMG from the permitting process, if not reversed, will preclude SMG from providing guided heli-skiing in the Cordova Ranger District for many years, thereby harming SMG. SMG has conducted heli-skiing within the Cordova Ranger District nearly every flyable calendar day in March and April 2021, which illustrates the Cordova Ranger District's importance to SMG's operations. The ski terrain within the Cordova Ranger District is extremely important to SMG, and has become more important each year. Alaska storm patterns the past few years have transformed into an unusual westerly primary flow instead of the usual easterly flow. Typically, winter weather fronts in southcentral Alaska come from the Prince William Sound and flow east to west. Easterly flow provides good quality soft powder snow and favorable avalanche conditions that are more often devoid of dangerous windslabs. Westerly flow storms move from the west to east and typically bring extreme persistent winds to nearly every mountain range in southcentral Alaska. These westerly winds create dangerous windslab avalanche conditions and also transform the soft powder snow into very firm snow. Firm snow and dangerous avalanche conditions are not conducive to operating a safe, high-quality heli-skiing business. The Cordova Ranger District terrain is extremely unique and unlike anywhere else in southcentral Alaska, in that even during extreme windy periods of westerly flow it typically maintains soft powder snow and has favorable avalanche conditions typically devoid of

**Admin Rcd 000106**

5

dangerous windslabs. Without access to the Cordova Ranger District terrain, SMG would not be able to continue operating effectively and would incur significant risk of financial harm. If SMG loses access to the Cordova Ranger District Terrain, SMG's employees and local vendors that SMG supports would also be harmed.

26.    No Forest Service special use permit or BLM special recreation permit held by SMG or any of my other ski companies has been suspended or terminated.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on April  9 , 2021 in Girdwood, Alaska.

Aaron Brill
Manager
Silverton Mountain Guides LLC

**Admin Rcd 000107**