IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

SILVERTON MOUNTAIN GUIDES LLC,
an Alaska limited liability company,

                    Plaintiff,

        vs.

U.S. FOREST SERVICE, an agency of the
U.S. Department of Agriculture,

                    Defendant,

        and

PULSELINE ADVENTURE LLC,

                    Defendant-Intervenor.

No. 3:22-cv-00048-HRH

# O R D E R

## Motion to Supplement Administrative Record

Plaintiff Silverton Mountain Guides LLC moves[1] to supplement the administrative record ("Administrative Record") that defendant U.S. Forest Service (the "Forest Service" or the "Service") filed in this case concerning a challenge to an agency action pursuant to the Administrative Procedure Act (the "APA").[2] The Forest Service and defendant-intervenor Pulseline Adventure LLC ("Pulseline") oppose the motion.[3] Oral

---

[1] Docket No. 32.
[2] Docket No. 23.
[3] Docket Nos. 38, 39.

ORDER – Motion to Supplement Administrative Record                    - 1 -

argument was not requested and is not deemed necessary.

## Background

Plaintiff is Silverton Mountain Guides LLC, an Alaska limited liability company.[4] Defendants are the Forest Service, an agency of the U.S. Department of Agriculture, and intervenor Pulseline, an Idaho limited liability company.[5]

In November 2020, the Forest Service issued a prospectus (the "Prospectus") soliciting proposals from interested parties to apply for special use permits to provide guided helicopter skiing services on the Cordova Ranger District of the Chugach National Forest.[6] The Forest Service's stated goals in issuing the Prospectus were to address a growing demand for guided helicopter skiing activities (i.e., winter recreation activities like skiing, snowboarding, and snowshoeing where a helicopter is used to provide up-hill transportation to participants) in the Chugach National Forest and select applicants "best qualified to provide visitors with a safe, satisfying recreation experience that promotes enjoyment, understanding, and appreciation of the Chugach National Forest while minimizing impacts to resources and other forest users."[7] The Prospectus identifies several categories of selection criteria used to evaluate applications: (1) business model, (2) client experience, (3) workplace practices, (4) operations, (5), resource protection, and

---

[4] Complaint at 1, Docket No. 1.
[5] Id. at 19, ¶ 79.
[6] Administrative Record at 2753-2823, Docket No. 23. The Forest Service's initial filing of the Administrative Record was "corrupt and incomplete," so it filed several errata at Docket Nos. 24, 25, and 42 with corrected files. This order's citations to the Administrative Record refer to the corrected Bates-stamped page numbers as displayed in the index to the Administrative Record filed at Docket No. 43.
[7] Id. at 2702-03.

(6) local community benefits.[8]  Forest Service regulations and policies establish

additional, more generalized criteria, including an applicant's experience, qualifications,

and technical and economic feasibility, among others.  36 C.F.R. § 251.54(e)(5);

FS Manual 2712.1, Prospectus (U.S.D.A. 2022).

In response to the Prospectus, the Forest Service received seven applications,

including one from plaintiff and one from Pulseline.[9]  The Forest Service convened a

panel of four individuals to review the applications, all of whom the Service represents it

"screened to ensure their objectivity" and "selected for their substantial experience with

special use permits, helicopter skiing operations, and other winter sports and outdoor

recreation services."[10]  According to the Forest Service, the panel members conducted

their own independent reviews of the applications before convening twice to review and

rank the applications and make a joint recommendation to District Ranger Steve Namitz

on which applications warranted "further processing."[11]

It is against this backdrop that plaintiff submitted what the Forest Service

characterized as a "good," but ultimately lacking, proposal.[12]  After reviewing the panel's

evaluation materials—consisting of an application evaluation form, a score and rank

associated with each applicant, notes, a recommendation on which applicants to select for

further processing, and email correspondence documenting limited background checks

---

[8] Id. at 2763.
[9] Id. at 1890.
[10] Id. at 3146.
[11] Id. at 3144-46.
[12] Id. at 1890.

performed by the Forest Service—and conducting his own review of the Prospectus applications, District Ranger Namitz selected three applicants for further processing: Points North Heli-Adventures, Inc., which received a score of 54.50 points (out of a maximum possible score of 60 points); Pulseline, which received a score of 52.50 points; and Valdez Heli-Ski Guides, LLC, which received a score of 51.00 points.[13] Plaintiff ranked fourth with 48.75 points, 2.25 points below the third-ranked applicant.[14]

District Ranger Namitz notified plaintiff of his decision in a two-page letter dated March 1, 2021 (the "Namitz Initial Decision"), communicating the scores and ranks of the top four applicants and a three-sentence synopsis from the evaluation panel summarizing its assessment of plaintiff's application:

> It was a good proposal but not nearly as thorough as others. Appears they would be a good permit holder and a good partner on the land, however more detail was needed. Appreciated some of the approaches they use that are consistent with ski area management.[15]

Plaintiff then exercised the administrative review procedures of 36 C.F.R. § 214 to appeal District Ranger Namitz's decision.[16] In its appeal, Plaintiff requested that the Forest Service process its application in place of Pulseline's application.[17] Plaintiff's appeal compared and contrasted Pulseline and plaintiff, offering several supporting

---

[13] See Revised Administrative Record Index at 3, Docket No. 43-1 (identifying documents generated from or reviewed during the evaluation panel process); Administrative Record at 1890, Docket No. 23 (disclosing the applications' scores and ranks).
[14] Administrative Record at 1890, Docket No. 23.
[15] Id.
[16] Id. at 4-51.
[17] Id. at 13.

arguments: (1) plaintiff is better qualified than Pulseline; (2) the selection of Pulseline over plaintiff violates the Forest Service's policy to protect the public health and safety; (3) Pulseline is not qualified for a special use permit; and (4) a federal district court will reverse the Forest Service's decision.[18]

On June 9, 2021, District Ranger Namitz responded to plaintiff's appeal with a 14-page letter (the "Namitz Responsive Letter") requesting that Forest Supervisor Jeff Schramm, the Forest Service's designated "Appeal Deciding Officer," issue his own decision on plaintiff's appeal.[19] In that letter, District Ranger Namitz defended his March 1 decision to select Pulseline's application for further processing over plaintiff's application, citing the "weight of the evidence" generated during the application review and appeal process (including the Prospectus applications and additional materials plaintiff provided with its appeal), the selection criteria the Forest Service established at the outset of the process, and the evaluation panel's recommendations.[20]

Forest Supervisor Schramm issued a written decision on the appeal on August 9, 2021 (the "Schramm Decision").[21] The Schramm Decision affirmed District Ranger Namitz's March 1 decision and denied the relief plaintiff requested through a 13-page response expressly based on the materials generated throughout the Prospectus process, plaintiff's appeal, the Forest Service's selection criteria, and the Namitz

---

[18] Id. at 4-51.
[19] Id. at 2897-2910.
[20] Id. at 2897-98, 2909.
[21] Id. at 3144-56.

Responsive Letter.[22]  After receiving the Schramm Decision, the Forest Service's

"Discretionary Reviewing Officer," David Schmid, declined further review of plaintiff's

appeal on September 7, 2021, rendering the Schramm Decision the Forest Service's final

action on plaintiff's Prospective application and appeal.[23]

While the Prospectus application appeal process played out, plaintiff's owner,

Aaron Brill, submitted a Freedom of Information Act ("FOIA") request to the Forest

Service seeking information related to the evaluation panel's review process, including

Pulseline's application and the panel's score reports for plaintiff and Pulseline.[24]  The

Forest Service provided partially redacted documentation in response to Brill's request,

claiming exemptions under FOIA, 5 U.S.C. § 552(b)(4)-(6).[25]  Brill later appealed the

Service's FOIA response but as of the filing of plaintiff's complaint was not satisfied

with the agency's efforts to respond to his appeal.[26]

Plaintiff commenced this action on March 14, 2022.  In its complaint, plaintiff

asserts the following causes of action against the Forest Service: (1) arbitrary and

capricious final agency action under the APA, and (2) unlawful withholding of

information subject to disclosure under FOIA.[27]  Plaintiff requests: (1) a declaration that

the Schramm Decision violated the Forest Service's special use regulations and the APA,

(2) vacatur of the Schramm Decision to the extent it ranked Pulseline ahead of plaintiff,

---

[22] Id. at 3145.
[23] Id. at 3157.
[24] Id. at 3003-04.
[25] Id. at 3008-75.
[26] Complaint at 27-28, ¶¶ 107-12, Docket No. 1.
[27] Id. at 34-37, ¶¶ 137-54.

(3) an order remanding the matter to the Forest Service with instructions to advance plaintiff's application for "further processing," (4) a declaration that the Forest Service's failure to produce the names of the evaluation panel members violated FOIA, (5) an order directing the Forest Service to produce the names of the evaluation panel members, (6) an order awarding plaintiff its attorneys' fees and costs, and (7) such other relief that the court deems appropriate.[28]

On July 18, 2022, the Forest Service filed its Administrative Record, the sufficiency of which plaintiff challenges through its present motion due to alleged improper redactions and omissions that purportedly would fill an information gap.[29] Plaintiff specifically takes issue with the Forest Service's redaction of significant portions of the Administrative Record's content to protect what the Service maintains is information subject to the deliberative process privilege or which warrants confidential treatment for business or privacy concerns.[30]  Plaintiff now moves for the court to order the Forest Service to "supplement" the Administrative Record by adding: (1) unredacted versions of the evaluation panel's findings, recommendations, notes, and checklists (the "Evaluation Panel Materials"); (2) unredacted versions of plaintiff and Pulseline's Prospectus applications (the "Prospectus Applications"); (3) unredacted versions of the law enforcement records, incident reports, and other documents related to the Forest Service's background checks on the Prospectus applicants (the "Law Enforcement

---

[28] Id. at 37.
[29] Motion to Supplement the Administrative Record, Docket No. 32.
[30] Defendant Forest Service's Opposition to Plaintiff's Motion to Supplement the Administrative Record, Docket No. 39.

ORDER – Motion to Supplement Administrative Record                                    - 7 -

Documents"); (4) an unredacted version of the "appeal file" cited by Forest Supervisor

Schramm in his August 9, 2021, decision; and (5) a declaration from Brill and documents

attached as exhibits thereto (the "Brill Submission"), which plaintiff posits would fill a

"gap" in the Administrative Record.[31]

The Forest Service and Pulseline oppose plaintiff's motion.[32]  The Forest Service

maintains that, except for the Brill Submission, all of the documents described above

exist in the Administrative Record, subject to appropriate redactions to protect privileged

and confidential information.[33]  In an apparent effort to compromise, the Forest Service

has offered to make available to the parties the Prospectus Applications and Law

Enforcement Documents, but not the Evaluation Panel Materials, subject to an

"attorneys'-eyes-only" restriction under the parties' Stipulated Protective Order.[34]  The

Forest Service also offered to submit the Evaluation Panel Materials to the court for in

camera review to determine whether its redactions are appropriate.[35]  Pulseline's response

is limited to opposing plaintiff's requested disclosure of Pulseline's Prospectus

application.[36]  Plaintiff replied to both defendants' responses, reiterating its request for

the inclusion of all of the above materials in the Administrative Record in unredacted

form, although it is willing to accept the Prospectus Applications and Law Enforcement

---

[31] Motion to Supplement the Administrative Record, Docket No. 32.
[32] Docket Nos. 38, 39.
[33] Defendant Forest Service's Opposition to Plaintiff's Motion to Supplement the Administrative Record, Docket No. 39.
[34] Id. at 20-21; see generally Stipulated Protective Order, Docket No. 31.
[35] Defendant Forest Service's Opposition to Plaintiff's Motion to Supplement the Administrative Record at 17, Docket No. 39.
[36] Docket No. 38.

Documents on a "confidential," but not attorneys'-eyes-only, basis pursuant to the Stipulated Protective Order.[37]

## Legal Standard

The administrative record "consists of all documents and materials directly or indirectly considered by agency decision-makers." Alaska v. Fed. Subsistence Bd., No. 3:20-cv-00195-SLG, 2021 U.S. Dist. LEXIS 253661, at *4 (D. Alaska May 4, 2021) (quoting Thompson v. U.S. Dep't of Lab., 885 F.2d 551, 555 (9th Cir. 1989) (emphasis omitted)). This collection of documents is the "focal point" of a court's review of an administrative decision, as courts are not to create a "new record" during the course of judicial review. Camp v. Pitts, 411 U.S. 138, 142 (1973) (per curiam). An agency must designate a "full and complete administrative record." Alaska v. EPA, 244 F.3d 748, 751 (9th Cir. 2001) (citations omitted), aff'd sub nom. Alaska Dep't of Env't Conservation v. EPA, 540 U.S. 461 (2004); see also Portland Audubon Soc'y v. Endangered Species Comm., 984 F.2d 1534, 1548 (9th Cir. 1993) ("'The whole record' includes everything that was before the agency pertaining to the merits of its decision") (quoting Thompson, 885 F.2d at 555-56). Courts presume that agencies have designated the administrative record completely. Bruce v. Azar, 826 F. App'x 643, 645 (9th Cir. 2020) (citing In re United States, 875 F.3d 1200, 1206 (9th Cir. 2017), vacated on other grounds, 138 S. Ct. 443 (2017)).

Notwithstanding the general requirement to designate in the administrative record

---

[37] Reply in Support of Motion to Supplement the Administrative Record, Docket No. 41.

every document considered by agency decisionmakers, agencies may withhold from disclosure privileged or confidential information under certain circumstances. One prominent privilege is the deliberative process privilege, which is intended to "prevent injury to the quality of agency decisions." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151 (1975). Another justification given for withholding or redacting information from an administrative record is the need to protect confidential business information. See, e.g., Ctr. for Biological Diversity v. U.S. Army Corps of Eng'rs, No. CV 14-1667 PSG (Cwx), 2015 U.S. Dist. LEXIS 76653, at *25 (C.D. Cal. Feb. 4, 2015) (noting agency's redaction of a letter and attachments in the administrative record to protect confidential business information concerning oil and gas leases).

A subject of voluminous litigation since its inception, the deliberative process privilege protects from disclosure "documents that reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." FTC v. Warner Commc'ns, Inc., 742 F.2d 1156, 1161 (9th Cir. 1984) (citing Sears, 421 U.S. at 150); see also Shilpa Narayan, Proper Assertion of the Deliberative Process Privilege: The Agency Head Requirement, 77 Fordham L. Rev. 1183, 1187 (2008) (providing history of the deliberative process privilege dating back to its inception in 1958) (citing Kaiser Aluminum & Chem. Corp. v. United States, 157 F. Supp. 939 (Ct. Cl. 1958)). The privilege's purpose is to ensure the integrity of an agency's "'consultative functions . . . by maintaining the confidentiality of advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" Nat'l Wildlife Fed'n v.

U.S. Forest Serv., 861 F.2d 1114, 1117 (9th Cir. 1988) (quoting Jordan v. U.S. Dep't of Justice, 591 F.2d 753, 772 (D.C. Cir. 1978) (en banc), superseded in part by statute, Pub. L. No. 99-570, 100 Stat. 3207, as recognized in ACLU of N. Cal. v. FBI, 881 F.3d 776 (9th Cir. 2018)).

Despite its well-recognized nature, courts narrowly construe the deliberative process privilege. Cook v. Watt, 597 F. Supp. 545, 549 (D. Alaska 1983). It applies only if "'disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'" Maricopa Audubon Soc'y v. U.S. Forest Serv., 108 F.3d 1089, 1093 (9th Cir. 1997) (quoting Assembly of Cal. v. U.S. Dep't of Com., 968 F.2d 916, 920 (9th Cir. 1992), amended by No. 92-15217, 1992 U.S. App. LEXIS 22208. For a document to qualify for the deliberative process privilege, it must be both predecisional and deliberative. Carter v. U.S. Dep't of Com., 307 F.3d 1084, 1089-91 (9th Cir. 2002) (citations omitted). Ninth Circuit courts take a holistic approach to this evaluation, homing in on the process during which the agency generates the allegedly deliberative document. Nat'l Wildlife Fed'n, 861 F.2d at 1118.

When evaluating privilege claims in an APA case, many courts look to the body of law resulting from FOIA litigation, where agencies oftentimes assert identical privileges to withhold information from disclosure. See generally U.S. Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1 (2001) (evaluating the government's assertion of the deliberative process privilege to justify withholding documents under FOIA's "Exemption 5"); Ctr. for Biological Diversity v. Office of the U.S. Trade

Representative, 450 Fed. Appx. 605 (9th Cir. 2011) (same); Nat'l Wildlife Fed'n, 861

F.2d 1115 (same).  Indeed, federal courts have determined that FOIA's "Exemption 5,"

codified at 5 U.S.C. § 552(b)(5), is "effectively co-extensive" with the common law

deliberative process privilege.  All. for the Wild Rockies v. Pena, No. 2:16-CV-294-

RMP, 2017 U.S. Dist. LEXIS 220958, at *5 (E.D. Wash. Dec. 12, 2017) (citing CACI

Field Servs. v. United States, 12 Cl. Ct. 680, 686 n.7 (1987), aff'd, 854 F.2d 464 (Fed.

Cir. 1988)).  The court may therefore look to FOIA and non-FOIA cases alike in

evaluating the Forest Service's claim that the deliberative process privilege justifies its

redactions.

Beyond challenging documents withheld from the administrative record based on

a privileged or confidential status, a challenger may rebut the presumption of a complete

administrative record by presenting "clear evidence" that the record omits materials

necessary to evaluate fully an agency's decision.  In re United States, 875 F.3d at 1206

(citations omitted); Alegre v. United States, No. 16-cv-2442-AJB-KSC, 2021 U.S. Dist.

LEXIS 211670, at *15 (S.D. Cal. July 29, 2021) (citations omitted).  Courts in this circuit

will consider supplementing the administrative record with "extra-record evidence" only

when: (1) it is necessary to determine "'whether the agency has considered all relevant

factors and has explained its decision;'" (2) if "'the agency has relied on documents not

in the record;'" (3) "'when supplementing the record is necessary to explain technical

terms or complex subject matter,'" or (4) "'when plaintiffs make a showing of agency

bad faith.'"  Lands Council v. Forester of Region One of the U.S. Forest Serv., 395 F.3d

1019, 1030 (9th Cir. 2004), amended by sub nom. Lands Council v. Powell, 395 F.3d

1019 (9th Cir. 2005) (quoting Sw. Ctr. for Biological Diversity v. U.S. Forest Serv., 100

F.3d 1443, 1450 (9th Cir. 1996).  These exceptions are "widely accepted" but "narrowly

construed and applied."  Lands Council, 395 F.2d at 1030 (citations omitted).  Courts

must afford "sufficient deference" to the agency and avoid conducting a de novo review

of its decision.  San Luis & Delta-Mendota Water Auth. v. Locke, 776 F.3d 971, 992-93

(9th Cir. 2014) (citing Marsh v. Or. Nat. Res. Def. Council, 490 U.S. 360, 378 (1989));

see also River Runners for Wilderness v. Martin, 593 F.3d 1064, 1070 (9th Cir. 2010)

(per curiam) (describing the "deferential" standard pursuant to which "[t]he court's task

is not to make its own judgment about" the agency's decision).

## Discussion

After plaintiff filed its motion to supplement the Administrative Record, the

parties appear to have made some concessions and clarifications that simplify the issues

now in front of the court.  The Forest Service agreed to produce unredacted versions of

the Prospectus Applications and Law Enforcement Documents, although the parties

disagree on whether those documents should be disclosed only to the parties' attorneys or

to the parties themselves.[38]  The Forest Service also clarified that the "appeal file"

referenced in the Schramm Decision exists in the Administrative Record in its entirety,

although significant portions thereof remain redacted to protect what the Service

considers to be deliberative or confidential business information.[39]  The parties continue

---

[38] Defendant Forest Service's Opposition to Plaintiff's Motion to Supplement the
Administrative Record at 2, Docket No. 39.
[39] Declaration of Forest Supervisor Jeff Schramm at 2, ¶ 3, Docket No. 44.

ORDER – Motion to Supplement Administrative Record                                    - 13 -

to disagree on whether the Evaluation Panel Materials currently in the Administrative Record should be redacted and whether the Brill Submission should be included in the Administrative Record. Accordingly, there are three primary issues for the court's consideration: (1) whether the Forest Service appropriately redacted the Evaluation Panel Materials pursuant to the deliberative process privilege; (2) whether the Prospectus Applications and Law Enforcement Documents should receive attorneys'-eyes-only or confidential treatment under the Stipulated Protective Order; and (3) whether a gap exists in the Administrative Record that warrants inclusion of the Brill Submission. A fourth issue, relating to the adequacy of the Forest Service's response to plaintiff concerning the "appeal file," is subsumed within the first two issues described above since the only components of the "appeal file" that appear to be at issue are the Evaluation Panel Materials, Prospectus Applications, and Law Enforcement Documents.

A. The Evaluation Panel Materials

The Evaluation Panel Materials—namely, the evaluation panel's final decision and recommendation to District Ranger Namitz, the panel's notes, and "Yes/No" checklists indicating whether the panel determined that an application "adequately addressed" the information requested in the Prospectus—fit squarely within the confines of the deliberative process privilege.[40] As noted above, the privilege covers predecisional and deliberative "'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies

---

[40] Administrative Record at 1932-66, Docket No. 23.

are formulated.'" Carter, 307 F.3d at 1089 (quoting Klamath, 532 U.S. at 8).  A document is predecisional when developed by a subordinate employee to assist an agency decisionmaker in arriving at a decision.  Kowack v. U.S. Forest Serv., 766 F.3d 1130, 1135 (9th Cir. 2014) (citing Maricopa Audubon Soc'y, 108 F.3d at 1093).  A document is deliberative when it consists of recommendations and suggestions, from an inferior to a superior, that reflect the "'personal opinions of the writer rather than the policy of the agency.'"  Maricopa Audubon Soc'y, 108 F.3d at 1095 (quoting Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (1980)).  If a document would "expose 'the decision-making process itself' to public scrutiny by revealing the agency's 'evaluation and analysis of the multitudinous facts,'" a document is deliberative in nature.  Nat'l Wildlife Fed'n, 861 F.2d at 1118 (quoting Montrose Chem. Corp. of Cal. v. Train, 491 F.2d 63, 68 (D.C. Cir. 1974)).

Here, the Evaluation Panel Materials predated the Forest Service's ultimate decision on which applications to select for further processing.  The materials contain the opinions, recommendations, and suggestions by a group of subordinate employees tasked with providing their thoughts to help Forest Service decisionmakers decide which applications they should choose.  The Evaluation Panel Materials therefore are both predecisional and deliberative.  Additionally, the evaluation panel generated them through the government's overall deliberative process of selecting which Prospectus applications would move forward, so applying the privilege to these materials is consistent with the process-oriented approach outlined above.  See Am. Petrol. Tankers Parent, LLC v. United States, 952 F. Supp. 2d 252, 270-71 (D.D.C. 2013) (finding the

deliberative process privilege applies to adjudicative proceedings involving a determination of whether or not a party is eligible for government credit, funds, or other benefits); Nat. Res. Def. Council, Inc. v. Doremus, No. 20-cv-1150 (CRC), 2021 U.S. Dist. LEXIS 105921, at *12-15 (D.D.C. June 7, 2021) (finding reviewers' scoresheets protected by the deliberative process privilege); Comprehensive Cmty. Dev. Corp. v. Sebelius, 890 F. Supp. 2d 305, 313 (S.D.N.Y. 2012) (same). The court need not review these documents in camera to make this straightforward determination, as the parties' depictions of the redacted materials and their relationship to the unredacted information that surrounds them in the Administrative Record make clear that these documents are both "predecisional" and "deliberative."[41] Other district courts similarly have concluded that government actors' individual evaluations and scoring records generated during competitive proposal and bidding processes fall squarely under the deliberative process privilege's umbrella when they represent an initial evaluation from reviewers who lack authority to issue a final decision. See, e.g., Challenger Transp., Inc. v. Wash. Metro. Area Transit Auth., Civil Action No. TDC-14-3322, 2017 U.S. Dist. LEXIS 201613 at *58-69 (D. Md. Nov. 28, 2017) (shielding transportation agency members' technical evaluation and scores of proposals for the provision of transportation services to persons with disabilities); Brownstein Zeidman & Schomer v. U.S. Dep't of the Air Force, 781 F. Supp. 31, 34 (1991) (shielding an Air Force report containing an advisory council's analysis and rating of proposals for a computer procurement contract); SMS Data Prods.

---

[41] See id. at 1929-66 (providing cover memorandum to panel evaluation members outlining review process and redacted checklist forms and notes).

Grp., Inc. v. U.S. Dep't of the Air Force, Civil Action No. 88-0481-LFO, 1989 U.S. Dist. LEXIS 3156, at *2-3 (Mar. 31, 1989) (shielding technical scoring and ranking reports resulting from an Air Force source selection evaluation board's review of proposals for a computer procurement contract); Pro. Rev. Org., Inc. v. U.S. Dep't of Health & Hum. Servs., 607 F. Supp. 423, 427 (1985) (shielding statistical information and panel members' point scores, evaluations, opinions, and recommendations concerning bids to operate a physicians' professional standards review organization for the State of Florida); Comprehensive Cmty. Dev. Corp, 890 F. Supp. 2d at 313 (shielding draft summary statements and individual reviewers' worksheets and initial score sheets concerning application for health center grant funding); Dumont v. U.S. Dep't of the Air Force, No. 5:13-cv-73, 2014 U.S. Dist. LEXIS 199024, at *21 (D. Vt. Mar. 5, 2014) (shielding Air Force scores and ranks of potential base sites for new fighter aircraft).

Plaintiff acknowledges that the deliberative process privilege applies to the Evaluation Panel Materials.[42]  However, plaintiff argues that the Forest Service cannot invoke the privilege to protect the Evaluation Panel Materials because the Schramm Decision expressly adopted the panel's findings and conclusions and both District Ranger

---

[42] See Motion to Supplement the Administrative Record at 8, Docket No. 32 ("The only privilege potentially applicable to the panel's 'notes' and 'adequately demonstrated' checklists, and the panel's final decision and recommendation, is the deliberative process privilege. . .").  The court notes that plaintiff argues that some of the materials the evaluation panel considered, the Law Enforcement Documents, are "factual" and therefore not covered by the deliberative process privilege.  However, because the Forest Service agreed to designate unredacted versions of these materials in the Administrative Record, the court need not determine whether the deliberative process privilege applies to those documents.

Namitz and Forest Supervisor Schramm disclosed portions of the materials in their respective letters.[43]  And, even if the Forest Service did not expressly adopt or waive the privilege, plaintiff argues that its need for the information outweighs the government's interest in nondisclosure.[44]  The court addresses these arguments in turn, finding none of them persuasive enough to risk chilling the "candid discussion" necessary to produce defensible agency decisions rooted in reasoned analysis and robust debate.  See Assembly of Cal., 968 F.2d at 920 (citation omitted).

> i. <u>The Forest Service did not expressly adopt or incorporate by reference the Evaluation Panel Materials, nor did it impermissibly rely on them while withholding them as privileged.</u>

Plaintiff contends it is "indisputable" that the Forest Service relied upon and adopted the panel evaluations in the Schramm Decision, thereby nullifying the deliberative process privilege according to precedent established by the Supreme Court in NLRB v. Sears, Roebuck & Co.:

> [W]e hold that, if an agency chooses expressly to adopt or incorporate by reference an intra-agency memorandum previously covered by [the deliberative process privilege] in what would otherwise be a final opinion, that memorandum may be withheld only on the ground that it falls within the coverage of some [other] exemption . . .

421 U.S. 132, 161 (1975).  To support its argument, plaintiff directs the court's attention to numerous references to the Evaluation Panel Materials and language in the Namitz Initial Decision and Namitz Responsive Letter where District Ranger Namitz noted that he "agreed with" the panel's evaluation and made his decision "[b]ased on the panel's

---

[43] <u>Id.</u> at 8-12.
[44] <u>Id.</u> at 5.

recommendations."[45]  Similarly, plaintiff notes that Forest Supervisor Schramm acknowledges "District Ranger Namitz's reliance on the evaluation panel" and refers to the evaluation panel's findings many times in his written decision.[46]  Plaintiff also argues that the Forest Service's disclosure of portions of the Evaluation Panel Materials in its letters prevents the Service from concealing the undisclosed portions, since the government cannot "use the privilege as both a sword and a shield." Pac. Gas & Elec. Co v. Lynch, No. C-01-3023 VRW, 2002 U.S. Dist. LEXIS 28773, at *10 (N.D. Cal. Aug. 19, 2002).

The D.C. Circuit has summarized the evolving jurisprudence evaluating the concept of express adoption or incorporation since Sears, making clear that the Forest Service's references to the evaluation panel's work in this case do not invalidate its privilege claim.  In Electronic Frontier Foundation v. U.S. Department of Justice, 739 F.3d 1, 10 (2014), the court noted that the express adoption exception to the deliberative process privilege applies only when it is "evident" that the agency adopted a document's reasoning.  Id. (citing Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184 (1975)) (emphasis added).  The D.C. Circuit opined that agreement with a privileged document's conclusions does not by itself eviscerate the privilege.  Id. Similarly, "casual allusion in a post-decisional document to subject matter discussed in some pre-decisional, intra-agency memoranda is not the express adoption or incorporation by reference which . . . would remove the protection of" the privilege.

---

[45] Administrative Record at 1890, 2903, Docket No. 23.
[46] Id. at 3146.

Common Cause v. IRS, 646 F.2d 656, 660 (D.C. Cir. 1981). Although no court has established a bright-line rule or magic words for determining what constitutes express adoption or incorporation by reference, the examples where an agency has lost its ability to claim the privilege show that the Forest Service's references do not fall victim to the same ills. For example, in National Council of La Raza v. U.S. Department of Justice, 411 F.3d 350, 358 (2d Cir. 2005), the Attorney General repeatedly invoked a memorandum from the U.S. Department of Justice's Office of Legal Counsel to "justify and explain" a new Justice Department immigration policy and "assure" officials that the policy was "legally sound." In that case, the Attorney General and other Justice Department staff issued a number of public statements intended to "state clearly the policy of the Department [of Justice]" on the issue and to defend the government's policy and its legal basis. Id. at 357.

It is true that the documents authored by District Ranger Namitz and Forest Supervisor Schramm make multiple references to the Evaluation Panel Materials and—unsurprisingly, considering the decisions they ultimately made—speak favorably of the panel's process and scoring decisions. In some sense, the Forest Service did "rely" on the evaluation panel process to formulate its decision, and it defended publicly the integrity of that process, albeit in response to plaintiff's attacks. It is also true that the Namitz Initial Decision, Namitz Responsive Letter, and Schramm Decision make more than just casual allusion to the panel evaluation materials. The references to the Evaluation Panel Materials, however, are a far cry from reliance on the evaluation panel members' reasoning or a public invocation of their reasoning with no additional

justification for the ultimate selection. The more substantive letters—the Namitz Responsive Letter and Schramm Decision—contain a combined 27 pages of fulsome analysis of the individual decisionmakers' review of the applications and their independent reasoning for selecting Pulseline's application above plaintiff's. They do not parrot the evaluation panel members' reasoning in full, if at all. Instead, most of the Schramm Decision's references to the evaluation panel simply note how the panel scored an application on a given metric before leading into Forest Supervisor Schramm's own assessment of whether the scoring was supported by the facts in front of him.[47] Even the brief Namitz Initial Decision remarks that District Ranger Namitz completed his own review of the applications and that he himself, not the evaluation panel, decided to select the top three applications for further processing.[48] Public restatement of the evaluation panel's scores, ranks, and short synopsis of its conclusions—all of which the Forest Service intended to release at the outset of the Prospectus process—does not rise to express adoption or incorporation by reference of the evaluation panel members' notes, checklists, decisions, or recommendations. The Forest Service has not offered the Evaluation Panel Materials as a repeated, public justification of its decision, as in La Raza. Nor do the authors' acceptance of, reliance on, and repeated references to the

---

[47] See, e.g., Administrative Record at 3149 (". . . I also find the panel's scoring indicating that Pulseline has a better system for tracking employee licensure, certifications, and training to be fully supported."), 3150 ("Given the variety of potential risks in heli-skiing, some of which may not be dramatically reduced by the presence of an additional guide, I do not find that SMG's argument about guide ratio is a reason to change the panel's scores."), 3151 ("I find the panel's evaluation that SMG and Pulseline would provide similar levels of community benefit to be fully supported.").
[48] Id. at 1890.

panel's materials, conclusions, and process equate to the express adoption or incorporation by reference of the materials themselves. See Advocs. for the W. v. U.S. Dep't of Justice, 331 F. Supp. 3d 1150, 1171 (D. Idaho 2018) (postulating that the White House's acceptance of the conclusions of a deliberative memorandum does not constitute adoption of the memorandum or its reasoning).

The court also notes that the bulk of the Forest Service's public statements in the Namitz Responsive Letter and Schramm Decision concerning the Evaluation Panel Materials appear to have stemmed from a defensive posture following plaintiff's attacks on the panel's non-binding decision. District Ranger Namitz and Forest Supervisor Schramm "used" the panel evaluation materials in their letters when responding to plaintiff's appeal to explain why plaintiff's challenges to the panel evaluation process were lacking, not to justify the decision Schramm ultimately made. This is not a case where an agency issued public statements invoking otherwise deliberative materials as evidence supporting its action and simultaneously redacted those materials from the public's view. See Am. Radio Relay League, Inc. v. FCC, 524 F.3d 227, 238-39 (2008) (ruling that the Federal Communications Commission expressly cited in a rulemaking, but impermissibly redacted, internal scientific studies to show a lack of harmful interference potential to licensed radio services from a new network system). The Forest Service referenced the Evaluation Panel Materials at a high level in the Namitz Initial Decision, diving deeper only upon plaintiff's challenges to the integrity of the panel's process. Additionally, the Service did not shield those materials through redaction until plaintiff requested them months later through Brill's FOIA request and, ultimately, when

designating the Administrative Record. Plaintiff's briefing appears to miss this distinction. See Elec. Frontier Found., 739 F.3d at 11 (distinguishing an agency's references to a deliberative opinion raised in response to inquiries from instances in which the agency affirmatively raises a document to justify its policy). Far from using the Evaluation Panel Materials as a sword, the Forest Service decisionmakers fashioned their sword from independent reasoning and review separate and apart from those of the evaluation panel.

  ii.  The Forest Service did not waive the deliberative process privilege.

  Plaintiff next argues that the Forest Service waived its privilege by "disclosing portions of the panel evaluations in the administrative appeal process and in the [Schramm] Decision."[49]  Plaintiff provides examples of this alleged disclosure in its motion, but the examples provided reflect either general references to the evaluation panel's review process (e.g., ". . . they compared the applications and discussed positive qualities and deficiencies . . .") or a recitation of the scores awarded to plaintiff and Pulseline on various criteria (e.g., "Pulseline received partial points for their staff experience working with state and federal agencies managing the H2O Guides, Inc. permits . . .").[50]  These examples show that the Forest Service disclosed to plaintiff what it had otherwise provided to plaintiff in unredacted form through the Prospectus process. Moreover, the Namitz Responsive Letter and Schramm Decision do not reveal any of the deliberative materials contained in the documents plaintiff requests (e.g., the evaluation

---

[49] Motion to Supplement the Administrative Record at 11, Docket No. 32.
[50] Administrative Record at 2903-04, Docket No. 23.

ORDER – Motion to Supplement Administrative Record    - 23 -

panel members' notes, checklists, and decision and recommendation to District Ranger Namitz). The Forest Service appropriately withheld these documents, as it need not include in the Administrative Record "every scrap of paper that could or might have been created." Pinnacle Armor, Inc. v. United States, 923 F. Supp. 2d 1226, 1237 (E.D. Cal. 2013) (quoting Taxpayers of Mich. Against Casinos v. Norton, 193 F. Supp. 2d 182, 195 (D.D.C. 2002)).

The cases plaintiff cites in support of its waiver argument are irrelevant. Walker v. Regan, No. 13-7556, 2019 U.S. Dist. LEXIS 25517 (E.D. Pa. Feb. 14, 2019), discusses a theoretical waiver of a document that was produced in its entirety in litigation, which the Forest Service did not do in this case. The Forest Service disclosed only the evaluation panel's overall scores and heavily redacted versions of the checklist, not the evaluation panel's notes, decisions, or recommendations or the deliberative components of the checklist. Similarly, in Coleman v. Schwarzenegger, No. CIV S-90-0520 LKK JFM P, 2007 U.S. Dist. LEXIS 102305, at *41 (E.D. Cal. Dec. 6, 2007), the district court found "ample evidence" that the government defendants planned to disclose internal, deliberative materials to defend a lawsuit. Here, the Forest Service has not disclosed the specific materials plaintiff requested or expressed its intent to do so in the future. Its disclosure of documents that "merely referenced or cited" the Evaluation Panel Materials does not automatically necessitate their inclusion in the Administrative Record. Save the Colo. v. U.S. Dep't of the Interior, 517 F. Supp. 3d 890, 899 (D. Ariz. 2021).

Contrary to plaintiff's suggestion, courts addressing comparable situations have found that the deliberative process privilege is not subject to the subject matter waiver

often applied to defeat claims of attorney-client privilege. Challenger Transp., Inc., 2017

U.S. Dist. LEXIS at *63 (citing In re Sealed Case, 121 F.3d 729, 741 (D.C. Cir. 1997);

Murray Energy Corp. v. McCarthy, 5:14-cv-39, 2016 U.S. Dist. LEXIS 170017, at *15

(N.D. W.Va. July 20, 2016). In other words, disclosure of some portions of deliberative

memoranda or technical evaluation sheets, such as averaged numerical scores and a

summary of evaluators' written comments, does not waive the deliberative process

privilege for the entire document, including undisclosed evaluators' scores and written

comments. Id. at *68-69; cf. Del. Dep't of Nat. Res. & Env't Control v. U.S. Army Corp

of Eng'rs, 722 F. Supp. 2d 535, 544 (D. Del. 2010) (deciding that documents' prior

disclosure pursuant to a FOIA request does not "necessarily mandate[] the addition of

such documents to the administrative record"); Callahan v. U.S. Dep't of Health and

Hum. Servs., 434 F. Supp. 3d 1319, 1356 (N.D. Ga. 2020) (finding waiver of the

deliberative process privilege for the purpose of the discovery does not trigger automatic

inclusion in the administrative record).

Finally, plaintiff argues that the Forest Service failed to satisfy its burden for

claiming the privilege by providing only a "blanket and unsupported claim of

privilege."[51] Plaintiff is correct to point out that the Forest Service provided only a

rudimentary privilege log in the form of the index to the Administrative Record.[52] The

index fails to identify the particular privilege claim or the basis for such claim associated

_____

[51] Motion to Supplement the Administrative Record at 5, Docket No. 32.
[52] Defendant U.S. Forest Service's Notice of Filing Corrected Administrative Record
Index at Docket 23-2, Docket No. 43.

ORDER – Motion to Supplement Administrative Record                                    - 25 -

with each withheld document. Many district courts in this circuit have required the government to provide a privilege log or submit documents to the court for in camera review in order to support claims of privilege. See, e.g., Friends of the Clearwater v. Higgins, 523 F. Supp. 3d 1213, 1227 (D. Idaho 2021); Washington v. U.S. Dep't of State, 2019 U.S. Dist. LEXIS 45125, 2019 WL 1254876, at *11 (W.D. Wash. Mar. 19, 2019); Mickelsen Farms, LLC v. Animal & Plant Health Inspection Serv., 2017 U.S. Dist. LEXIS 76180, 2017 WL 2172436, at *12 (D. Idaho May 17, 2017); Gill v. U.S. Dep't of Justice, No. 14-cv-03120-RS (KAW), 2015 U.S. Dist. LEXIS 170347, at *23 (N.D. Cal. Dec. 18, 2015). Nationally, the federal circuit courts have not agreed on whether assertion of the deliberative process privilege requires submission of a formal privilege log, but some courts have determined that deliberative materials do not even warrant inclusion in the administrative record. See, e.g., Oceana, Inc. v. Ross, 920 F.3d 855, 865 (D.C. Cir. 2019) (quotations and citations omitted). The Ninth Circuit, meanwhile, has upheld a district court's requiring a privilege log in a case involving the deliberative process privilege (although the court did not go so far as to require a log in all circumstances). In re United States, 875 F.3d 1200, 1210 (9th Cir. 2017), rev'd on other grounds, 138 S. Ct. 443 (2017). Here, the Forest Service provided a lackluster privilege log in the form of the index to the Administrative Record, but through its opposition to plaintiff's motion eventually did provide the basis for its withholding documents and the grounds justifying application of the deliberative process privilege. On balance, given Forest Supervisor Schramm's declaration that the Administrative Record is complete, the limited number of disputed documents withheld on the basis of the deliberative process

privilege (i.e., the Evaluation Panel Materials, which appear to encompass fewer than 40 pages in the Administrative Record), and the reasons the Forest Service offered in favor of applying the privilege, the court finds that the Service has not waived the privilege. See Oceana, Inc. v. Ross, No. 19-cv-03809-LHK (SVK), 2020 U.S. Dist. LEXIS 78955, at *14 (N.D. Cal. May 5, 2020) (finding the government's initial failure to provide an adequate privilege log overcome by the court's subsequent determination that the privilege applies); cf. Gill, 2015 U.S. Dist. LEXIS 170347, at *23 (requiring a privilege log because defendants failed to provide a privilege log, the basis for their withholding documents, or the grounds justifying their assertion of the deliberative process privilege).

iii.    Plaintiff's need for the Evaluation Panel Materials does not outweigh the Forest Service's interest in nondisclosure.

Even if the deliberative process privilege applies to the Evaluation Panel Materials, plaintiff argues that its need for the materials outweighs the government's interest in withholding them.  Both plaintiff and the Forest Service briefed the court on the application of the so-called Warner factors to the case at hand.  In FTC v. Warner Commc'ns, Inc., 742 F.2d 1156, 1161 (9th Cir. 1984), the Ninth Circuit distilled four factors for courts to consider when determining whether a litigant's need for accurate fact-finding outweighs the government's interest in nondisclosure of deliberative materials: "1) the relevance of the evidence, 2) the availability of other evidence, 3) the government's role in the litigation, and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions."

The first factor does not necessarily weigh in favor of disclosure.  The evidence—

the Evaluation Panel Materials leading to the scores and ranks assigned to the Prospectus Applications—is related to plaintiff's claims that the Forest Service acted arbitrarily and capriciously when it selected Pulseline's application over its own application. See Roberts v. City of Fairbanks, No. 4:17-cv-00034-SLG, 2022 U.S. Dist. LEXIS 54774, at *17 (D. Alaska Mar. 25, 2022) (finding information relevant under the first Warner factor when it sheds light on the government's motivations for taking action). The Forest Service decisionmakers reviewed and considered the panel's materials when making their own decisions. However, as noted above, both District Ranger Namitz and Forest Supervisor Schramm conducted their own independent review of the Prospectus materials, including all of the materials upon which the evaluation panel relied and additional evidence raised during the appeal process. Both decisionmakers also explained fully their own reasons for selecting Pulseline over plaintiff. Although the Evaluation Panel Materials are related to the decision ultimately made, they were not adopted by the decisionmakers in their separate analyses. Additionally, the panel members' decision is not the decision that plaintiff challenges here. To the contrary, Plaintiff challenges the Schramm Decision, which represents the final agency action on the matter. Although the APA's judicial review procedures allow a court to look into prior decisions and materials related to the ultimate decision, access to the Evaluation Panel Materials is not critical to determining whether the Forest Service violated in the APA in reaching the Schramm Decision, which is the decision with "'real operative effect.'" U.S. Fish & Wildlife Serv. v. Sierra Club, Inc., 141 S. Ct. 777, 786 (2021) (quoting Sears, 421 U.S. at 150, 160). In other words, the focus of the court's judicial

review is on "the facts and information considered by the [agency], not deliberative documents and process-based papers that are one or two steps removed from the actual agency decision makers and formal decisions." Hampton Univ. v. Accreditation Council for Pharmacy Educ., Civil Action No. 4:20cv118 (RCY), 2021 U.S. Dist. LEXIS 140353, at *45 (E.D. Va. July 27, 2021); cf. Karnoski v. Trump, 926 F.3d 1180, 1206 (9th Cir. 2019) (querying whether adoption of a new policy renders an earlier policy irrelevant to a plaintiff's case).

The second factor weighs heavily against disclosure. Plaintiff already has access to the full, unredacted copies of the Namitz Responsive Letter and, more importantly, the Schramm Decision. Those documents contain the reasoning that plaintiff seeks to challenge in its APA claim and that on which the court would focus its review if deciding the merits of plaintiff's challenge. Plaintiff argues that the evaluation panel's scores and recommendations were "carried forward" and that the Namitz Initial Decision and Schramm Decision "were based almost entirely" on them.[53] The text of those letters belies this assertion, though. As noted above, both District Ranger Namitz and Forest Supervisor Schramm conducted their own analyses of the Prospectus materials and formed their own conclusions. Their review of the Evaluation Panel Materials does not supersede their own analyses; otherwise, the entire selection process functionally would have no point, and the evaluation panel itself would have been charged with making the selection. That the Forest Service characterized plaintiff's appeal as a "disagreement"

_____

[53] Reply in Support of Motion to Supplement the Administrative Record at 4, Docket No. 41.

ORDER – Motion to Supplement Administrative Record                                    - 29 -

between plaintiff and the evaluation panel is equally unavailing. It may be the case that plaintiff brought this challenge because it disagreed with the evaluation panel members' findings, but plaintiff is in fact challenging the Schramm Decision, not the evaluation panel's findings, in this action. Thus, the evidence underlying the Schramm Decision is the focal point of this case, not a non-binding decision three decisions removed from the final agency action.

This also is not a case where a party lacks readily available evidence to address a point critical to its challenge. Following entry of this order, plaintiff or its attorneys will have access to all of the purely factual information underlying the Forest Service's selection of Pulseline over plaintiff, including the Prospectus Applications, which are the most important factual documents in this case, and the law enforcement records. As the parties have noted, this is not a complicated case from a technical standpoint. All of the factual evidence will be at plaintiff's disposal as the litigation proceeds. The need for non-factual, deliberative materials that did not form the primary basis for the agency's decision is miniscule when the complete assemblage of facts is at hand.

Plaintiff is correct that the third factor weighs heavily in favor of disclosure. The government plays a key role in this action, as plaintiff has brought the Forest Service to court and directly challenged the Service's adjudication of its Prospectus proposal. See Toomey v. Arizona, No. CV 19-0035-TUC-RM (LAB), 2021 U.S. Dist. LEXIS 76038, at *10 (D. Ariz. Apr. 20, 2021) ("Where the government is itself a defendant, the reason for the privilege evaporates.") (citing In re Subpoena Duces Tecum Served on Office of Comptroller of Currency, 145 F.3d 1422, 1424 (D.C. Cir. 1998), on reh'g in

part, 156 F.3d 1279 (D.C. Cir.)). The Forest Service notes accurately that review of the Evaluation Panel Materials is not necessary for the court to rule on the merits of this case, but that alone does not reduce the government's essential role in this litigation. See Karnoski, 926 F.3d at 1206 (concluding that the third Warner factor favors a plaintiff when the government "is a party to and the focus of the litigation").

Finally, the fourth factor weighs heavily against disclosure. Plaintiff seeks to pull back the curtain from the very type of deliberations on which the government relies to function each day. As other courts have recognized by refraining from mandating the disclosure of individual, non-decisionmaking panel members' notes, scores, recommendations, and preliminary decisions, disclosure of predecisional and deliberative materials to any disappointed litigant would put those panel members, and the internal deliberation process itself, in the spotlight. See cases cited supra Section A of this discussion; see also Ctr. for Env't Health v. Perdue, No. 18-cv-01763-RS (TSH), 2019 U.S. Dist. LEXIS 200706, 2019 WL 6114513, at *3 (N.D. Cal. Nov. 18, 2019) (citing Desert Survivors v. U.S. Dep't of the Interior, 231 F. Supp. 3d 368, 379 (N.D. Cal. 2017)) (noting that disclosure of "preliminary staff views or tentative opinions 'might chill speech'"). The evaluation panel members' materials contained preliminary and tentative views expressed early in the overall decisionmaking process that otherwise would never see the light of day. The spotlight appropriately belongs on the final decision and the reasoning underlying it. It is unquestionable that disclosure of the Evaluation Panel Materials would "stifle creative debate and candid consideration of alternatives and undermine the integrity of the decision making process itself since

agency officials are to be judged by what they finally decide." Ctr. for Biological Diversity v. Norton, No. CIV 01-409 TUC ACM, 2002 U.S. Dist. LEXIS 27617, at *10 (D. Ariz. July 23, 2002) (citing Warner, 742 F.2d at 1162).

On balance, the court finds that the risk of chilling the government's deliberative process by revealing the Evaluation Panel Materials is greater than the theoretical harm to plaintiff's ability to accurately discover facts. Accordingly, the Forest Service appropriately redacted the Evaluation Panel Materials designated within the Administrative Record.

B. Prospectus Applications and Law Enforcement Documents

The parties agree that the Prospectus Applications and Law Enforcement Documents must be included in the Administrative Record, but they dispute whether those documents should be restricted for viewing by just the parties' counsel or available to the parties themselves under a confidential designation pursuant to the Stipulated Protective Order. The basis for any restriction concerning the materials is due to their allegedly sensitive nature: The Prospectus Applications contain confidential business information produced by plaintiff and Pulseline, two competitors in a small market. The Law Enforcement Documents contain violation notices, incident reports, and possibly related materials or summaries associated with the Prospectus applicants and their owners and managers.

Plaintiff requests that the court designate both the Prospectus Applications and Law Enforcement Documents as confidential but would agree to a restriction authorizing just one representative of each party to view the Prospectus Applications. Plaintiff makes

a number of arguments in favor of disclosure to the parties. It contends that its inability to review these documents, even if its attorneys can review them, would hinder its efforts to prosecute its claims. Next, plaintiff claims that the Forest Service and Pulseline already have seen Pulseline's application in full, and so its inability to review Pulseline's application puts it on unequal footing. Plaintiff also argues that attorneys'-eyes-only restrictions are more appropriate in highly technical cases, such as patent infringement cases. Lastly, plaintiff claims that the information in Pulseline's Prospectus Application is not confidential from a practical standpoint since any customer essentially would have access to it by participating in a Pulseline helicopter skiing trip. With respect to the Law Enforcement Records specifically, plaintiff additionally argues that the public has an interest in information potentially identifying a violation of federal lands law by a Prospectus applicant.

The Forest Service makes only abbreviated arguments in favor of its proposed attorneys'-eyes-only restriction on the Prospectus Applications and Law Enforcement Documents, arguing that both sets of documents have "sensitive content" and that plaintiff has made only a conclusory showing of its alleged need.[54] Pulseline, for its part, dedicated its entire response to advocating for an attorneys'-eyes-only limitation to its Prospectus application. It maintains that Pulseline is on an equal playing field with plaintiff since neither party has seen the other's application; the matter concerns non-technical information that attorneys are equipped to digest; and Pulseline would be

---

[54] Defendant Forest Service's Opposition to Plaintiff's Motion to Supplement the Administrative Record at 17, Docket No. 39.

harmed if plaintiff were to see the "highly sensitive confidential information" resulting

from Pulseline's "hundreds of hours of intense effort" spent putting together its

application.[55]  Pulseline also points to a number of cases in which courts have limited

proposals for government contracts to attorneys' eyes only.

       i.      <u>The competitive harm that could result from disclosure of the Prospectus</u>
<u>Applications, coupled with their non-technical nature, justifies an</u>
<u>attorneys'-eyes-only restriction.</u>

When a litigant seeks a protective order to protect confidential business

information, courts require the party seeking protection to make a showing of more than

just conclusory statements of alleged harm.  <u>Claridge v. I-Flow Corp.</u>, No. 2:18-cv-

01654-GMN-BNW, 2021 U.S. Dist. LEXIS 152686, at *3 (D. Nev. Aug. 13, 2021)

(citing <u>Kamakana v. City & Cty. of Honolulu</u>, 447 F.3d 1172, 1182 (9th Cir. 2006)).  In

cases involving a proposal or bid submitted to the government, courts may look for an

"explanation regarding how disclosure . . . would allow competitors to discern [a party's]

bidding methods, or cause . . . other alleged harms."  <u>San Diego Navy Broadway</u>

<u>Complex Coal. v. U.S. Dep't of the Navy</u>, No. 07-CV-909 W (POR), 2008 U.S. Dist.

LEXIS 22484, at *14 (S.D. Cal. Mar. 21, 2008).  The Forest Service makes only

conclusory statements in support of its proposed restriction of the Prospectus

Applications, but Pulseline alleges that disclosure of its application to plaintiff's

representatives would allow plaintiff to "submit an operating plan of the same quality as

---

[55] Defendant-Intervenor Pulseline's Opposition to Motion to Supplement the
Administrative Record at 5, Docket No. 38.

ORDER – Motion to Supplement Administrative Record          - 34 -

Pulseline's without investing any significant time or cost."[56]  Pulseline argues that plaintiff could copy the plans and approaches in which it invested and undercut Pulseline in future competitions where success is based in large part on the quality of an application's contents.[57]

The court finds that the intense nature of competition among the relatively few businesses providing helicopter skiing services in and around the Chugach National Forest justifies an attorneys'-eyes-only restriction on the Prospectus Applications. Pulseline articulated a reasonable circumstance in which plaintiff's obtaining its Prospectus application could directly and severely hurt Pulseline: Plaintiff could use the information in Pulseline's application to improve its future applications and win opportunities over Pulseline.  For example, plaintiff could look to Pulseline's more detailed operating or safety plans to improve its own plans that Forest Supervisor Schramm found were "brief" and missing detail or additional insight into the business's perspectives.[58]  Plaintiff could learn Pulseline's conflict minimization strategies and system for resolving public complaints, using this information to improve future applications or its day-to-day operations.[59]  Pulseline's application also contains "detailed and thorough" descriptions of materials and procedures that likely required investments of time and financial resources to produce and which could give the business a

---

[56] Defendant-Intervenor Pulseline's Opposition to Motion to Supplement the Administrative Record at 7, Docket No. 38.
[57] Id.
[58] Administrative Record at 2903-04, Docket No. 23.
[59] Id. at 2904.

competitive advantage over its peers.[60]  These descriptions outline Pulseline's risk management processes as well as procedures for navigating landing zones, selecting pick-up locations, understanding impacts to wildlife and other backcountry users, sorting through land ownership issues, briefing clients on safety, caring for clients, training and certifying employees, and contributing to local economies.[61]

Plaintiff does not expressly dispute that it could not, or would not, use the information in Pulseline's application to gain a competitive advantage.  Instead, plaintiff merely suggests that the information Pulseline compiled is easily obtainable and does not contain trade secrets.[62]  Plaintiff contends that it or anyone else could glean some insight into Pulseline's inner workings by becoming a Pulseline customer.  The record does not support this contention, however.  Most of the Prospectus Applications total over 100 pages in the Administrative Record, with plaintiff and Pulseline's totaling about 60 pages each.[63]  It defies logic that a customer could glean the equivalent of dozens of pages of consolidated planning and procedural information from taking a Pulseline trip.  Even if that were possible, having access to the entirety of Pulseline's written depictions presents a real risk that plaintiff could use that information to its advantage, and Pulseline's disadvantage, in the future.  This risk is not outweighed by the negligible impact of an attorneys'-eye-only designation on plaintiff's ability to prosecute its case considering that

---

[60] Id. at 2905.

[61] Id.

[62] Reply in Support of Motion to Supplement the Administrative Record at 7, Docket No. 41.

[63] Revised Administrative Record Index at 1-2, Docket No. 43-1.

its counsel will have full access to this information.

As further support for its argument, plaintiff observes that the Prospectus Applications (or at least those portions it requested) do not contain sensitive information, such as sales or profit information, bids pricing, company forecasts, customer lists, or computer source code.  That type of information warrants protection in many cases.  See, e.g., Siniouguine v. Mediachase Ltd., No. CV 11-06113-JFW (AGRx), 2012 U.S. Dist. LEXIS 199464, at *13 (C.D. Cal. Apr. 30, 2012) (citations omitted); 3B Med., Inc. v. ResMed Corp., No. 16-CV-2050-AJB-JMA, 2016 U.S. Dist. LEXIS 163037, at *2 (S.D. Cal. Oct. 11, 2016).  Here, Pulseline's application contains written depictions of its operating plans, safety plans, internal and external procedures, and strategies to effectively manage operational, marketing, and administrative opportunities and challenges.  Although not financial or technical material, these written depictions are not unlike other documents to which parties or courts have applied attorneys'-eyes-only restrictions.  See, e.g., Hill Phx., Inc. v. Classic Refrigeration SoCal Inc., No. 8:19-cv-00695-DOC-JDEx, 2019 U.S. Dist. LEXIS 236113, at *7 (C.D. Cal. Aug. 13, 2019) (applying an attorneys'-eyes-only restriction after finding disclosure of bidding proposals, among other documents, could cause plaintiff competitive harm); Columbia Pictures Indus. v. Galindo, No. 2:20-cv-03129-SVW-GJSx, 2020 U.S. Dist. LEXIS 138932, at *7 (C.D. Cal. July 31, 2020) (entering protective order limiting to attorneys' eyes only "current or future marketing plans," "current or future business plans or strategies," and "planning information"); Hill Int'l v. Nat'l R.R. Passenger Corp., 957 F. Supp. 548, 551 n.1 (D.N.J. 1996) (observing that "sensitive commercial and bidding

information" was restricted to attorneys' eyes only); Tank Connection, LLC v. Haight,

No. 13-cv-1392-JTM-TJJ, 2015 U.S. Dist. LEXIS 73393, at *21 (D. Kan. June 5, 2015)

(noting that "an attorneys' eyes only provision in a protective order could arguably

address" competitive concerns over the confidentiality of bids).  This information also

falls within the scope of the Stipulated Protective Order's attorneys'-eyes-only

designation, notwithstanding the order's admonition that the parties should use it "very

sparingly."[64]

A non-attorney representative of plaintiff undoubtedly would be able to

incorporate elements of Pulseline's successful application into plaintiff's future

applications, regardless of the sincerity of plaintiff's efforts to limit its use of the

information to this litigation.  See FTC v. Exxon Corp., 636 F.2d 1336, 1350 (D.C. Cir.

1980) (". . . it is very difficult for the human mind to compartmentalize and selectively

suppress information once learned, no matter how well-intentioned the effort may be to

do so."); Sullivan Mktg., Inc. v. Valassis Commc'ns, Inc., 1994 U.S. Dist. LEXIS 5824,

1994 WL 177795 at *9 (S.D.N.Y. May 5, 1994) (characterizing compartmentalization of

intimate knowledge of a competitor's pricing policies as "nigh impossible" when

---

[64] See Stipulated Protective Order at 3, ¶ 5, Docket No. 31:

> A Party may designate as 'Attorneys' Eyes Only' any Information that
> contains highly sensitive private information, non-public business or
> financial information, the disclosure of which would, in the good faith
> judgment of the party designating the material as 'Attorneys' Eyes Only,'
> cause serious and irreparable harm to that party's business if the material is
> disclosed to persons allowed to see Confidential material beyond the
> persons specified herein.  The Parties anticipate that this designation will be
> used very sparingly.

advising a company). This risk is heightened in industries where government competitions are decided in part due to the quality of the deliverable produced to the decisionmaker and where employees and contractors move from business to business with regularity, as is the case here.

The court further finds that plaintiff would not be hindered if its own representatives cannot see Pulseline's application. As plaintiff concedes, the Prospectus Applications do not contain highly technical information. There is no reason that the sophisticated counsel plaintiff retained cannot review the materials and make the strongest arguments possible on plaintiff's behalf. See Intel Corp. v. Via Techs., Inc., 198 F.R.D. 525, 529 (N.D. Cal. 2000) ("Requiring a party to rely on its competent outside counsel does not create an 'undue and unnecessary burden.'") (quoting A. Hirsh, Inc. v. United States, 11 Ct. Int'l Trade 208, 216 (1987)). In a case where the court must decide whether an agency made a rational decision after reviewing non-technical information, there is little, if anything, that a party's representatives could provide separate and apart from its counsel to help the court better understand the substantive issues at play. Lastly, although Forest Service representatives have access to Pulseline's application and plaintiff's representatives will not, all parties' counsel will have access to the full applications, obviating any concerns of unequal footing.

    ii.    <u>There is no discernible harm that would result from a confidential designation of the Law Enforcement Documents.</u>

The Forest Service argues that the Law Enforcement Documents are "sensitive"

and so warrant attorneys' eyes only protection.[65]  Based on the parties' briefing and the

unredacted surrounding text in the Administrative Record, the Law Enforcement

Documents resulted from a search of a Forest Service internal database for "relevant

information for any of the applicant owners and managers," including reports and

violation notices.[66]  The Forest Service also specifically requested that its law

enforcement personnel conduct "an internal background check on applicants and provide

any info[rmation] on past convictions, any allowable information on active cases, and

current conditions connected to proposed activities or that may affect the safety of

clients."[67]  According to the Namitz Responsive Letter, the search did not include

"complete criminal record histories for applicants."[68]  Instead, the focus ostensibly was

tailored to identify information about the applicants and their key personnel that would

reflect potential violations of regulations governing the use of federal lands or

information related thereto.

The Forest Service makes no argument that there is a compelling government

interest in withholding the Law Enforcement Documents, such as risk of harm to a victim

or an opportunity for a future perpetrator to gain insight into law enforcement strategies

leading to the apprehension of criminals.  See Doe v. Sutter, No. H-19-0430, 2019 U.S.

Dist. LEXIS 53447, at *4-7 (S.D. Tex. Mar. 29, 2019) (discussing situations warranting

_____

[65] Defendant Forest Service's Opposition to Plaintiff's Motion to Supplement the
Administrative Record at 17, Docket No. 39.

[66] Administrative Record at 1961-63, Docket No. 23.

[67] Id. at 1968.

[68] Id. at 2901.

the use of attorneys'-eyes-only or more restrictive designations for law enforcement

records).  Nor is there an indication that the parties would use the Forest Service's

background checks to manipulate the Service, violate federal law, or inappropriately

obtain governmental privileges.  Cf. Al Otro Lado, Inc. v. Wolf, No. 3:17-cv-2366-BAS-

KSC, 2020 U.S. Dist. LEXIS 112345, at *13-19 (S.D. Cal. June 26, 2020) (finding that

government defendants failed to allege specific harms to law enforcement and privacy

interests from disclosure of email revoking border-crossing privileges).  Indeed, in the

context of law enforcement documents, courts may find attorneys'-eyes-only restrictions

useful to protect government intelligence documents like field reports or analyses of

security vulnerabilities.  Adlerstein v. U.S. Customs & Border Prot., No. CIV 19-500-

TUC-CKJ, 2021 U.S. Dist. LEXIS 242329, at *8-*9 (D. Ariz. Dec. 20, 2021).

     The Forest Service has not met its burden to demonstrate that any of these

justifications exist here.  There may be cases where a greater restriction is warranted for

documents exploring an individual's criminal or disciplinary history, such as in cases

involving a public servant's alleged acts of violence, see R.S. v. City of Santa Ana, No.

SACV 14-589 CAS (FFMx), 2015 U.S. Dist. LEXIS 186834, at *10 (C.D. Cal. July 21,

2015), but there is no compelling reason for such a restriction when the subject of the

investigation is a member of the public seeking a permit to use public lands.  See

Colonies Partners LP v. Cnty. of San Bernardino, No. 5:18-cv-00420-JGB (SHKx), 2019

U.S. Dist. LEXIS 128874, at *19-*20 (C.D. Cal. May 1, 2019) (citing Kelly v. City of

San Jose, 114 F.R.D. 653, 662 (N.D. Cal. 1987)) (parsing the distinction between the

threat from disclosure of a law enforcement record to the general public versus that from

disclosure to an individual litigant and counsel).

It is possible that the Law Enforcement Documents may reveal "sensitive" information about Pulseline or plaintiff's owners, such as details concerning prior convictions, interactions with law enforcement agencies, or other information one would want to keep private. The Forest Service, however, fails to explain how the limited release of this theoretically sensitive information to the parties could harm them outside the context of this litigation. A confidential designation, per the Stipulated Protective Order, restricts use of the information "solely for the prosecution or defense of the Action . . . and shall not be used for any other purpose."[69] Even assuming the Law Enforcement Documents revealed that Pulseline's owner committed a scandalous act, plaintiff would be barred from revealing or using such information outside of this litigation. Nor is any competitive harm likely to result from this limited disclosure. Because there is no discernible harm from limiting disclosure of the Law Enforcement Documents to the parties and their counsel, the court finds that a confidential designation is appropriate.

C. The Brill Submission

In its Motion to Supplement the Administrative Record, plaintiff argues that the Schramm Decision "relied upon incomplete and inaccurate information" by citing the Forest Service's notes summarizing two statements made during reference checks of federal and state permit administrators familiar with plaintiff and Brill.[70] The first statement comes from Cliff Larson, a State of Alaska Department of Natural Resources

_____

[69] Stipulated Protective Order at 3, ¶ 7, Docket No. 31.
[70] Motion to Supplement the Administrative Record at 16, Docket No. 32.

ORDER – Motion to Supplement Administrative Record                                          - 42 -

Permit Administrator with over twenty years of experience. Larson formerly worked for

the Forest Service at the Chugach National Forest. The Forest Service's notes include the

following statements from Larson about plaintiff:

> Starting in 2018, the State has required commercial day use registration fees (does not require a permit) and Silverton has registered but not paid fees 2018-2020. The State is working through a backlog now of collecting those fees from various operators.

> Cliff is 'very cautious' about Silverton, suspects Silverton may be storing fuel drums on State lands – they do not have a permit for this. Cliff has no proof of Silverton unauthorized fuel storage, but has received general complaint about drums of fuel observed in the backcountry. There is no way to get from point A to point B where Silverton flies without additional fuel. He doesn't know how Silverton is doing it.[71]

The second statement at issue comes from Monika Adam, a Forest Service Permit

Administrator who has administered permits held by plaintiff since 2018. Adam's

statements are primarily positive in nature, referring to plaintiff as a "[m]odel operator,"

although Adam notes the following about Brill:

> BUT, sometimes get the feeling that he's manipulating the system a little bit. For example, funny email exchange with him last fall where Monika noticed he was posting photos on facebook of them skiing in November, could not identify if he was on NFS lands. When Monika emailed Aaron a friendly reminder that his FS operating season starts December 1, she received a cryptic response like "can't wait until December 1st" No proof of any issues.[72]

Plaintiff contends that Larson and Adam's statements are "speculative, vague, and

false allegations" that the Schramm Decision "adopted . . . as its rationale for awarding

[plaintiff] less than a perfect permit compliance score . . ., while ignoring specific

---

[71] Administrative Record at 1921-22, Docket No. 23.
[72] Id. at 1922.

information demonstrating [plaintiff]'s perfect safety and permit compliance record."[73] Plaintiff reports that it did not know the basis for these statements until it reviewed the Administrative Record. Accordingly, plaintiff seeks to supplement the record with information that puts the statements in what plaintiff believes to be their proper context. That context, according to plaintiff, is the email exchange between Adam and Brill referenced in Adam's statement and a declaration from Brill declaring the statements inaccurate. The Brill Submission also rebukes Larson's statement that plaintiff had not paid annual registration fees owed to the State of Alaska and provides what appears to be a receipt showing that plaintiff did in fact pay the fees.[74]

Plaintiff further argues that Forest Supervisor Schramm relied on Larson and Adam's statements to support his decision while overlooking the other positive statements disclosed in the reference checks. Because those statements are inaccurate, according to plaintiff, they create a "gap" in the Administrative Record that warrants supplementation in the form of the Brill Submission.[75] In particular, plaintiff argues that the Forest Service relied on the Adam/Brill email exchange yet failed to include it in the Administrative Record. In response, the Forest Service points to the narrow nature of the exceptions to the general presumption that the Administrative Record is complete, arguing that plaintiff attempts to use the Brill Submission to obtain de novo review of the Forest Service's decision in this court. The Forest Service also notes that plaintiff

---

[73] Motion to Supplement the Administrative Record at 16, Docket No. 32.
[74] Brill Submission, Docket No. 32-5.
[75] Motion to Supplement the Administrative Record at 4, Docket No. 32.

provided over 100 pages of additional documents during the administrative appeal process, all of which Forest Supervisor Schramm considered in issuing his final decision.

Plaintiff has not met the high bar needed to overcome the presumption of regularity that the Forest Service enjoys.  See Cook Inletkeeper v. EPA, 400 Fed. App'x 239, 240 (9th Cir. 2010) (denying motion to supplement the administrative record because the record contained "sufficient information to explain" the agency's decision). Plaintiff argues that supplementation is necessary to address a "'gap' in the record" but expressly points only to one of the four narrow exceptions identified by the Ninth Circuit to justify supplementation: the Forest Service's alleged reliance on two documents not in the record (i.e., the Adam/Brill exchange and the purported registration fee receipt).[76] Plaintiff does not provide any documents related to the fuel storage concern raised in the summary of Larson's reference check beyond Brill's declaration.  There also is no indication that the Forest Service relied on documents not presently in the Administrative Record or that the other exceptions apply.

As for the Adam/Brill email exchange, plaintiff has not made the requisite showing to supplement the Administrative Record with this document.  To make this showing, plaintiff must "'identify reasonable, non-speculative grounds for its belief that the documents [at issue] were considered by the agency and not included in the record.'" Audubon Soc'y of Portland v. Zinke, No. 1:17-cv-00069-CL, 2017 U.S. Dist. LEXIS 205898, at *12 (D. Or. Dec. 12, 2017) (quoting Pac. Shores Subdivision Cal. Water Dist.

---

[76] Id. (citing Lands Council, 395 F.3d at 1030).

v. U.S. Army Corps of Eng'rs, 448 F. Supp. 2d 1, 6 (D.D.C. 2006)).  Plaintiff identifies

no such grounds.  There is no indication that the Forest Service reviewed the Adam/Brill

email exchange in making its decision.  Although the summary of the reference check

discussion with Adam mentions the email exchange, the actual document upon which the

Schramm Decision relies is the summary of the reference check discussion, not the

underlying email exchange.[77]  In all likelihood, Forest Supervisor Schramm, District

Ranger Namitz, and the evaluation panel did not even have ready access to the email

exchange, let alone read or consider it when they made their decisions.  See Citizens to

Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971), abrogated on other grounds

by Califano v. Sanders, 430 U.S. 99 (1977) (ruling that judicial review "is to be based on

the full administrative record that was before the [agency] at the time [it] made [its]

decision") (emphasis added).  Plaintiff also fails to advance a colorable argument that

Forest Supervisor Schramm "indirectly" considered the email exchange, since its

contents are not necessary to understand Adam's high-level, cursory opinion described in

the reference check summary.  See Amgen Inc. v. Hargan, 285 F. Supp. 3d 397, 404

(D.D.C. 2017) ("Although it is not entirely clear what it means to indirectly consider

documents or materials, for present purposes the parties agree that this concept captures

---

[77] The Schramm Decision refers to Adam's statements, citing "Appeal File 0110" at page
4.  Administrative Record at 3153, Docket No. 23.  The index to the Administrative
Record reveals that "Appeal File No. 0110-SMG" is contained within pages 1918-1923
of the Administrative Record.  Revised Administrative Record Index at 3, Docket No. 43-
1.  Those pages of the Administrative Record, in turn, contain the summary of the
reference check discussions, not any primary documents, such as the Adam/Brill email
exchange.  Administrative Record at 1922, Docket No. 23.

materials that are necessary to understand the documents that the agency <u>directly</u> relied upon.") (emphasis in original).

Additionally, after having had the benefit of reviewing the Adam/Brill exchange, it is apparent that this brief document does not add any new or substantively different information that questions the reasons underpinning the Schramm Decision. The exchange does not provide context essential to understanding Adam's statements or necessarily even cast doubt on them, which conceivably could reflect just one of multiple interactions leading Adam to form an opinion on Brill, which on balance is quite positive.[78]

Likewise, there is no indication that Forest Supervisor Schramm reviewed or relied on the purported State annual registration fee receipt provided in the Brill Submission. The Schramm Decision makes no reference to Larson's statements regarding the registration fees, and it is again unclear whether Forest Supervisor Schramm, District Ranger Namitz, or the evaluation panel had access to the receipt when they made their decisions or that having the receipt would have impacted the ultimate decision. It appears most likely that the Forest Service did not even have a copy of this receipt anywhere in its electronic files since the receipt would have been generated from the State of Alaska, not the Forest Service. Even so, the receipt does not necessarily contradict the summary of Larson's statement in the Administrative Record. Larson indicated on February 3, 2021, that plaintiff had not paid the State of Alaska the

---

[78] <u>See</u> Administrative Record at 1922-23 (describing plaintiff as a "[m]odel operator" that "has always done a really good job" with no known non-compliance or safety issues).

registration fees it owed form 2018-2020 but in the same sentence acknowledges that the State is "working through a backlog now of collecting those fees from various operators."[79]  If the receipt shows what Brill declares, it shows that plaintiff paid its fees on January 19, 2021.[80]  It is entirely possible that the "backlog" to which Larson referred may have meant that the State had not yet recognized recent payments at the time Larson made the statement.  Regardless, this information is not necessary for the court to conduct its review or understand the documents designated in the Administrative Record.

Moreover, Forest Supervisor Schramm did not adjust plaintiff's score or rank based on Larson and Adam's statements.  Although noting that "information in the record raises questions about [plaintiff's] compliance with state law and/or permit requirements," Forest Supervisor Schramm clarified that the statements at issue did not influence his decision.[81]  He also recognized that "the record is hazy about [plaintiff's] violating state law or its permits," intimating that he considered the unproven nature of Adam's claims.[82]  The Administrative Record further lacks any indication that either the evaluation panel or District Ranger Namitz took the statements into account, as the evaluation panel scored plaintiff perfectly in the categories concerning performance history and work with regulatory agencies and nearly perfectly in the permit compliance category.  District Ranger Namitz did not adjust the evaluation panel's scoring, nor did he

---

[79] Id. at 1921.
[80] Brill Submission, Docket No. 32-5.
[81] See Administrative Record at 3153, Docket No. 23 (". . . I do not find that this information is grounds for reducing [plaintiff's] scores . . .").
[82] Id.

directly address plaintiff's background checks in the Namitz Responsive Letter.

Plaintiff has offered no evidence that Forest Supervisor Schramm reviewed or actually relied upon the Adam/Brill email exchange or purported State annual registration fee receipt, and Brill's declaration does not fill any gaps in the Administrative Record. Accordingly, the court will not direct the Forest Service to supplement the Administrative Record with the Brill Submission.

## Conclusion

Plaintiff's motion to supplement the Administrative Record is granted in part and denied in part. Plaintiff's motion is denied as to its request to supplement the Administrative Record with unredacted versions of the Evaluation Panel Materials. Plaintiff's motion is granted as to its request to supplement the Administrative Record with plaintiff and Pulseline's Prospectus Applications, but those documents shall be unredacted only under an attorneys'-eyes-only designation in accordance with the Stipulated Protective Order. Plaintiff's motion is granted as to its request to supplement the Administrative Record with the unredacted Law Enforcement Records under a confidential designation in accordance with the Stipulated Protective Order. Plaintiff's motion is denied as to its request to supplement the Administrative Record with the Brill Submission. The court finds that a ruling on plaintiff's request to supplement the Administrative Record with an unredacted version of the "appeal file" cited by Forest Supervisor Schramm is unnecessary based on the court's understanding that the "appeal file" consists of the documents described above and the documents already existing in the Administrative Record in unredacted form.

The Forest Service shall supplement, serve, and file an amended Administrative Record in accordance with this order on or before **November 7, 2022**. In doing so, the Forest Service shall file the unredacted Prospectus Applications under seal with an attorneys'-eyes-only limitation that restricts those documents and all information derived therefrom to the parties' counsel, their law firms, and the court, consistent with the Stipulated Protective Order. The Forest Service shall file the unredacted Law Enforcement Documents under seal with a confidential limitation that restricts those documents and all information derived therefrom to the parties authorized to access them pursuant to the Stipulated Protective Order.

Pursuant to Local Civil Rule 16.3(c)(1), plaintiff shall file its opening brief not later than 30 days following the filing of the amended Administrative Record.

DATED at Anchorage, Alaska, this <u>31st</u> day of October, 2022.

<u>/s/ H. Russel Holland</u>
United States District Judge